JAMES E. LYONS (State Bar No. 112582)
JARRETT A. GREEN (State Bar No. 237443)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Embarcadero Center
San Francisco, California 94111-4144
(415) 984-6400 (phone)
(415) 984-2698 (fax)
jlyons@skadden.com
jagreen@skadden.com

AMY S. PARK (State Bar No. 208204)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
(213) 687-5000 (phone)
(213) 621-5045 (fax)
apark@skadden.com

Attorneys for Defendant
Douglas N. Woodrum

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: CNET NETWORKS, INC. SHAREHOLDER DERIVATIVE LITIGATION<br><br>—————————————————————<br><br>This Document Applies To:<br><br>ALL ACTIONS<br><br>————————————————————— | Civ. No. 06-3817 (WHA)<br><br>(1) NOTICE OF MOTION AND MOTION OF DEFENDANT DOUGLAS N. WOODRUM TO DISMISS PLAINTIFFS' SECOND AMENDED CONSOLIDATED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF THE CLAIMS ASSERTED THEREIN;<br><br>(2) JOINDER IN PORTIONS OF THE INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS;<br><br>(3) [PROPOSED] ORDER [lodged under separate cover]<br><br>Date:    April 5, 2007<br>Time:    8 a.m.<br>Courtroom:  9, Hon. William H. Alsup |

1     )   Trial date:      November 5, 2007
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION TO DISMISS AMENDED CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT OR TO STRIKE PORTIONS
THEREOF, AND JOINDER IN MOTIONS OF CNET AND DEFENDANTS BRIGGS ET AL. TO DISMISS;
CASE NO. 06 –3817 (WHA)

## NOTICE OF JOINDER AND JOINDER IN PORTIONS OF THE MOTIONS OF DEFENDANTS NEIL M. ASHE ET AL. , PETER L.S. CURRIE ET AL., AND SHELBY BONNIE TO DISMISS THE AMENDED CONSOLIDATED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

PLEASE TAKE NOTICE that defendant Douglas N. Woodrum joins in portions of the motions of (1) defendants Neil M. Ashe et al. (the "Ashe Motion"), (2) defendants Peter L. S. Currie et al. (the "Currie Motion"), and (3) defendant Shelby Bonnie (the "Bonnie Motion") for an order dismissing Plaintiffs' Second Amended Consolidated Verified Shareholder Derivative Complaint (the "Complaint") purportedly filed on behalf of nominal defendant CNET Networks, Inc. ("CNET" or the "Company"). Specifically, Mr. Woodrum joins in all Sections of the Ashe Motion except for Section III.B.3 (argument with respect to Section 10(b) reliance causation, transaction causation and loss causation), and Mr. Woodrum joins in Section III.D of the Currie Motion and Section II.B of the Bonnie Motion (arguments with respect to lack of standing to bring a private right of action under Section 304 of the Sarbanes-Oxley Act). The hearing on the Ashe, Currie and Bonnie Motions, which seek to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6) and other applicable statutes, will be held on April 5, 2007, at 8 a.m., or as soon thereafter as counsel may be heard, before the Honorable William H. Alsup in Courtroom 9, 19th floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California. To the extent specified above, Mr. Woodrum hereby joins in the Ashe, Currie and Bonnie Motions and each of the filings submitted therewith as though fully set forth herein.

Mr. Woodrum also reserves the right to join in the motions to dismiss filed by the other individual defendants.

## NOTICE OF MOTION AND MOTION

PLEASE ALSO TAKE NOTICE THAT on April 5, 2007, at 8 a.m., or as soon thereafter as the matter may be heard in the courtroom of Judge William H. Alsup, located at 450 Golden Gate Avenue, San Francisco, California, Courtroom 9, 19th floor, Douglas N. Woodrum shall, and hereby does, move pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and

-i-

MOTION TO DISMISS OR STRIKE PORTIONS OF SECOND AMENDED CONSOLIDATED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT, AND JOINDER IN MOTION OF INDIVIDUAL DEFENDANTS TO DISMISS; CASE NO. 06 –3817 (WHA)

Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4 enacted as part of the Private Securities Litigation Reform Act of 1995, to dismiss the claims brought derivatively on behalf of CNET, the true plaintiff in interest, for violations of Sections 10(b), 14(a) and 20(a) of the Exchange Act and Rules 10b-5 and 14a-9 promulgated thereunder. The grounds for this motion are that: (1) Plaintiffs cannot state a claim for violation of Section 10(b) and Rule 10b-5 on behalf of CNET because: (a) Plaintiffs have failed to plead that Mr. Woodrum engaged in a fraudulent scheme; (b) the majority of the damages CNET allegedly suffered are not actual, economic losses, with the possible exception of the costs of investigation and restatement, and any actual loss CNET did suffer was not caused by any alleged misstatement by Mr. Woodrum; and (c) the Section 10(b) claim is largely barred, in any event, by the statute of limitations; (2) Plaintiffs cannot state a claim for violation of Section 14(a) and 14a-9 on behalf of CNET because: (a) Plaintiffs have failed to plead that the CNET proxy statements Mr. Woodrum allegedly reviewed, approved or helped to prepare were an essential link in the issuance of the challenged stock option grants; and (b) the Section 14(a) claim is largely barred, in any event, by the statute of limitations; and (3) Plaintiffs cannot state a Section 20(a) claim on behalf of CNET because: (a) they have failed to plead facts demonstrating that Mr. Woodrum had the power to control and did control any alleged primary violator; and (b) the Section 20(a) claim is largely barred, in any event, by the statute of limitations.

In the alternative, Mr. Woodrum shall, and hereby does, move pursuant to Federal Rule of Civil Procedure 12(f) to strike certain allegations from the Complaint on the grounds that they are immaterial and impertinent.  The allegations Mr. Woodrum seeks to strike concern: (i) certain CNET Networks, Inc.'s financial statements and proxy statements that were filed or issued outside the applicable limitations periods for the claims concerning those statements; and (ii) alleged conduct that purportedly occurred outside the applicable limitations periods for the claims concerning that conduct.  Plaintiffs' Complaint frequently lumps together the challenged financial statements, proxy statements and challenged conduct into broad allegations, making it impossible in many instances to single out discrete words that must be stricken as impertinent or

immaterial without eliminating other, potentially relevant text as well.  Because of Plaintiffs'

pleading style, Mr. Woodrum is left with no choice but to seek to strike certain phrases,

sentences or paragraphs in their entirety due to their inclusion of impertinent and improper

material that cannot be severed from potentially relevant material.  Specifically, Mr. Woodrum

seeks to strike the following allegations to the extent that Plaintiffs attempt to state a claim on

CNET's behalf against Mr. Woodrum for violation of Sections 10(b), 14(a) or 20(a):

| | |
|---|---|
| Paragraph 11, lines 8½ --28: | in their entirety |
| Paragraph 36, lines 1-6: | "Woodrum assisted . . . stock option grants." |
| Paragraph 36, lines 8-9: | "worth at least $4.3 million" and "1998-2000, as well as those for" |
| Paragraph 36, line 10: | "at least 320,000" |
| Paragraph 36, line 11: | "of at least $5.1 million" |
| Paragraph 58, lines 18-20: | "1998 Form 10-K . . . 1999-" |
| Paragraphs 63-68: | in their entirety |
| Paragraph 72, lines 23-24: | "Overall, between 1998 . . . at CNET." |
| Paragraph 75, line 22: | "approximately 445,000" |
| Paragraph 78: | in its entirety |
| Paragraph 81, lines 20-26: | "CNET's financial statements . . . and/or approved." |
| Paragraph 82, lines 5-6: | "Defendants prepared . . . with the SEC." |
| Paragraphs 84-101: | in their entirety |
| Paragraphs 109-112: | in their entirety |
| Paragraph 117, line 4: | "Between at least 1996 and 2005," |
| Paragraphs 140-163: | in their entirety |
| Paragraph 191, chart entry for Woodrum: | in its entirety |
| Paragraph 242, line 19 ½: | "Between 2000-2005" |
| Paragraph 242 line 22 ½: | "$792,042 in" and "150,000" |

-iii-

1          This motion is based upon this Notice of Motion and Motion, the accompanying

2     memorandum of points and authorities, the Ashe, Currie and Bonnie Motions to Dismiss and all

3     submissions in support thereof, the pleadings and papers filed in this action, and such oral

4     argument as the Court may entertain.

5     DATED: February 26, 2007

               SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

6

7                    By: _____ /s/ James E. Lyons _____

8                                 James E. Lyons

9                           Attorneys for Defendant
                      Douglas N. Woodrum

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(A)(3)) ....................................................1

INTRODUCTION .............................................................................................................2

STATEMENT OF FACTS ..................................................................................................4

ARGUMENT ....................................................................................................................6

I.     THE SECTION 10(B) CLAIM AGAINST MR. WOODRUM SHOULD BE
       DISMISSED. .........................................................................................................6

       A.     Plaintiffs Have Failed To Plead Facts Showing That Mr. Woodrum
              Engaged In A Fraudulent Scheme. ..............................................................6

       B.     Plaintiffs Have Failed To Plead That Mr. Woodrum's Purported
              Misstatements Caused CNET To Suffer Actual, Economic Loss. .........................8

              1.     The Majority of "Damages" Plaintiffs Allege Are Not Actual,
                     Economic Losses. .......................................................................9

              2.     Plaintiffs Fail To Plead Loss Causation With Respect To Any
                     Other Economic Losses To CNET. ................................................10

       C.     The Section 10(b) Claim Against Mr. Woodrum Is Time-Barred To The
              Extent It Is Based On Alleged Conduct Or Statements By Him Before June
              19, 2001. ...............................................................................................12

II.    THE SECTION 14(A) CLAIM AGAINST MR. WOODRUM SHOULD BE
       DISMISSED. .......................................................................................................13

       A.     Plaintiffs Have Failed To Plead That The Proxy Statements Were An
              "Essential Link" In The Issuance Of The Challenged Stock Options. ..................13

       B.     The Section 14(a) Claim Against Mr. Woodrum Is Time-Barred To The
              Extent It Is Based On Proxy Statements Issued Before June 19, 2003. ................16

III.   THE SECTION 20(A) CLAIM AGAINST MR. WOODRUM SHOULD BE
       DISMISSED. .......................................................................................................16

       A.     Plaintiffs Have Failed To Plead That Mr. Woodrum Had The Power To
              Control And Did Control A Primary Violator. ...............................................16

       B.     The Section 20(a) Claim Against Mr. Woodrum Is Time-Barred To The
              Extent It Is Based On Stale Alleged Violations Of Sections 10(b) Or 14(a).........17

CONCLUSION................................................................................................................18

-i-

**MOTION TO DISMISS OR STRIKE PORTIONS OF SECOND AMENDED CONSOLIDATED VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT, AND JOINDER IN MOTION OF INDIVIDUAL DEFENDANTS TO DISMISS;
CASE NO. 06 –3817 (WHA)**

# TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE(S)**

In re Ariba, Inc. Securities Litigation,
 No. C. 03-00277, 2005 WL 608278 (N.D. Cal. Mar. 16, 2005)......................................2, 6

Brayton v. Ostrau,
 561 F. Supp. 156 (S.D.N.Y. 1983) ...................................................................................15

Dodds v. Cigna Securities, Inc.,
 12 F.3d 346 (2d Cir. 1993) ..............................................................................................17

Dura Pharmaceuticals, Inc. v. Broudo,
 544 U.S. 336 (2005)........................................................................................................9, 10

In re Exxon Mobile Corp. Securities Litigation,
 387 F. Supp. 2d 407 (D.N.J. 2005) ..................................................................................16

Fantasy, Inc. v. Fogerty,
 984 F.2d 1524 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994)....................3

Fisher v. Kanas,
 __ F. Supp. 2d __, No. 06-CV-1187,
 2006 WL 3626335 (E.D.N.Y. Dec. 7, 2006) ............................................................13, 15

Gaines v. Haughton,
 645 F.2d 761 (9th Cir. 1981) ....................................................................................... 13, 14

General Electric Co. v. Cathcart,
 980 F.2d 927 (3d Cir. 1992) ............................................................................................14

In re Global Crossing, Ltd. Securities Litigation,
 313 F. Supp. 2d 189 (S.D.N.Y. 2003) .............................................................................16

Griggs v. Pace America Group, Inc.,
 170 F.3d 877 (9th Cir. 1999) ...........................................................................................12

Gross v. Diversified Mortgage Investors,
 431 F. Supp. 1080 (S.D.N.Y. 1977) .................................................................................4

In re Heritage Bond Litigation,
 289 F. Supp. 2d 1132 (C.D. Cal. 2003) ...........................................................................12

Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,
 501 U.S. 350 (1991)....................................................................................................12, 16

Lentell v. Merrill Lynch & Co,
 396 F.3d 161 (2d Cir. 2005), cert. denied, 126 S. Ct. 421 (2005) ....................................10

-ii-

Lipton v. PathoGenesis Corp.,
        284 F.3d 1027 (9th Cir. 2002) .......................................................................17

In re McKesson HBOC, Inc. Securities Litigation,
        126 F. Supp. 2d 1248 (N.D. Cal. 2000) ........................................................17

Mills v. Electric Auto-Lite Co.,
        396 U.S. 375 (1970)........................................................................................13

Pelletier v. Stuart-James Co.,
        863 F.2d 1550 (11th Cir. 1989) .......................................................................9

Siemers v. Wells Fargo & Co.,
        No. C 05-04518 WHA, 2006 WL 2355411 (N.D. Cal. Aug. 14, 2006).......................3, 12

Simpson v. AOL Time Warner Inc.,
        452 F.3d 1040 (9th Cir. 2006), pet. for cert. filed, 75 USLW 3236 (Oct. 19, 2006) .... 6, 7, 8, 9

Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP,
        __ F.3d __, No. 05-4322, 2007 WL 102985 (7th Cir. Jan. 17, 2007)................................10

Westinghouse Electric Corp. v. Franklin,
        993 F.2d 349 (3d Cir. 1993) ...........................................................................16

In re ZZZZ Best Securities Litigation,
        864 F. Supp. 960 (C.D. 1994) ........................................................................17

**STATUTES**

15 U.S.C. §  78j(b) ..................................................................................................2, 6

15 U.S.C. § 78bb(a) ...............................................................................................9, 10

15 U.S.C. § 78t(a) .......................................................................................................16

15 U.S.C. § 78u-4(b)(4) .............................................................................................10

17 C.F.R. §  240.10b-5 (2007)...............................................................................2, 6

28 U.S.C. § 1658(b)(2) .............................................................................................12

Fed. R. Civ. P. 9(b) .......................................................................................................8

Fed. R. Civ. P. 12(f).......................................................................................................3

# MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(a)(3))

In addition to the issues set forth in the Ashe, Currie and Bonnie Motions, Mr. Woodrum submits that the following issues must be decided:

1.      Whether Plaintiffs have failed to state a claim on behalf of CNET against Mr. Woodrum under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder because Plaintiffs have failed to plead that Mr. Woodrum engaged in a fraudulent "scheme."

2.      Whether Plaintiffs have failed to state a claim on behalf of CNET against Mr. Woodrum under Section 10(b) and Rule 10b-5 because the majority of the damages CNET allegedly suffered does not constitute actual, economic losses, with the possible exception of the costs of investigation and restatement, and any actual loss that CNET did suffer was not caused by any alleged misstatement by Mr. Woodrum.

3.      Whether, to the extent Plaintiffs attempt to state a claim on behalf of CNET against Mr. Woodrum under Section 10(b) and Rule 10b-5 based on any of CNET's public statements filed before June 19, 2001, or on Mr. Woodrum's alleged authorization, approval or receipt of stock options before that date, the claim is barred by the statute of limitations.

4.      Whether Plaintiffs have failed to state a claim on behalf of CNET against Mr. Woodrum under Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder because Plaintiffs have failed to plead the required element of causation, i.e., that the challenged proxy statements were an essential link in the approval of the challenged stock option grants.

5.      Whether, to the extent Plaintiffs attempt to state a claim on behalf of CNET against Mr. Woodrum under Section 14(a) and Rule 14a-9 based on any of CNET's proxy statements filed before June 19, 2003, the claim is barred by the statute of limitations.

6.      Whether Plaintiffs have failed to state a claim on behalf of CNET against Mr. Woodrum under Section 20(a) of the Exchange Act because Plaintiffs have failed to plead

-1-

1  facts demonstrating that Mr. Woodrum had the power to control and did control any alleged

2  primary violator.

3          7.        Whether, to the extent Plaintiffs attempt to state a claim on behalf of

4  CNET against Mr. Woodrum under Section 20(a), the claim is barred by the statute of

5  limitations.

6                                  **INTRODUCTION**

7          Plaintiffs bring this shareholder derivative action on behalf of CNET Networks, Inc.

8  ("CNET" or the "Company") against sixteen of the Company's current and former officers and

9  directors to recover for injuries CNET allegedly suffered in connection with a purported stock

10  options backdating "scheme."  Defendant Douglas N. Woodrum, a former CNET officer and

11  director, files this motion to dismiss because Plaintiffs have failed to state a claim on behalf of

12  CNET against him for violation of Sections 10(b), 14(a) and 20(a) of the Exchange Act and

13  Rules 10b-5 and 14a-9 promulgated thereunder.

14          Section 10(b) and Rule 10b-5 proscribe two types of conduct in connection with

15  the purchase or sale of securities:  (i) the employment any device, scheme, or artifice to defraud;

16  and (ii) the making of any untrue statement of a material fact or omission of any material fact that

17  is necessary to make the statement not misleading.  See 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-

18  5 (2007); In re Ariba, Inc. Sec. Litig., No. C 03-00277 JF, 2005 WL 608278, *6 (N.D. Cal.

19  March 16, 2005).  Plaintiffs have failed to state a claim on behalf of CNET against Mr. Woodrum

20  under either theory of recovery.  Plaintiffs have not pled that Mr. Woodrum engaged in a

21  fraudulent scheme because they have failed to plead facts demonstrating that the option grants

22  they challenge were illegitimate business transactions, and judicially noticeable documents show

23  otherwise.  Nor have they pled that Mr. Woodrum personally committed a fraudulent act in

24  connection with the accounting for those options.

25          To the extent Plaintiffs attempt to state a claim based on Mr. Woodrum's

26  purported misstatements, that claim also fails.  As demonstrated in the Ashe Motion, Plaintiffs

27  have not pled particularized facts showing that any defendant – including Mr. Woodrum – either

28

-2-

1  knew that any of the challenged misstatements were false or was deliberately reckless in

2  disregarding their falsity.  Further, the majority of the damages CNET allegedly suffered are not

3  actual, economic losses, with the possible exception of the costs of investigation and restatement,

4  and any actual loss that CNET did suffer was not caused by any alleged misstatement by Mr.

5  Woodrum.

6      Plaintiffs' attempt to state a Section 14(a) claim on CNET's behalf likewise fails.  To

7  state a Section 14(a) claim, Plaintiffs must plead that the proxy statements Mr. Woodrum

8  allegedly reviewed, approved or helped to prepare were an essential link in the issuance of the

9  challenged stock options.  Plaintiffs cannot meet that burden because they have not pled and

10  cannot plead that any of the proxy statements sought shareholder approval to issue the stock

11  options Plaintiffs challenge.

12      Plaintiffs also fail to state a Section 20(a) claim against Mr. Woodrum on CNET's behalf

13  because they do not allege that Mr. Woodrum had the power to control and did control any

14  alleged primary violator.

15      In addition to failing for these reasons, CNET's Sections 10(b), 14(a) and 20(a) claims are

16  barred, in large part, because the purported statements and conduct on which the claims are based

17  were made or occurred outside the governing limitations periods.  Under this Court's decision in

18  Siemers v. Wells Fargo & Co., No. C 05-04518 WHA, 2006 WL 2355411 (N.D. Cal. Aug. 14,

19  2006) (Alsup, J.), the Court has the authority to bar Plaintiffs from basing their claims on alleged

20  wrongs that occurred outside the limitations period.  Id. at 13 ("It is therefore impermissible for

21  plaintiff to pursue claims under [Section 10(b)] that arose before November 4, 2000," or more

22  than five years before the alleged violations).

23      Mr. Woodrum moves, in the alternative, to strike those portions of the foregoing claims

24  that are based on alleged wrongs that occurred outside the applicable limitations periods on the

25  grounds that those portions are immaterial and impertinent.  See Fed. R. Civ. P. 12(f) (court may

26  strike any material in complaint that is "redundant, immaterial, impertinent, or scandalous"); see

27  also Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) ("'[T]he function of a 12(f)

28

-3-

1   motion to strike is to avoid the expenditure of time and money that must arise from litigating

2   spurious issues by dispensing with those issues prior to trial.'") (citation omitted), rev'd on other

3   grounds, 510 U.S. 517 (1994); Gross v. Diversified Mortgage Investors, 431 F. Supp. 1080,

4   1091-92 (S.D.N.Y. 1977) (striking allegations relating to fraudulent activity before a certain date

5   because plaintiffs failed to plead facts showing that they relied on any misleading reports or in

6   what manner the reports were false and misleading).

7                                **STATEMENT OF FACTS**[1]

8              Douglas N. Woodrum is alleged to have served as a CNET director from 1997 until

9   October 2000, and as the Company's Chief Financial Officer from 1997 until October 2004.

10  (Compl. ¶ 36.)  Plaintiffs allege that Mr. Woodrum received three "backdated" stock option grants:

11  (i) April 17, 2000 (125,000 options); (ii) October 8, 2001 (170,000 options); and (iii) June 24, 2003

12  (150,000 options).  (Id. ¶¶ 66, 69, 71.)  According to Plaintiffs, each of these grants was

13  "authorized and approved " by CNET's Compensation Committee and ratified by CNET's Board

14  of Directors.  (Id. ¶¶ 212 n.5, 214 n.6, 215 n.7.)  Mr. Woodrum did not serve on the

15  Compensation Committee (id.) and was not a Board member after October 2000.  (Id. ¶ 36.)

16             Plaintiffs allege that the stock options at issue in this case were granted by CNET under

17  five stock option plans:  the 1994 Stock Option Plan; the 1997 Stock Option Plan; the 2000 Stock

18  Incentive Plan; and the 2004 Stock Incentive Plan.  (Id. ¶ 149.)  Plaintiffs do not specify which

19  option grants to Mr. Woodrum were made under which plan, but instead generically charge that

20  the dates selected for the grant of Mr. Woodrum's options were earlier than the dates on which

21  the decisions were made to issue the grants.  (Id. ¶¶ 12, 61.)  Plaintiffs claim that this date

22  selection (which Plaintiffs describe as "backdating") violated the terms of all of CNET's stock

23  option plans.  (Id. ¶ 73.)

24             Based on the terms of CNET's 1994 and 1997 Plans, of which this Court may take

25  judicial notice, that claim is demonstrably false.  CNET's 1994 and 1997 stock option plans

26  _____

27  [1]      Mr. Woodrum also joins in and incorporates the Statement of Facts in the Ashe Motion.

28
                                              -4-

specifically permitted the Compensation Committee or the Board of Directors to select a grant date earlier than the date on which the decision to issue the stock options was made. The 1994 plan provides: "The 'Date of Grant' of an Option under the Plan will be the date on which the Committee awards the Option *or, if the Committee so determines, the date specified by the Committee as the date the award is to be effective*." (Emphasis added.) (Declaration of Benjamin D. Singerman Ex. A at § 7.) Similarly, the 1997 plan (amended in 1999) provides: "The Date of Grant of an Option under the Plan shall be the date on which the Board or the Committee awards the Option *or, if the Board or the Committee so determines, the date specified by the Board or the Committee as the date the award is to be effective*." (Emphasis added.) (Id. Ex. B at § 7.) Accordingly, the terms of the 1994 and 1997 Plans permitted the authorizing entity to select a grant date earlier than the date on which the decision to issue the stock options was made.

Plaintiffs allege that Mr. Woodrum "assisted in the preparation" of CNET's purportedly misleading "annual and quarterly reports from 1997 until at least 2004," which improperly accounted for the stock options CNET granted to him and to the other defendants. (Id. ¶¶ 36, 76-79, 140-183). Mr. Woodrum was not involved in the preparation or issuance of CNET's 2005 Form 10-K. (Id. ¶ 183.) Plaintiffs fail to plead any facts showing that Mr. Woodrum made decisions regarding the accounting treatment for the options or that he knew or was deliberately reckless in disregarding that the Company's public financial statements were materially false or misleading respecting the validity and accounting treatment for the options at the time the statements were issued.

Plaintiffs additionally allege that Mr. Woodrum "reviewed, approved and helped to prepare each proxy statement CNET filed since at least 1997," including the proxy statement filed on April 10, 2006. (Compl. ¶¶ 36) But again, Plaintiffs fail to plead any facts showing that Mr. Woodrum knew any of these statements was false or misleading or was deliberately reckless in disregarding their falsity. Further, Plaintiffs admit that Mr. Woodrum was no longer a CNET director or officer in 2006. (Id.). Thus, he could not have been involved in the review, approval

1    or preparation of CNET's 2006 proxy statement, which was issued on or about April 10, 2006.

2    (Id. ¶ 109.)

3                                          **ARGUMENT**

4    **I.    THE SECTION 10(b) CLAIM AGAINST MR. WOODRUM SHOULD BE**
5    **       DISMISSED.**

6             Section 10(b) and Rule 10b-5 make it unlawful for any person, in connection with the

7    purchase or sale of any security: (i) to employ any device, scheme, or artifice to defraud or

8    engage in any act, practice, or course of business that operates or would operate as a fraud or

9    deceit upon any person; or (ii) to make any untrue statement of a material fact or omit any

10   material fact that is necessary to make the statements made not misleading.  See 15 U.S.C. §

11   78j(b); 17 C.F.R. § 240.10b-5 (2007); Ariba Sec. Litig., 2005 WL 608278, at *6 (Section 10(b)

12   "prohibits only two types of conduct:  (1) 'the making of a material misstatement (or omission)'

13   and (2) 'the commission of a manipulative act'") (citation omitted).  It is unclear from the

14   Complaint whether Plaintiffs are attempting to allege a "scheme" or a "misstatement" claim on

15   behalf of CNET with respect to its granting of stock options to Mr. Woodrum.  Under either

16   theory, the Section 10(b) claim against Mr. Woodrum fails.

17       **A.    Plaintiffs Have Failed To Plead Facts Showing That Mr. Woodrum Engaged**
18       **      In A Fraudulent Scheme.**

19           To state a Section 10(b) claim against Mr. Woodrum based on his alleged participation in the

20   purported stock options backdating scheme, Plaintiffs must plead particularized facts demonstrating

21   that Mr. Woodrum "engaged in conduct that had the principal purpose and effect of creating a false

22   appearance of fact in furtherance of the scheme."  Simpson v. AOL Time Warner Inc., 452 F.3d

23   1040, 1048 (9th Cir. 2006), pet. for cert. filed, 75 USLW 3236 (Oct. 19, 2006).  It is "not enough" for

24   Plaintiffs to allege "that a *transaction* in which [Mr. Woodrum] was involved had a deceptive

25   purpose and effect; rather the defendants' own conduct contributing to the transactions or overall

26   scheme must have had a deceptive purpose and effect."  Id. (emphasis in original; footnote omitted).

27   Significantly, if Mr. Woodrum participated in a *legitimate* transaction that did not have a deceptive

28
                                              -6-

1   purpose or effect, a Section 10(b) claim will not lie even if he knew or intended that another person

2   would manipulate the transaction to effectuate a fraud.  Id. at 1050 ("Participation in a legitimate

3   transaction, which does not have a deceptive purpose or effect, would not allow for a primary

4   violation even if the defendant knew or intended that another party would manipulate the transaction

5   to effectuate a fraud.").

6          The Ninth Circuit's decision in Simpson is instructive.  In Simpson, the plaintiffs alleged that

7   Homestore, AOL and AOL's officers, among other defendants, participated in a scheme to commit

8   securities fraud by overstating the revenues of Homestore.  Id. at 1042.  The plaintiffs alleged that the

9   AOL defendants engaged in a series of triangular transactions whereby Homestore entered into sham

10  transactions with various third party vendors to purchase products or services Homestore did not

11  need.  Id. at 1044. The vendors would then contract with AOL to purchase advertising on

12  Homestore's website under AOL's advertising reseller agreement with Homestore, an agreement that

13  was a legitimate business deal.  The vendors and AOL would keep a portion of the money as a

14  commission, with the rest returned to Homestore to permit it to record revenue.  AOL was alleged to

15  have jointly developed these transactions with Homestore and to have participated in providing less

16  than complete disclosures to Homestore's auditor that did not alert the auditor to the round-trip nature

17  of the transactions.  Id.  But the transactions in which AOL engaged were not illegitimate sham

18  transactions:  the advertising was actually purchased and placed.  In that context, the court  held:  "[I]t

19  is not alleged that AOL or its officers created sham business entities or engaged in deceptive conduct

20  *as part of illegitimate transactions*, and so we conclude that the element of using or employing a

21  deceptive device is not adequately alleged in this respect."  Id. at 1052 (emphasis added).

22         Here, as with the deficient claims against AOL in Simpson, Plaintiffs fail to plead that Mr.

23  Woodrum personally engaged in deceptive conduct as part of an illegitimate business transaction.

24  Plaintiffs cannot allege that all the challenged option grants were illegitimate because CNET's 1994

25  and 1997 option plans permitted the selection of a grant date earlier than the date on which the

26  decision to issue the grant was made.  (See supra at 5.)  Therefore, the transactions under which

27  options were granted consistent with the terms of those plans were legitimate, did not have a

28

-7-

1    deceptive purpose or false appearance, and thus cannot serve as the basis of a Section 10(b) claim.

2        To the extent that Plaintiffs wish to assert that the Compensation Committee or the Board

3    granted stock options to Mr. Woodrum under plans that did not permit the selection of an earlier

4    date, they have not done so adequately.  Rule 9(b) requires Plaintiffs to plead with particularity

5    all circumstances constituting the alleged fraud.  See Fed. R. Civ. P. 9(b); Simpson, 452 F.3d at

6    1046 ("[A]ll allegations of deceptive conduct are generally subject to Federal Rule of Civil

7    Procedure 9(b), which requires that 'the circumstances constituting the fraud . . . shall be stated

8    with particularity.'") (quoting Fed. R. Civ. P. 9(b)).  Plaintiffs have failed to specify any options

9    that were granted to Mr. Woodrum pursuant to stock option plans other than the 1994 and 1997

10   Plans.  Thus, they have not demonstrated that any of the challenged options were granted

11   pursuant to some illegitimate transaction, an essential component of a fraudulent scheme claim

12   under Rule 10b-5.  See Simpson, 452 F.3d at 1050.

13       Because they have failed to plead that any of the stock option grants to Mr. Woodrum were

14   illegitimate, to state a scheme claim under Rule 10b-5 against Mr. Woodrum, Plaintiffs must allege

15   that he committed a fraudulent act in connection with those transactions.  Plaintiffs allege that the

16   challenged stock options were not accounted for properly.  (Compl. ¶ 77.)  But that allegation is

17   insufficient to state that Mr. Woodrum committed a fraudulent act under Rule 10b-5.  Even if

18   Plaintiffs could plead particularized facts showing that Mr. Woodrum knew that the accounting for

19   the options was erroneous (which they do not), the Complaint does not plead that Mr. Woodrum

20   made the decisions regarding the accounting treatment for the options.  Thus, like the AOL

21   defendants in Simpson, Mr. Woodrum cannot be held liable for his purported involvement in a

22   legitimate transaction that became deceptive as the result of the willful or intentional fraud of another

23   party.  See Simpson, 452 F.3d at 1053.

24

25   **B.    Plaintiffs Have Failed To Plead That Mr. Woodrum's Purported
         Misstatements Caused CNET To Suffer Actual, Economic Loss.**

26       Any claim that Mr. Woodrum made false or misleading statements in connection with

27   CNET's issuance of stock options also fails. The majority of damages CNET allegedly incurred

28                                         -8-

are not actual losses and therefore cannot support a claim. And Plaintiffs do not allege that any actual loss CNET allegedly incurred was caused by a misstatement by Mr. Woodrum.[2]

## 1. The Majority of "Damages" Plaintiffs Allege Are Not Actual, Economic Losses.

To state a Section 10(b) claim, Plaintiffs must plead that CNET suffered "actual damages," i.e., actual "economic loss." See, e.g., 15 U.S.C. § 78bb(a) (a plaintiff must plead "actual damages on account of the act complained of"); Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341 (2005) (noting that "economic loss" is an element of a claim under Section 10(b) and Rule 10b-5); Simpson, 452 F.3d at 1047 (same); Pelletier v. Stuart-James Co., 863 F.2d 1550, 1557-58 (11th Cir. 1989) ("The measure of damages in a Rule 10b-5 case is limited to actual pecuniary loss suffered by the defrauded party, and does not include any speculative loss of profits."). The majority of damages CNET allegedly incurred are not actual losses.

Plaintiffs allege that CNET has been exposed to "potential liability from regulators," "potential liability for violations of the securities laws," "possible delisting" by the NASD, and injury to its credibility. (Compl. ¶ 16.) But these alleged damages are purely speculative; they are not actual, economic losses.

Plaintiffs also allege that CNET recorded a smaller compensation expense than it should have for the challenged option grants. (Id. ¶¶ 74, 164, 170, 174, 178, 184.) But recording a smaller compensation expense is a benefit, not a loss, to the Company.

Plaintiffs allege that CNET was forced "to pay back millions of dollars in debt" after defaulting on its debt agreement. (Compl. ¶¶ 6, 16.) But repayment of a debt is also not a loss

---

[2]      This Section 10(b) claim also fails because, as set forth in the Ashe Motion, Plaintiffs have not pled with specificity that any defendant – including Mr. Woodrum – knew that any challenged public statements were false or that any defendant was deliberately reckless in disregarding the falsity of the statements.

1    because CNET obviously had the benefit of the funds before the loan was repaid.[3]

2

3              **2.    Plaintiffs Fail To Plead Loss Causation With Respect To Any Other Economic Losses To CNET.**

4         Plaintiffs also allege that CNET was damaged by Mr. Woodrum because Mr. Woodrum

5    allegedly received options from CNET to purchase stock "at an unfair and improper low price"

6    (Compl. ¶ 195) and that CNET incurred costs associated with investigating and restating CNET's

7    financial statements.  (Id. ¶ 16.)  But even if true, these allegations fail to establish the necessary

8    element of loss causation, i.e., that Mr. Woodrum's misstatements caused the losses.  See 15

9    U.S.C. § 78u-4(b)(4) ("[T]he plaintiff shall have the burden of proving that the act or omission of

10   the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to

11   recover damages.").

12        To plead loss causation, Plaintiffs must demonstrate a "causal connection" between the

13   alleged economic loss and the alleged misrepresentations.  See Dura, 544 U.S. at 342.  It is not

14   sufficient to allege that the misstatements merely "touch[] upon, a later economic loss."  Id. at

15   343.  Rather, "to establish loss causation, 'a plaintiff must allege . . . that the subject of the

16   fraudulent statement or omission was the cause of the actual loss suffered.'"  Lentell v. Merrill

17   Lynch & Co., 396 F.3d 161, 173 (2d Cir. 2005), cert. denied, 126 S. Ct. 421 (2005) (citation

18   omitted); see Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP, __ F.3d __, No. 05-

19   4322, 2007 WL 102985, at *15 (7th Cir. Jan. 17, 2007) ("To plead loss causation, the plaintiff

20   must allege that it was the very facts about which the defendant lied which caused its injuries.")

21   (citation omitted).

22        Here, Plaintiffs allege that Mr. Woodrum misrepresented: (i) that the challenged stock

23   options were granted with an exercise price equal to the fair market value of the Company's

24   stock on the date of the grant; (ii) that the Company complied with APB 25; (iii) that CNET's

25   _____

26   [3]    To the extent Plaintiffs have failed to plead actual damages, that failure is also fatal to any
     scheme claim because a showing of actual damages is required under both theories of Section
27   10(b) recovery.  See 15 U.S.C. § 78bb(a); Dura, 544 U.S. at 341.

28

                                                   -10-

1   financial statements were presented in accordance with Generally Accepted Accounting

2   Principles; (iv) CNET's actual expenses and revenues; and (v) the purposes of CNET's stock

3   option plans and option grants.  (Compl. ¶¶ 77, 114-15, 140-87, 84-111.)  But Plaintiffs fail to

4   demonstrate that these purported misstatements actually caused CNET to incur a loss.

5          First, the grant of a stock option at an alleged "unfair" price did not cause a loss to CNET.

6   Under Plaintiffs' theory, CNET suffers the economic loss – receiving less than the value it would

7   have received had the option been fairly priced – only when the option is exercised by Mr.

8   Woodrum.  (Id. ¶ 47.)  If the option is not exercised before it expires, CNET does not incur an

9   economic loss.  See Dura, 544 U.S. at 343 (holding that a purchase of stock at a price inflated by

10  material misstatements "will sometimes play a role in bringing about a future loss," but that is

11  insufficient to establish that the misstatement caused a loss) (emphasis in original).  Here,

12  Plaintiffs do not sufficiently allege that Mr. Woodrum exercised unfairly priced options to

13  CNET's loss.  Although Plaintiffs claim that Mr. Woodrum "exercised backdated options" and

14  sold stock (Compl. ¶ 191), Plaintiffs do not indicate which portion of the shares sold by him was

15  stock obtained from the exercise of allegedly backdated options and how much CNET was

16  allegedly damaged by the exercise of those options.  This conclusory pleading is insufficient

17  under Dura, 544 U.S. at 347 (holding that a plaintiff claiming an economic loss must provide the

18  defendant "with some indication of the loss and the causal connection that plaintiff has in mind").

19         Second, Plaintiffs fail to show how Mr. Woodrum's alleged false statements  respecting

20  compliance with APB 25, the accuracy of CNET's financial statements or the purposes of

21  CNET's stock option plans and grants caused any economic loss to CNET.  In addition, the costs

22  of restatement, although perhaps out-of-pocket costs to CNET, were not caused by alleged

23  misrepresentations by Mr. Woodrum.  These costs were incurred as a result of erroneous

24

25

26

27

28

accounting judgments respecting the accounting treatment of stock options, which Mr. Woodrum is not alleged to have made or directed.[4]

**C.     The Section 10(b) Claim Against Mr. Woodrum Is Time-Barred To The Extent It Is Based On Alleged Conduct Or Statements By Him Before June 19, 2001.**

The Court should also dismiss the Section 10(b) claim to the extent it is based on alleged statements and conduct that occurred outside the absolute limitations period.  Under the Sarbanes-Oxley Act of 2002 ("SOX"), the statute of limitations for a claim under Section 10(b) of the Exchange Act is two years after the discovery of facts constituting the violation, but not more than five years from the date of the violation.  See 28 U.S.C. § 1658(b)(1)(2); see also Siemers, 2006 WL 2355411, at *13 ("[N]o plaintiff can bring an action under Section 10(b) of the 1934 Act or under Section 10b-5 more than five years after the violation.").  The five-year limitations period is the outside limit and is not subject to equitable tolling.  See, e.g., Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363 (1991) (holding that the outer limitations period for a Section 10(b) claim serves as a statute of repose in lieu of equitable tolling); Griggs v. Pace America Group, Inc., 170 F.3d 877, 881 n.3 (9th Cir. 1999) (holding that the outer limitations period was "intended to be a maximum limit").

The first complaint in this action was filed on June 19, 2006.  Accordingly, to the extent the Section 10(b) claim against Mr. Woodrum is based on alleged wrongdoing before June 19, 2001, that claim is barred as a matter of law under the maximum five-year limitations period.[5]

---

[4]     Similarly, CNET's alleged investigative costs do not establish economic loss caused by Mr. Woodrum's alleged misrepresentations.  CNET investigated its stock options granting practices to determine whether and to what extent there were problems with the Company's practices.  The investigation was done to determine *if* there had been any misstatements; it was not done because of them.  CNET would have incurred those costs even if Mr. Woodrum did not make any misstatements.

[5]     To the extent the Section 10(b) claim is based on any alleged statements or conduct by Mr. Woodrum before July 30, 1999, the claim also is barred under the pre-SOX three-year statute of limitations applicable to Section 10(b) claims because the limitations period had already expired by the time SOX was enacted and took effect on July 30, 2002, and SOX did not revive

-12-

1   This means that the Section 10(b) claim against Mr. Woodrum is barred to the extent it is based

2   on CNET's 1997, 1998, 1999, and 2000 Forms 10-K, CNET's Forms 10-Q during 1997, 1998,

3   1999, 2000 and for the first quarter of 2001, CNET's 1999, 2000 and 2001 proxy statements, and

4   the stock option grants dated June 3, 1998, May 25, 1999, April 17, 2000, June 30, 2000 and

5   October 18, 2000.

6

7   **II.    THE SECTION 14(a) CLAIM AGAINST MR. WOODRUM SHOULD BE
         DISMISSED.**

8

9          **A.    Plaintiffs Have Failed To Plead That The Proxy Statements Were An
                 "Essential Link" In The Issuance Of The Challenged Stock Options.**

10          The Section 14(a) claim against Mr. Woodrum fails because Plaintiffs have not pled that

11  the proxy statements Mr. Woodrum allegedly "reviewed, approved and helped to prepare" were

12  an essential link in the issuance of the challenged stock options.  (Compl. ¶ 36.)  To state a

13  Section 14(a) claim, Plaintiffs must allege that "'the proxy solicitation itself, rather than the

14  particular defect in the solicitation materials, was "an essential link" in the accomplishment of

15  the transaction.'"  Fisher v. Kanas, No. 06-CV-1187, 2006 WL 3626335, at *4 (E.D.N.Y. Dec. 7,

16  2006) (quoting Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 385 (1970)); see also Gaines v.

17  Haughton, 645 F.2d 761, 776 (9th Cir. 1981) (holding that plaintiffs must plead a "causal nexus"

18  between the challenged transactions and the proxy statements).  In other words, Plaintiffs must

19  show that the transactions challenged in the Complaint were the *subject* of the proxy statements.

20  Fisher, 2006 WL 3626335, at *6 (holding that a Section 14(a) claim "should be sustained only

21  when it challenges a transaction which was the subject of the proxy materials."  (emphasis added;

22  citation omitted).  Plaintiffs cannot meet that burden.

23

24  _____

25  previously expired claims.  See In re Heritage Bond Litig., 289 F. Supp. 2d 1132, 1148 (C.D.
    Cal. 2003) (holding that SOX's amended statute of limitations "cannot apply to claims already
26  barred at the time of its enactment" and that any such claims "cannot be revived by the amended
    statute of limitations").
27

28

-13-

1    As it relates to Mr. Woodrum, Plaintiffs' Complaint challenges the issuance of certain

2    stock option grants mentioned in the Company's proxy statements from 1999 through 2005.  But

3    none of those option grants was the subject of any of the proxy statements.[6]  CNET's proxy

4    statements for 1999 through 2005 solicited shareholder votes to: (i) elect directors; (ii) ratify the

5    Company's selection of its independent auditors; (iii) amend various options plans to permit an

6    option exchange program; (iv) approve the Company's 2004 stock option plan; and (v) approve

7    the increase of shares available for issuance under the Company's 1997 and 2004 stock options

8    plans.  (Compl. ¶ 83.)  The election of directors was unrelated to CNET's issuance of stock

9    options.  Therefore, the proxy statements that solicited votes to elect directors (i.e., the 1999

10   through 2005 proxy statements) were not an "essential link" in the issuance of the challenged

11   options.  See, e.g., Gaines, 645 F.2d at 775-76 (affirming dismissal of Section 14(a) claim because

12   the proxy statement solicited shareholder votes for election of directors, while the complaint

13   challenged the directors' allegedly illegal foreign payments:  "Any injury to [the company's]

14   shareholders from the corporation's illegal foreign payments stems directly from the corporate

15   waste and mismanagement involved in authorizing those payments and not from allegedly

16   misleading proxy solicitations dealing with unrelated corporate business matters [i.e., the election

17   of directors].");  General Electric Co. v. Cathcart, 980 F.2d 927, 933 (3d Cir. 1992) (affirming

18   dismissal of Section 14(a) claim because the complaint challenged various acts of director

19   mismanagement, while the proxy statements solicited votes for the re-election of the directors:

20   "The pecuniary harm to [the company] that [plaintiff] alleges resulted from the [defendants']

21   mismanagement.  Yet the mere fact that omissions in proxy materials, by permitting directors to

22   win re-election, indirectly led to financial loss through mismanagement will not create a

23   sufficient nexus with the alleged monetary loss . . . .  Thus, the [defendants'] re-election as

24

25

26   [6]    Plaintiffs also challenge allegedly false statements in CNET's 2006 proxy statement, but
     Mr. Woodrum was no longer affiliated with CNET at that time.  (Compl. ¶ 36.)
27

28
MOTION TO DISMISS OR STRIKE PORTIONS OF SECOND AMENDED CONSOLIDATED VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT, AND JOINDER IN MOTION OF DEFENDANTS BRIGGS ET AL. TO DISMISS;
CASE NO. 06 –3817 (WHA)

1   directors did not create any cognizable harm because the shareholders' votes did not authorize

2   the transactions that caused the losses.") (emphasis in original).

3          The selection of auditors likewise was unrelated to stock options.  Therefore, the proxy

4   statements that solicited votes to ratify the appointment of auditors (i.e., the 1999 through 2005

5   proxy statements) were not an "essential link" in the issuance of the challenged options.  See,

6   e.g., Ariba Sec. Litig., 2005 WL 608278, at *8-9 (dismissing Section 14(a) claim where the

7   complaint challenged the company's fraudulent compensation practices because the proxy

8   statement, which solicited shareholder votes for the ratification of the appointment of the

9   company's independent auditors and selection of directors, was insufficiently "linked" to the

10  fraudulent scheme challenged in the complaint).

11         Although several proxy statements requested approval or amendment of CNET's stock

12  options plans, none of the proxy statements that solicited shareholder approval to adopt or amend

13  the plans requested shareholder approval to issue the challenged stock options.  As a result, the

14  proxy statements that solicited shareholder approval to adopt or amend CNET's stock option

15  plans (i.e., the 1999, 2000, 2002, 2003 and 2004 proxy statements) also were not an "essential

16  link" in the issuance of the challenged options.  See Gaines, 645 F.2d at 775 (holding that a 14(a)

17  claim will not lie where "the underlying transaction did not require shareholder approval");

18  Brayton v. Ostrau, 561 F. Supp. 156, 163 (S.D.N.Y. 1983) (dismissing Section 14(a) claim

19  because "[t]he buy-out agreement under attack in this action was not subject to approval by the

20  [company's] shareholders and was not a subject of the allegedly misleading proxy materials");

21  Fisher, 2006 WL 3626335, at *6 (dismissing Section 14(a) claim because "the challenged

22  change-in-control executive compensation agreements were not subject to approval by the

23  shareholders and although mentioned in the proxies, were not the subject of the challenged

24  proxies").  As a result, Plaintiffs cannot demonstrate that any of CNET's proxy statements that

25  Mr. Woodrum allegedly reviewed, approved or helped to prepare was an "essential link" in the

26  issuance of the challenged stock options.  Thus, Plaintiffs cannot state a Section 14(a) claim on

27  CNET's behalf against Mr. Woodrum.

28

-15-

1

**B.    The Section 14(a) Claim Against Mr. Woodrum Is Time-Barred To The**
**Extent It Is Based On Proxy Statements Issued Before June 19, 2003.**

2

3        The Court should dismiss the Section 14(a) claim against Mr. Woodrum to the extent it is

4 based on alleged statements and conduct that occurred outside the absolute limitations period.

5 The statute of limitations for a claim under Section 14(a) of the Exchange Act is one year after

6 the discovery of facts constituting the violation, but not later than three years from the date of the

7 violation.  See Westinghouse Elec. Corp. v. Franklin, 993 F.2d 349, 353, 356-57 (3d Cir. 1993)

8 (holding that Section 14(a) claims are barred if they are not brought before the earlier of three

9 years from the date of the alleged violation or one year from discovery thereof).[7]  This three-year

10 limitation is an outside limit and is not subject to equitable tolling.  See, e.g., Lampf, Pleva,

11 Lipkind, Prupis & Petigrow, 501 U.S. at 363.  Because the first complaint in this action was filed

12 on June 19, 2006, the Section 14(a) claim against Mr. Woodrum is time-barred under the

13 maximum three-year limitations period to the extent it is based on the proxy statements that were

14 filed on April 22, 1999, April 24, 2000, April 30, 2001, May 2, 2002, April 10, 2003 – more than

15 three years before Plaintiffs commenced this action.

16

17 **III.    THE SECTION 20(a) CLAIM AGAINST MR. WOODRUM SHOULD BE**
**DISMISSED.**

18

19 **A.    Plaintiffs Have Failed To Plead That Mr. Woodrum Had The Power To**
**Control And Did Control A Primary Violator.**

20        The Court should dismiss Plaintiffs' Section 20(a) claim against Mr. Woodrum because

21 Plaintiffs have not alleged – nor, given their fiduciary obligations to CNET, could they allege –

22 that CNET is a primary violator of the securities laws.  See 15 U.S.C. § 78t(a) (to state a prima

23 facie claim of "control person" liability, a plaintiff must plead facts showing that the defendant

24

_____

25 [7]        Numerous courts have held that SOX's extended statute of limitations for fraud claims
under Section 10(b) is not applicable to claims under Section 14(a).  See, e.g., In re Global
26 Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d 189, 197 (S.D.N.Y. 2003) ("[B]y its plain text,
[SOX's extended limitations period] does not apply to claims under sections 11 and 14.");  In re
27 Exxon Mobile Corp. Sec. Litig., 387 F. Supp. 2d 407, 423-24 (D.N.J. 2005) (holding same).

28

1    exercised actual power or control over a primary violator of the securities laws).  Thus, the fact

2    that Mr. Woodrum was a CNET officer and director is irrelevant.

3        To the extent Plaintiffs allege that the other individual defendants are primary violators,

4    that claim fails because Plaintiffs have not pled any facts demonstrating that Mr. Woodrum had

5    the ability to control and did control any of those defendants.  See In re McKesson HBOC, Inc.

6    Sec. Litig., 126 F. Supp. 2d 1248, 1277 (N.D. Cal. 2000) (holding that plaintiff failed to state a

7    Section 20(a) claim because the complaint did "not identify how the Section 20(a) defendants

8    controlled specific Section 10(b) defendants" or "the manner in which the [Section 20(a)]

9    defendants exercised day-to-day control over defendants properly alleged to have committed

10   violations of Section 10(b)") (citing In re ZZZZ Best Sec. Litig., 864 F. Supp. 760, 970 (C.D.

11   Cal. 1994)).[8]

12

13      **B.    The Section 20(a) Claim Against Mr. Woodrum Is Time-Barred To The Extent It Is Based On Stale Alleged Violations Of Sections 10(b) Or 14(a).**

14       Even if the Section 20(a) claim were not barred in its entirety, the Court should still

15   dismiss the claim to the extent it is based on alleged violations of Section 10(b) or Section 14(a)

16   that are outside the limitations periods for those claims.  Where, as here, the underlying claim is

17   time barred, the Section 20(a) claim predicated thereon is also barred.  See Dodds v. Cigna Sec.,

18   Inc., 12 F.3d 346, 350 n.2 (2d Cir. 1993) (dismissing Section 10(b) and Section 20(a) claims on

19   statute of limitations grounds and explaining that "[b]ecause Section 20 merely creates a

20   derivative liability for violations of other sections of the Act, claims under Section 20 are

21   governed by the limitations periods for those other sections").

22

23

24

_____

25   [8]    The Section 20(a) claim against Mr. Woodrum also fails because, as demonstrated in the Ashe and Currie Motions, Plaintiffs have not pled a predicate violation of Section 10(b) or

26   Section 14(a).  See Lipton v. PathoGenesis Corp., 284 F.3d 1027, 1035 n.15 (9th Cir. 2002)

27   (dismissing Section 20(a) claim for failure to plead predicate Section 10(b) claim).

28

-17-

1

## <u>CONCLUSION</u>

2

The Court should dismiss the claims for violation of Sections 10(b), 14(a) and

3

20(a) and Rules 10b-5 and 14a-9 brought on CNET's behalf against Mr. Woodrum.

4

Alternatively, to the extent that the Court does not dismiss these claims, the Court should strike

5

the portions of those claims based on statements made and conduct that occurred outside the

6

applicable limitations periods.

7

Dated:  February 26, 2007                SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

8

9

By:  _____/s/  James E. Lyons_____

10

JAMES E. LYONS
Attorneys for Defendant

11

Douglas N. Woodrum

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-18-