1  DARREL J. HIEBER (CA Bar No. 100857)
   DANIEL M. RYGORSKY (CA Bar No. 229988)
2  *dhieber@skadden.com*
   *drygorsk@skadden.com*
3  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue
4  Los Angeles, California 90071-3144
   Tel: (213) 687-5000
5  Fax: (213) 687-5600

6  Attorneys for Defendants
   PRICELINE.COM INC., TRAVELWEB LLC
7  and LOWESTFARE.COM INC.

8  (APPEARANCES OF ADDITIONAL COUNSEL LISTED ON NEXT PAGE)

9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                   OAKLAND DIVISION

13

| | |
|---|---|
| CITY OF OAKLAND, CALIFORNIA, | Case No. C 07-03432 SBA |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE CITY OF OAKLAND'S COMPLAINT;** |
| vs. | |
| HOTELS.COM, L.P.; HOTELS.COM GP, LLC; TRIP NETWORK, INC. (d/b/a CHEAP TICKETS, INC.); TRAVELPORT, INC. (f/k/a CENDANT TRAVEL DISTRIBUTION SERVICES GROUP INC.); EXPEDIA, INC.; INTERNETWORK PUBLISHING CORP. (d/b/a LODGING.COM); LOWEST FARE.COM INCORPORATED; MAUPINTOUR HOLDING, LLC; ORBITZ, INC.; ORBITZ, LLC; PRICELINE.COM, INCORPORATED; SABRE HOLDINGS CORPORATION; SITE 59.COM, LLC; TRAVELOCITY.COM, INC.; TRAVELOCITY.COM, LP; TRAVELWEB LLC; TRAVELNOW.COM, INC. and DOES 1 THROUGH 1000, INCLUSIVE, | **MEMORANDUM IN SUPPORT THEREOF; and**<br><br>**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (filed under separate cover)**<br><br>Noticed for:   November 6, 2007<br>Time:            1:00 p.m. |
| Defendants. | |

26

27

28  ─────────────────────────────────────────
    Defendants' Notice of Motion and Motion to Dismiss the Complaint

1    Craig E. Stewart (State Bar No. 129530)          James P. Karen (*pro hac vice* forthcoming)
     Martha A. Boersch (State Bar No. 126569)         Deborah S. Sloan (*pro hac vice* forthcoming)
2    CEStewart@JonesDay.com                            JKaren@JonesDay.com
     MABoersch@JonesDay.com                            DSloan@JonesDay.com
3    JONES DAY                                         JONES DAY
     555 California Street, 26th Floor                 2727 North Harwood Street
4    San Francisco, California 94104                   Dallas, Texas 75201
     Telephone:   (415) 626-3939                       Telephone: (214) 220-3939
5    Facsimile:   (415) 875-5700                       Facsimile: (214) 969-5100

6    Attorneys for Defendants
     EXPEDIA, INC. and HOTELS.COM, L.P.
7
     Matthew Oster (State Bar No. 190541)
8    moster@mwe.com
     McDERMOTT, WILL & EMERY LLP
9    2049 Century Park East, 34th Floor
     Los Angeles, CA 90067
10   Telephone:   (310) 277-4110
     Facsimile:   (310) 277-4730
11
     Attorneys for Defendants
12   ORBITZ, LLC, TRIP NETWORK, INC. (D/B/A CHEAPTICKETS.COM),
     INTERNETWORK PUBLISHING CORP. (D/B/A LODGING.COM), TRAVELOCITY.COM,
13   L.P. and SITE59.COM, LLC

14   Paul E. Chronis (*pro hac vice* forthcoming)
     Elizabeth B. Herrington (*pro hac vice* forthcoming)
15   Purvi G. Patel (*pro hac vice* forthcoming)
     pchronis@mwe.co
16   eherrington@mwe.com
     ppatel@mwe.com
17   McDERMOTT, WILL & EMERY LLP
     227 West Monroe, Suite 4400
18   Chicago, IL 60610
     Telephone:   (312) 372-2000
19   Facsimile:   (312) 984-7700

20   Attorneys for Defendants
     ORBITZ, LLC, TRIP NETWORK, INC. (D/B/A CHEAPTICKETS.COM), and
21   INTERNETWORK PUBLISHING CORP. (D/B/A LODGING.COM)

22   Brian S. Stagner (*pro hac vice* application forthcoming)
     J. Chad Arnette (*pro hac vice* application forthcoming)
23   brian.stagner@khh.com
     chad.arnette@khh.com
24   KELLY HART & HALLMAN LLP
     201 Main Street, Suite 2500
25   Fort Worth, TX 76102

26   Of Counsel for Defendants
     TRAVELOCITY.COM, L.P. and SITE59.COM, LLC
27

28
Defendants' Notice of Motion and Motion to Dismiss the Complaint

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO THE COURT AND TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 6, 2007, at 1:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Saundra B. Armstrong, United States District Court, 1301 Clay Street, Oakland, CA 94612, Defendants Hotels.com, L.P., Internetwork Publishing Corp. (d/b/a Lodging.com), priceline.com Incorporated, Expedia, Inc., Site59.com, LLC, Travelocity.com, LP, Travelweb LLC, Lowestfare.com Incorporated, Trip Network, Inc. (d/b/a Cheaptickets.com), incorrectly named as Trip Network, Inc. (d/b/a Cheap Tickets, Inc) and Orbitz, LLC will and hereby do move the Court for an order dismissing the complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).[1]

This motion is based upon this notice of motion and motion, the supporting memorandum of points and authorities (including all exhibits thereto), the request for judicial notice, all other papers and pleadings herein, and such oral argument as the Court may permit.

Dated:  September 18, 2007        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


_/s/ Darrel J. Hieber_
DARREL J. HIEBER
Attorneys for Defendants
priceline.com Incorporated, Travelweb LLC
and Lowestfare.com Incorporated


Dated: September 18, 2007        JONES DAY


_/s/ Craig E. Stewart_
CRAIG E. STEWART
Attorneys for Hotels.com, L.P. and Expedia, Inc.

---

[1]  Plaintiff voluntarily dismissed Defendant Maupintour Holding, LLC, which does not join in this motion. Six non-operating companies are also named as defendants – Hotels.com GP, LLC, Travelport Americas, LLC (f/k/a Cendant Travel Distribution Services Group, Inc.), Orbitz, Inc., Sabre Holdings Corporation, Travelocity.com, Inc. and TravelNow.com, Inc. Each of these six companies is a parent, subsidiary or affiliate of one the Moving Defendants. Plaintiff is considering voluntarily dismissing these six defendants and any not so dismissed shall, by stipulation of the parties, file a motion to dismiss, or join in this motion, on or before September 28, 2007.

Defendants' Notice of Motion and Motion to Dismiss the Complaint
469922.02-Los Angeles Server 1A - MSW

Dated:  September 18, 2007          McDERMOTT WILL & EMERY LLP


_/s/ Matthew Oster_
MATTHEW OSTER
Attorneys for Orbitz, LLC, Trip Network, Inc. (d/b/a
Cheaptickets.com), Internetwork Publishing Corp. (d/b/a
Lodging.com), Travelocity.com LP and Site59.com, LLC

## ATTESTATION UNDER GENERAL ORDER 45

I, DARREL J. HIEBER, hereby declare pursuant to General Order 45 that I have obtained

the concurrence in the filing of this document from each of the other signatories listed above.

I hereby attest that the foregoing attestation is true and corrected.

Executed on September 18, 2007, in Los Angeles, California.

_/s/ Darrel J. Hieber_
Darrel J. Hieber

Defendants' Notice of Motion and Motion to Dismiss the Complaint

## TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS...........................................................................................i

TABLE OF AUTHORITIES ...............................................................................iii

STATEMENT OF ISSUES ...................................................................................1

INTRODUCTION ..................................................................................................1

    *The City Has Failed To Exhaust Administrative Remedies.* ...........................3

    *The OTC Defendants Are Not Liable For The Tax Imposed By The Ordinance Pre-Amendment*...........................................................................................4

    *The City's Tag-Along Equitable Claims Also Fail As A Matter Of Law* .........5

PROCEDURAL BACKGROUND........................................................................5

OVERVIEW OF RELEVANT STATUTORY PROVISIONS............................6

    *California's Enabling Act* .................................................................................6

    *The City's Transient Occupancy Tax Ordinance.* .............................................7

ARGUMENT .......................................................................................................10

I.    THE CITY'S COMPLAINT IS SUBJECT TO DISMISSAL FOR LACK OF JURISDICTION BECAUSE THE CITY HAS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES ......................................................10

    A.  The Legal Standard For Motions To Dismiss Under Rule 12(b)(1) .............10

    B.  A Taxing Authority Must Exhaust Administrative Remedies Before Seeking Judicial Relief ..........................................................................................10

    C.  The City Has Failed To Exhaust The Administrative Remedies Mandated In Its Tax Ordinance.......................................................................................11

II.    EVEN IF THE CITY WERE NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES, ITS COMPLAINT IS SUBJECT TO DISMISSAL FOR FAILURE TO STATE A CLAIM AGAINST ANY DEFENDANT..............................................................................................16

    A.  The Legal Standard For Motions to Dismiss Under Rule 12(b)(6) ..............16

    B.  The City Cannot State A Claim Against Any OTC Defendant Under The City's Hotel Occupancy Tax Ordinance..................................................................17

        1.    The Rules Governing Construction Of Tax Statutes And Ordinances ...........17

2.   None Of The OTC Defendants Has Any Obligations Under The Ordinance Because None Of Them Is "The Operator" Of A "Hotel" In Oakland ..............................................................................18

3.   The Consideration Paid By A Consumer And Retained By An OTC Defendant For Its Online Services Is Not "Rent Charged By The Operator" Of A Hotel Subject To The Tax Imposed By The Ordinance ........23

4.   The City's Conclusory Allegations of "Over-Collected," But Unremitted, Tax Cannot Save Its Failed Claims ..............................................25

C.  The City's Tag-Along Equitable Claims Also Fail As A Matter Of Law For The Same Reasons, And More..............................................................................26

1.   The City Has Not Stated A Claim Under Business & Professions Code Section 17200, *Et Seq.* ..............................................................................26

     *No Unlawful Business Practice* ..............................................................................27

     *No Unfair Business Conduct* ..............................................................................27

     *No Fraudulent Business Practice* ..............................................................................28

2.   The City Has Not Stated A Claim For Conversion, Imposition Of A .............. Constructive Trust Or Unjust Enrichment ..............................................................................29

3.   The City Has Not Stated A Claim For A Declaratory Judgment..................30

CONCLUSION..............................................................................30

Memorandum in Support of Defendants' Motion to Dismiss the Complaint

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                    **PAGE**

*Alvares v. Erickson,*
    514 F.2d 156 (9th Cir. 1975) .................................................................10

*Bell Atlantic Corp. v. Twombly,*
    127 S.Ct. 1955 (2007)......................................................................16

*Burger v. Superior Court,*
    151 Cal. App. 3d 1013 (1984) ........................................................29

*Conforte v. United States,*
    979 F.2d 1375 (9th Cir. 1992) ...............................................10 n.4

*Conley v. Gibson,*
    355 U.S. 41 (1957)...........................................................................16

*Dinosaur Dev. v. White,*
    216 Cal. App. 3d 1310 (1989) ........................................................30

*Epstein v. Washington Energy Co.,*
    83 F.3d 1136 (9th Cir. 1996) ..........................................................16

*Foley v. United States,*
    No. C06-7481 CW
    2007 U.S. Dist. LEXIS 64865 (N.D. Cal. Aug. 23 2007)...........10

*Forman v. C.I.R.,*
    199 F.2d 881 (9th Cir. 1952) ..........................................................22

*Garcia v. Los Banos Unified Sch. Dist.,*
    418 F.Supp.2d 1194 (E.D. Cal. 2006).......................................10 n.4

*Gould v. Gould,*
    245 U.S. 151 (1917)........................................................................17

*Greyhound Corp. v. United States,*
    495 F.2d 863 (9th Cir. 1974) .........................................................17

*Hassett v. Welch,*
    303 U.S. 303 (1938)................................................................18 n.10

*Lauriedale Assocs. v. Wilson,*
    7 Cal. App. 4th 1439 (1992) ..........................................................30

*Lund v. Leprino Foods Co.,*
    NO. CIV. S-06-0431,
    2007 U.S. Dist. LEXIS 46705 (E.D. Cal., June 20, 2007)...........13 n.7

*May Dep't Store v. Graphic Process Co.,*
    637 F.2d 1211 (9th Cir. 1980) .......................................................10

Memorandum in Support of Defendants' Motion to Dismiss the Complaint

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*,
   858 F.2d 1376 (9th Cir. 1988) .................................................................10

*Neitzke v. Williams*,
   490 U.S. 319 (1989) ...............................................................................16

*O'Guinn v. Lovelock Corr. Ctr.*,
   No. 06-15972,
   2007 U.S. App. LEXIS 21170 (9th Cir. Sept. 5, 2007) .......................15

*Schroeder v. Trans World Airlines, Inc.*,
   702 F.2d 189 (9th Cir. 1983) .................................................................16

*Stock West, Inc. v. Confederated Tribes*,
   873 F.2d 1221 (9th Cir. 1989) ...............................................................10

*In re Textainer P'ship Sec. Litig.*,
   No. C-05-0969 MMC,
   2007 U.S. Dist. LEXIS 5283 (N.D. Cal., Jan. 10, 2007) .....................16

**STATE CASES**

*AB Cellular LA, LLC v. City of Los Angeles*,
   150 Cal. App. 4th 747 (2007) ................................................................17

*AmerUS Life Ins. Co. v. Bank of Am., N.A.*,
   143 Cal. App. 4th 631 (2006) ................................................................29

*Bank of the West v. Superior Court*,
   2 Cal. 4th 1254 (1992) ...........................................................................29

*Bardin v DaimlerChrysler Corp*,
   136 Cal. App. 4th 1255 (2006) ..............................................................28

*Bernardo v. Planned Parenthood Fed. Of Am.*,
   115 Cal. App. 4th 322 (2004) ...........................................................27, 28

*Cal. Correctional Peace Officers Assoc. v. St. Personnel Bd.*
   10 Cal. 4th 1133 (2005) .........................................................................11

*Cel-Tech Communications, Inc. v. Los Angeles Cellular*,
   20 Cal. 4th 163 (1999) ...........................................................................28

*City of Los Angeles v. Centex Telemanagement*,
   29 Cal. App. 4th 1384 (1994) .............................................11, 12, 13, 14

*Communist Party v. 522 Valencia, Inc.*,
   35 Cal. App. 4th 980 (1995) ..................................................................29

*DaFonte v. Up-Right, Inc.*,
   2 Cal. 4th 593 (1992) .............................................................................19

Memorandum in Support of Defendants' Motion to Dismiss the Complaint

*Decorative Carpets, Inc. v. State Bd. of Equalization,*
    58 Cal. 2d 252 (1962) .................................................................25

*In re Derrick,*
    39 Cal. 4th 535 (2006) ...............................................................17

*Gregory v. Albertson's, Inc.,*
    104 Cal. App. 4th 845 (2002) ................................................26, 28

*Gutknecht v. City of Sausalito,*
    43 Cal. App. 3d 269 (1974) ...............................................18 n.10

*Hill v. Eureka,*
    35 Cal. App. 2d 154 (1939) ........................................................18

*Honig v. San Francisco Planning Dept.,*
    127 Cal. App. 4 th 520 (2005) ....................................................16

*Javor v State Bd. of Equalization ("Javor I"),*
    12 Cal. 3d 790 (1974) .................................................11, 25, 26

*Javor v State Bd. of Equalization ("Javor II")*
    73 Cal. App.3d 939 (1977) ........................................................26

*Khoury v. Maly's of Cal., Inc.,*
    14 Cal. App. 4th 612 (1993) ......................................................26

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (2003) .............................................................27

*Lennane v. Franchise Tax Bd.,*
    9 Cal. 4th 263 (1994) .................................................................17

*McAllister v. County of Monterey,*
    147 Cal. App. 4th 253 (2007) ..........................................10, 16 n.9

*McKell v. Washington Mut., Inc.,*
    142 Cal. App. 4th 1457 (2006) ..................................................27

*Peck v. State of California,*
    96 Cal. App. 2d 638 (1950) ...............................................18 n.10

*People v. Casa Blanca Convalescent Homes, Inc.,*
    159 Cal. App. 3d 509 (1984) .....................................................27

*People v. Standish,*
    38 Cal. 4th 858 (2006) ........................................................12 n.5

*People ex rel. Lockyer v. Shamrock Foods Co.,*
    24 Cal. 4th 520 (2000) ...............................................................16

*Rider v County of San Diego,*
    11 Cal. App. 4th 1410 (1992) ....................................................25

-v-

Memorandum in Support of Defendants' Motion to Dismiss the Complaint

*Rojo v. Kliger,*
    52 Cal. 3d 65 (1990) ................................................................11

*Schnall v. Hertz Corp.,*
    78 Cal. App. 4th 1144 (2000) ...................................................28

*Searle v. Wyndham Int'l Inc.,*
    102 Cal. App. 4th 1327 (2002) .................................................29

*Smith v. Superior Court.,*
    39 Cal. 4th 77 (2006) ..............................................................22

*Southern Pac. Co. v. McColgan,*
    68 Cal. App. 2d 48 (1945) .......................................................22

*Stephens v. County of Tulare,*
    38 Cal. 4th 793 (2006) ............................................................17

*Walker v. Countrywide Home Loans, Inc.,*
    98 Cal. App. 4th 1158 (2002) ...................................................29

*Wasatch Prop. Mgmt. v. Degrate,*
    35 Cal. 4th 1111 (2005) ..........................................................19

*Wertin v. Franchise Tax Bd.,*
    68 Cal. App. 4th 961 (1998) ..............................................11, 12

**STATUTES**

Cal. Bus. & Prof. Code § 17200, *et seq.* .......................................26

Cal. Bus. & Prof. Code § 21750, *et seq.* .......................................19

Cal. Rev. & Tax. Code § 7280(a) ......................................................6

Oakland Mun. Code Chapter 4.24, *et seq.* ........................... *passim*

**OTHER AUTHORITY**

The American Heritage Dictionary, 4th Ed. (2004) .......................19

*Barron's Dictionary of Business Terms (2000)* ............................19

Dictionary.com Unabridged (v. 1.1) ...............................................19

Memorandum in Support of Defendants' Motion to Dismiss the Complaint

**STATEMENT OF ISSUES (Civil L.R. 7-4(a)(3))**

1. Is the City of Oakland's lawsuit asserting that Defendants owe the City taxes under the transient occupancy tax ordinance subject to dismissal for lack of subject matter jurisdiction because the City has failed to exhaust the administrative remedies mandated by that ordinance?

2. If the City is not required to exhaust administrative remedies, is its lawsuit subject to dismissal because the City has failed to state a claim against any Defendant for (a) violation of its tax ordinance, (b) violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*, (c) conversion, (d) unjust enrichment, (e) constructive trust, or (f) declaratory judgment?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

By this ill-conceived suit, the City of Oakland (the "City") purports to assert causes of action against virtually every company in the online travel industry. The City contends ten online travel companies (the "OTC Defendants"), which facilitate the making of hotel reservations for customers, are liable for transient occupancy taxes on revenues for online services that the City has never previously asserted are subject to occupancy tax.

The City's Complaint confirms that (i) this Court lacks jurisdiction over the City's tax suit because the City has failed to exhaust the administrative remedies mandated by the City's transient occupancy tax ordinance; and (ii) even if the City were not required to exhaust those remedies, it cannot allege a viable cause of action under that ordinance against any of the OTC Defendants. Therefore, the City's Complaint should be dismissed.[1]

Each of the OTC Defendants collects and displays travel-related information on the Internet and facilitates the making of hotel room reservations for customers. Before the OTC Defendants made their services available, a customer wishing to book a hotel room in a particular area had to use a map and the yellow pages to determine what hotels were located in the area, contact those hotels to collect information on their amenities, availability and room rates, compare those rates,

---

[1] For the Court's convenience, the ten moving Defendants do so jointly and, for this reason, by stipulation, this memorandum exceeds the normal page limit. *See* Stipulation & [Proposed] Order Setting Schedule for Defendants' Response to the Complaint & Briefing Schedule (filed 9/14/07).

Defendants' Notice of Motion and Motion to Dismiss the Complaint

1  and make a room reservation with a hotel.

2  The OTC Defendants provide customers with an efficient, convenient, alternative means of

3  obtaining comparative hotel information and making a hotel room reservation.  Each offers

4  customers the service of providing, in one place online, comparative information about hotels in a

5  selected locale, and then facilitating the customer's making of a room reservation with a particular

6  hotel.  When a customer uses an OTC Defendant's online services to make a reservation, she is

7  charged an amount to cover the room rent charged by the hotel, as well as the transient room tax

8  due under the City's tax ordinance on that amount.  The customer also is charged an amount the

9  OTC Defendant retains for providing its online facilitation services.

10  The City's transient occupancy tax ordinance imposes a tax of eleven percent of the "rent

11  charged by the *operator*" of a "hotel" for the privilege of occupying a room in the hotel.  Oakland

12  ("Oak.") Mun. Code Chapter 4.24, *et seq.* (the "Ordinance").[2]  When a customer makes a room

13  reservation at an Oakland hotel on her own, she is liable for the transient occupancy tax imposed

14  by the Ordinance, and the hotel "operator" collects and remits as tax from the customer 11% of the

15  "rent" it charges the customer for the room in its hotel.

16  Likewise, when a customer makes a room reservation through one of the OTC Defendants,

17  the hotel "operator" collects and remits as tax 11% of the "rent" the hotel charged for its room.

18  Thus, whether a customer uses an OTC Defendant to research and make a hotel reservation or does

19  the legwork herself, the end result is the same – the City receives 11% of the "rent charged by the

20  operator" of the "hotel" for the room in its hotel, as provided by the Ordinance.

21  The City seeks by this lawsuit to expand its tax base by ignoring the express limitations in

22  its own Ordinance and attempting to impose transient occupancy tax liability on the OTC

23  Defendants, none of which operates a hotel.  By doing so, the City seeks, for the first time, to

24  impose the tax on Internet services that have never before been subject to the tax.

25  In particular, the City asserts that, in addition to the tax on "rent charged by the operator" of

26  a hotel for the privilege of occupying a room, the Ordinance also imposes a tax on the amount an

27  _____

[2]  All emphasis in quoted material is added, and internal cites are omitted, unless otherwise noted.

-2-

28

1  OTC Defendant charges a customer and retains for online facilitation services, an amount that is

2  not "*rent* charged by the *operator*" of the hotel. None of the OTC Defendants owns or manages

3  any hotel in Oakland or anywhere else, and therefore, none of them is the "operator" of any hotel.

4       The City asserts purported causes of action for violation of the Ordinance, violation of Cal.

5  Bus. and Prof. Code §§ 17200, *et seq.* (the "UCL"), conversion, unjust enrichment, imposition of a

6  constructive trust, and declaratory judgment. As demonstrated below, the City's lawsuit is

7  precluded by its failure to exhaust the administrative remedies mandated by its own Ordinance.

8  Even if the City were not required to exhaust those remedies, its contention that the Ordinance

9  imposes tax obligations or liability on the OTC Defendants is refuted by the Ordinance's express

10  terms; all of the City's purported claims fail as a matter of law on several grounds.

11       ***The City Has Failed To Exhaust Administrative Remedies.*** One would expect if a taxing

12  authority believed a party had failed to pay a tax for which it is liable, that taxing authority would

13  undertake the usual administrative procedures for determining whether a party is liable for the tax,

14  and, if so, how much it owes – namely, the process of making an assessment of the asserted tax,

15  followed by an administrative hearing and appeal process to address disputes and, only then,

16  judicial review. One would not expect the taxing authority to instead run to court in the first

17  instance and seek judicial absolution to impose the tax. But that is exactly what the City has

18  impermissibly done here.

19       Oakland's premature lawsuit follows parallel actions against OTC Defendants brought by

20  the cities of Los Angeles and San Diego in state court asserting tax liability under their respective

21  transient occupancy tax ordinances. The state court recently dismissed each city's complaint for

22  lack of jurisdiction because the cities failed to exhaust the administrative remedies required by their

23  tax ordinances. The same result is mandated here.

24       The City of Oakland's Ordinance requires the City's Tax Administrator to undertake the

25  following steps before a lawsuit is filed: (1) assess the tax allegedly owed; (2) serve written notice

26  to the taxpayer of the assessment; and (3) participate in an administrative hearing at which

27  evidence is presented and a written determination made as to whether the alleged taxpayer is liable

-3-

28

1   for the tax, and if so, the amount of tax owed. The Ordinance then provides for an appeal before a

2   Board of Review. Judicial review can only occur once the City exhausts these administrative

3   procedures and remedies.

4       Where a statute provides administrative remedies, exhaustion is a prerequisite to subject

5   matter jurisdiction. The City has not initiated, much less exhausted, the administrative remedies

6   mandated by its Ordinance as to any OTC Defendant. As a result, the City's Complaint is subject

7   to dismissal for lack of jurisdiction.

8       ***The OTC Defendants Are Not Liable For Tax Imposed By The Ordinance.*** Moreover,

9   even if exhaustion were not required (which it is), the Complaint is subject to dismissal because it

10  fails to state a viable claim under the Ordinance against any OTC Defendant for payment of the tax

11  on the amount it charges customers and retains for its online facilitation services.

12      *First*, the OTC Defendants are not responsible for collecting, remitting or reporting the

13  hotel occupancy tax because the Ordinance imposes such obligations only on the "operators" of

14  hotels in Oakland, and none of the OTC Defendants operates a hotel. The Ordinance defines an

15  "operator" solely as "*the* person who is proprietor" or "the managing agent" of the "hotel," which,

16  in turn, is defined as an actual "space or structure for living ... offering the right to use such space

17  for ... sleeping accommodations." The City does not allege any OTC Defendant is the "proprietor"

18  or "the managing agent" of a hotel. And the Complaint confirms the City cannot allege facts that

19  would render any OTC Defendant that "person" for any hotel.

20      Each OTC Defendant is an online facilitator of hotel room reservations that provides a

21  valuable service to customers. Performing *some* tasks related to the reservation of *some* rooms in a

22  hotel does not make the OTC Defendant the "operator" of the hotel. The Ordinance makes clear

23  the "operator" is "*the* person" who owns or has daily management responsibility for the hotel, and

24  not one who merely performs functions related to the reservation of some rooms in the hotel. On

25  this ground alone, the City cannot state a claim against any OTC Defendant under its Ordinance.

26      *Second,* the Ordinance imposes the tax only on the "rent charged *by the operator*" of the

27  *hotel* for the "privilege of occup[ying]" a room in its hotel, and "room rental" includes only the

28  

-4-

Memorandum in Support of Defendants' Motion to Dismiss the Complaint

1  "total charge made *by a hotel* ... [for] overnight accommodations space furnished to a transient...."

2  The amount an OTC Defendant collects from a customer and retains for its online facilitation

3  services is not "*rent* charged *by the operator*" of the hotel, nor part of the "total charge made *by a*

4  *hotel*" for furnishing a room to the customer.  Rather, that amount is a charge by the OTC

5  Defendant and compensation for the information and facilitation services it provides.  On this

6  ground too, the City's purported claims against the OTC Defendants based on the Ordinance fail.

7       *Third,* even if all of the above express limitations in the Ordinance were also reasonably

8  susceptible to the City's contrary statutory constructions (which they are not), the OTC Defendants

9  would still be entitled to dismissal.  It is well settled that any ambiguity in a tax statute must be

10  strictly construed *against* the *taxing authority* and liberally *in favor* of the alleged taxpayer.  Thus,

11  any ambiguity in the Ordinance would have to be construed in the OTC Defendants' favor,

12  defeating the City's claims.

13       ***The City's Tag-Along Equitable Claims Also Fail As A Matter Of Law.***  The City's claims

14  for violation of the UCL, constructive trust, unjust enrichment, conversion and declaratory

15  judgment are also premised on the allegation that the OTC Defendants owe taxes under the

16  Ordinance, and thus fail for the above reasons, and for reasons unique to them.

17       Accordingly, the City's Complaint should be dismissed.

18  **PROCEDURAL BACKGROUND**

19       On December 30, 2004, the City of Los Angeles filed a complaint in Los Angeles Superior

20  Court against most of the Defendants named in this action, asserting purported causes of action for

21  violation of Los Angeles's transient occupancy tax ordinance, violation of the UCL, conversion,

22  constructive trust, and declaratory judgment on behalf of itself and a putative class of all California

23  cities that have enacted a transient occupancy tax ordinance, including the City of Oakland.  *City of*

24  *Los Angeles v. Hotels.com, L.P.*, Case No. BC 326693.

25       Though also a member of the putative class, the City of San Diego filed its own complaint

26  on February 8, 2006 in San Diego Superior Court; that complaint was identical to the Los Angeles

27  complaint, except San Diego asserted the same causes of action solely on its own behalf and based

28

Memorandum in Support of Defendants' Motion to Dismiss the Complaint

1  on alleged violations of its transient occupancy tax ordinance. *City of San Diego v. Hotels.com,*
2  *L.P.*, Case No. GIC 861117. The California Judicial Council ordered coordination of the two
3  actions in Los Angeles Superior Court.

4       Like Oakland, Los Angeles's and San Diego's respective transient occupancy tax ordinances
5  impose collection, reporting and remitting requirements only on hotel "operators" and impose a tax
6  only on the "rent charged by the operator" of the hotel for the privilege of occupying a room in that
7  hotel. Each city's ordinance includes detailed administrative procedures and remedies to determine
8  whether a party is liable for the tax, and, if so, how much it owes, before a party or may resort to
9  judicial action. Those procedures include a written assessment of tax allegedly owed, followed by
10 a hearing at which the assessment can be challenged, and then an appeal before a review board.

11      The OTC defendants in those actions demurred to the complaints on the grounds that (i)
12 each city had failed to exhaust the administrative remedies mandated by its tax ordinance; and (ii)
13 neither city could state a viable claim against any defendant. On July 27, 2007, the Los Angeles
14 Superior Court sustained the demurrers and dismissed both complaints for lack of subject matter
15 jurisdiction because each city had failed to exhaust administrative remedies. L.A. Opinion & Order
16 at 4-10; S.D. Opinion & Order at 3-5 (Exs. A & B hereto).

17      On June 29, 2007, the City of Oakland filed this lawsuit asserting the same causes of action
18 against largely the same Defendants based on alleged violations of its Ordinance. Like Los
19 Angeles and San Diego, the City did so without first initiating, much less exhausting, the
20 administrative procedures and remedies mandated by its Ordinance.

21          **OVERVIEW OF RELEVANT STATUTORY PROVISIONS**

22      ***California's Enabling Act.*** In 1963, the California State Legislature enacted legislation
23 permitting California cities and counties to levy a tax on the privilege of occupying a room in a
24 hotel Cal. Rev. & Tax. Code § 7280(a). The Enabling Act merely confers a general grant of
25 authority to cities to *enact legislation* that levies a tax "on the privilege of occupying a hotel room."
26 The Enabling Act says nothing more about a city's tax or how it is to be determined, collected or
27 remitted. If a city's legislative body decides to enact such legislation, the Enabling Act does *not* set

28

-6-

forth, much less mandate, *who* is to be taxed – the occupant or the hotel; *what* the tax is to be based on – per occupant, per stay, or per night; *how* the tax is to be determined – as a fixed amount per person, per stay or per night, or as a percentage of an amount the occupant pays; *the amount* of the tax – the fixed amount or the percentage and *the amount* to which the percentage applies; *who* will have tax *collection, remittance and reporting* obligations; or what *administrative procedures* will apply.  The Enabling Act left those specifics to each city to determine through the ordinance that city chose to enact, subject to constitutional and statutory limitations.

### ***The City's Transient Occupancy Tax Ordinance.***

The City chose to exercise the limited authority the Legislature conferred and enacted a transient occupancy tax ordinance.  Oak. Mun. Code §§ 4.24.010-4.24.170.[3]  The Ordinance imposes the tax only on the "*rent charged by the operator*" of a hotel for the privilege of occupying a room in its hotel:

> "For the privilege of occupancy in any hotel, each transient is subject to and shall pay a tax in the amount of eleven…percent of the *rent charged by the operator*. Said tax constitutes a debt owed by the transient to the city which is extinguished only by payment *to the operator of the hotel* at the time the rent is paid...." *Id.* § 4.24.030.

The Ordinance's definitions of Chapter 4.24.030's terms reaffirm its narrow reach:

*First,* the Ordinance defines "operator" solely as "*the* person who is *proprietor*" or "the *managing agent*" of the hotel:

> "'Operator' means *the person who is proprietor of a hotel* whether in the capacity of owner, lessee, sublessee, mortgagee in possession, licensee, or any other possessory agent of any type or character other than an employee, *the managing agent shall also be deemed an operator* for the purposes of this chapter and shall have the same duties and liabilities as his principal.  Compliance with the provisions of this chapter by either the principal or the managing agent shall however, be considered to be compliance by both." *Id.* § 4.24.020.

Thus, the hotel "operator" is narrowly defined as only "the person" who either (i) owns the hotel – the "*proprietor*" or (ii) manages the hotel, performing the functions of the "proprietor" as the authorized "managing agent"; and compliance by one is considered compliance by both.

*Second,* the Ordinance defines "hotel" as an actual *physical structure* intended to be used by transients for lodging:

> "'*Hotel*' means any public or private *space or structure* for living therein, including but

---

[3]  Ex. C hereto is the Ordinance in its entirety, with key provisions highlighted..

Memorandum in Support of Defendants' Motion to Dismiss the Complaint

not limited to any: inn, hostelry, tourist home or house, motel rooming house, mobile home or other living place within the city, offering the right to use such space for sleeping or overnight accommodations wherein *the owner or operator* thereof...for compensation, furnishes such right of occupancy to any transient...." *Id.*

*Third,* the Ordinance defines "rent charged by the operator" of the hotel that is subject to tax: "'*Room rental*' means *the total charge made by a hotel* ... for sleeping or overnight accommodations space furnished to a transient ... ." *Id.*

Consistent with these definitions, the Ordinance sets forth provisions for collection of the tax that impose obligations only on the "operator" – "*the* person who is [the] proprietor" or "the managing agent" – of the hotel: "Each *operator* shall collect the tax imposed by this chapter to the same extent and at the same time as the rent is collected from every transient." *Id.* § 4.24.050.

The Ordinance's registration requirements for hotel "operators" further reaffirm that it imposes the tax only on the "*rent* charged by the *operator*" of the hotel for a room in its hotel and intends a single "operator" per customer transaction. The Ordinance requires every "operator" of a hotel to register with the City's Tax Administrator and post a certificate at the hotel it operates:

> "... as to the *hotel operators* ..., *each operator of any hotel* renting occupancy to transients shall register said hotel with the Tax Administrator and obtain from him a 'Transient Occupancy Registration Certificate' to be at all times posted in a conspicuous place on the premises. Said certificate shall ... state the following:  A. The name of the operator; B. The address of the hotel; C. The date upon which the certificate was issued;  D. 'This Transient Occupancy Registration Certificate signifies that the person named on the face hereof has fulfilled the requirements of the ... Ordinance by registering with the Tax Administrator for the purpose of collecting from transients the Transient Occupancy Tax and remitting said tax to the Tax Administrator...." *Id.* § 4.24.060.

The Ordinance also imposes tax reporting and remitting requirements solely on "the operator" of the hotel. "Each operator" of a hotel "shall" make a return on a monthly, quarterly, or yearly basis, depending on the amount of "total rents charged," on "forms provided" by the Business Tax Division, and "submit the amount of tax collected" on such rents charged by the operator. *Id.* § 4.24.070. The Ordinance subjects an "operator who fails to remit any tax imposed by this chapter within the time required" to penalties and interest on delinquent tax. *Id.* § 4.24.080.

The administrative procedures and remedies set forth in the Ordinance also reaffirm that its intended reach is limited to "*the person* who is [the] *operator*" of a hotel. The Ordinance sets forth

-8-

Memorandum in Support of Defendants' Motion to Dismiss the Complaint

a detailed three step administrative process the Tax Administrator must follow if he believes a hotel "operator" has failed to remit taxes owed under the Ordinance.

The first mandated step is an ***assessment*** by the Tax Administrator of the taxes allegedly owed by the hotel "operator." The Administrator "*shall* proceed ... to obtain facts and information on which to base his ... estimate of the tax due .... [and then] *shall* proceed to determine and assess against [the] *operator* the tax, interest and penalties" owed. *Id.* at § 4.24.090(A). The Administrator "*shall*" then provide the "operator" with written notice of the assessment. *Id.*

The second step in the administrative process is a ***hearing*** at which the assessment can be challenged. After receiving the written assessment, a hotel "operator" may apply "in writing to the Tax Administrator for a hearing on the amount assessed." *Id.* The Administrator "*shall*" then set the hearing, at which "the operator may appear and offer evidence why such specified tax, interest and penalties should not be so fixed." *Id.*

The third step in the process provides the "operator aggrieved by any decision" the right to ***appeal*** the Tax Administrator's final assessment to a five-person Board of Review whose members include the City Manager, City Auditor and City Attorney. *Id.* at § 4.24.100. If the "operator" files an appeal, the Board "*shall* fix a time and place for hearing such appeal ... and *shall* give notice in writing to such operator...." *Id.* After the hearing, the Board "*shall* make findings of fact in support of its decision on appeal," which "*shall* be served upon the appellant." *Id.*

The Ordinance provides the alleged delinquent tax only becomes "due and owing" either (i) 20 days after the "operator" is served with the Tax Administrator's assessment if no hearing is requested; (ii) 15 days after the hearing and Administrator's determination, if the "operator" does not file an appeal; or (iii) if an appeal is filed, upon service of the Board of Review's findings of fact. *Id.* §§ 4.24.090(A) and 4.24.100.

The Ordinance makes clear judicial action is only to follow exhaustion of these procedures:

> "*Exhaustion of Remedies:* Any person whose case may be resolved by employing the administrative remedies provided by this section must exhaust those remedies before filing suit for refund, rebate, exemption, cancellation, amendments, adjustment, or modification of tax, interest or penalty." *Id.* § 4.24.100(D).

-9-

"Any such tax collected *by an operator* which has not been paid to the city shall be deemed a debt owed *by the operator* to the city.... Any person *owing* money to the city ...shall be liable to an action brought in the name of the city for the recovery of such amount. An action to collect the ... tax must be commenced within three years of the date the ... tax becomes delinquent...." *Id.* § 4.24.130.

## ARGUMENT

### I. THE CITY'S COMPLAINT IS SUBJECT TO DISMISSAL FOR LACK OF JURISDICTION BECAUSE THE CITY HAS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES

#### A. The Legal Standard For Motions To Dismiss Under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) mandates dismissal where, as here, the district court lacks subject matter jurisdiction over the claim. *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988); *e.g., Foley v. United States*, No. C 06-7481 CW, 2007 U.S. Dist. LEXIS 64865 at **2-4 (N.D. Cal. Aug. 23, 2007). Federal jurisdiction must exist at the time the action is commenced. *Morongo*, 858 F.2d at 1380. A Rule 12(b)(1) challenge should be decided before other grounds for dismissal, because dismissal under that Rule would render the other grounds moot. *Alvares v. Erickson*, 514 F.2d 156, 160 (9th Cir. 1975). A federal court is presumed to lack jurisdiction until the contrary affirmatively appears. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

Claims are subject to dismissal on jurisdictional grounds where a party has failed to exhaust administrative remedies before filing its case. *McAllister v. County of Monterey*, 147 Cal. App. 4th 253, 299 (2007) (affirming dismissal).[4] An action should be dismissed for lack of jurisdiction without leave where, as here, it is clear the jurisdictional deficiency cannot be cured by amendment. *May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1216 (9th Cir. 1980).

#### B. A Taxing Authority Must Exhaust Administrative Remedies Before Seeking Judicial Relief

---

[4] Federal courts apply state law to questions of exhaustion arising from alleged violations of state or local laws. *See Garcia v. Los Banos Unified Sch. Dist.*, 418 F. Supp. 2d 1194, 1214-15 (E.D. Cal. 2006) ("Under California law, the requirement of exhaustion of administrative remedies under FEHA is a jurisdictional prerequisite to resort to the courts. It is generally a plaintiff's burden to plead and prove timely exhaustion of administrative remedies."). Where federal law governs, the jurisdictional rule of exhaustion also applies. *Conforte v. United States*, 979 F.2d 1375, 1377 (9th Cir. 1992) (court lacked jurisdiction where plaintiff failed to "exhaust[]").

-10-

Case 4:07-cv-03432-SBA    Document 19    Filed 09/18/2007    Page 21 of 41

"[T]he rule is that *where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act....* Exhaustion of administrative remedies usually contemplates termination of all available, non-duplicative administrative review procedures.... [I]n California *a requirement that administrative remedies be exhausted is jurisdictional.*" *Cal. Correctional Peace Officers Assoc. v. St. Per. Bd.*, 10 Cal. 4th 1133, 1148, 1151 (2005).

"[E]xhaustion of administrative remedies furthers a number of important societal and governmental interests, including: (1) bolstering administrative autonomy; (2) permitting the agency to resolve factual issues, apply its expertise and exercise statutorily delegated remedies; (3) mitigating damages; and (4) promoting judicial economy." *Rojo v. Kliger*, 52 Cal. 3d 65, 86 (1990).

The California Supreme Court has recognized the exhaustion requirement especially applies to claims concerning taxation and that "the orderly administration of tax laws *requires* adherence to ... statutory procedures...." *Javor v. State Bd. of Equalization*, 12 Cal. 3d 790, 798 (1974). The jurisdictional requirement that administrative procedures be exhausted applies equally to taxpayers and the taxing authority. *Wertin v. Franchise Tax Bd.*, 68 Cal. App. 4th 961, 972 (1998) (taxing authority's failure to serve valid notice of assessment precluded it from collecting disputed tax; "We will not excuse the FTB's failure to follow these statutory guidelines and condone its attempt to collect taxes when it has not followed the legislatively mandated procedures."); *City of Los Angeles v. Centex Telemanagement*, 29 Cal. App. 4th 1384, 1389 (1994) ("*Centex*") (city could not bring judicial action under its tax ordinance until ordinance's administrative process is exhausted).

## C.    The City Has Failed To Exhaust The Administrative Remedies Mandated In Its Tax Ordinance

The City's Ordinance provides that if any "operator" refuses to collect, report and remit the tax, in whole or in part, the proper remedy is administrative. The Ordinance mandates that the Tax Administrator obtain facts permitting him to estimate the tax due and serve an assessment of tax due on the hotel "operator" who has allegedly failed or refused to collect, report and remit the tax. *See supra* at 9, quoting Oak. Municipal Code § 4.24.090(A). The Administrator must initiate and perform a tax assessment, send the "operator" notice of the assessment, participate in an administrative hearing at which the "operator" can present evidence, and then provide notice to the

1   "operator" of the determined assessment. *Id.*[5] The Ordinance then provides the "operator" a right

2   to appeal that determination to the Board of Review and present additional evidence at the appeal

3   hearing, after which the Board "shall make findings of fact in support of its decision on appeal."

4   *Id.*, quoting § 4.24.100(A)&(B).

5        Thus, the Ordinance details a three-step administrative process the City must exhaust before

6   initiating judicial action if it believes a hotel "operator" owes it payment for hotel occupancy tax.

7   The City may bring a judicial action only after an asserted "operator" is determined through this

8   process to owe tax under the Ordinance. *Id.*, quoting § 4.24.130.

9        Remarkably, the City's Complaint does not even mention the Ordinance's administrative

10  procedures and remedies, much less allege it has exhausted them. Nor could the City allege that it

11  has done so. The City has not performed an assessment of taxes allegedly owed, provided notice

12  of an assessment, or provided an administrative hearing, as to any OTC Defendant. Therefore,

13  even if each OTC Defendant could somehow be deemed the "operator" of a hotel subject to the tax

14  imposed by the Ordinance, the City's failure to exhaust the administrative procedures and remedies

15  mandated by the Ordinance preclude it from pursuing its claims in a judicial action. *See Wertin*, 68

16  Cal. App. 4th at 972; *Centex*, 29 Cal. App. 4th at 1389 (Though authorized by its ordinance to

17  bring an action against any person "owing any tax due," City of Los Angeles could not initiate such

18  an action against a taxpayer until administrative remedies in the ordinance were exhausted).

19       Thus, for the same reason the Superior Court dismissed the parallel complaints of Los

20  Angeles and San Diego, the City of Oakland's Complaint is subject to dismissal: "[T]his Court ...

21  lacks subject matter jurisdiction" because the City has failed to "exhaust the administrative

22  remedies ... in the Municipal Code before turning to this court for relief." Ex. A at 4; Ex. B at 3.

23       The City's practice – until this lawsuit – was to comply with the administrative procedures

24

25

26  _____
    [5] The Administrator "*shall* proceed to determine and assess against *such operator* the tax, interest

27  and penalties...." and "*shall* give [the operator] a notice of the amount so assessed...." § 4.24.090.
    "Shall" is a mandatory command. *People v. Standish*, 38 Cal. 4th 858, 869-870 (2006).

28

    Memorandum in Support of Defendants' Motion to Dismiss the Complaint

1  mandated by its Ordinance.[6]  Any assertion now that it need not do so would be futile.

2        For example, in *Centex*, the Court of Appeal rejected the argument that a provision in Los

3  Angeles's business tax ordinance that permitted the city to bring a lawsuit against any person

4  "owing any tax due" authorized the city to do so without first exhausting the ordinance's

5  administrative remedies.  *Centex*, 29 Cal. App. 4th at 1389.  The Court held the provision

6  authorizing suit could not be read in isolation from the administrative procedure provisions:

7        "It is a basic rule of statutory construction that all the parts of a statute must be read
         together and harmonized.  To read [the provision authorizing suit] to require
8        initiation of a legal action by the City prior to the taxpayer's exhaustion of
         administrative remedies would bring it directly into conflict with [the Municipal Code
9        section] setting forth administrative procedures." *Id.* at 1389.

10  Accordingly, the Court held neither Los Angeles nor the taxpayer could bring a lawsuit until all

11  administrative remedies in the city's tax ordinance have been exhausted.  *Id.*

12        The Superior Court also rejected Los Angeles's "flawed" argument that the parallel

13  administrative procedures mandated by its transient occupancy tax ordinance were "optional"

14  because the ordinance provides the tax director "*may* make and give notice of an assessment of

15  such tax," and authorizes the city to bring an action against "[a]ny person owing money to the City"

16  under the ordinance.  Ex. A at 8.  Citing *Centex*, the superior court held if "may" together with the

17  judicial action provision were read to "allow [the city] to proceed directly to court" it would

18  "nullify the administrative remedies provided to the asserted taxpayer" by the ordinance, and "a

19  proposed statutory construction that brings one part of the statue in conflict with others is

20  'unpersuasive.'" *Id.*[7]  For the same reasons, the provision in the City of Oakland's Ordinance – that

21  ───────────────────────────────

[6]  For example, the City Finance and Management Agency's 6/19/07 Agenda Report (Ex. D hereto)
22  documents the City's efforts to recover occupancy taxes allegedly owed by four hotel "operators,"
    and recognizes the first steps were "review and assessment processes" that resulted in deficiency
23  notices being sent to them.  This Court may take judicial notice of the Report.  *See Lund v. Leprino
    Foods Co.*, NO. CIV. S-06-0431, 2007 U.S. Dist. LEXIS 46705, at **4-5 (E.D. Cal., June 20,
24  2007) ("Under [Fed. R. Evid. 201(b)], the court may take judicial notice of documents 'capable of
    accurate and ready determination by resort to sources whose accuracy cannot reasonably be
25  questioned.'  Accordingly the court will grant defendant's request for judicial notice of the two
    documents on the state Emergency Services' website.").  The Agenda Report can be found at
26  http://clerkwebsvr1.oaklandnet.com/attachments/16565.pdf.

27  [7]  The Superior Court also rejected Los Angeles's assertion that its failure to exhaust should be
    excused "because the [city] lacks sufficient factual data to calculate the tax owed." Ex. A at 8.  The

28  ───────────────────────────────
    Memorandum in Support of Defendants' Motion to Dismiss the Complaint

1  "nothing in this chapter shall be interpreted to preclude or limit the city from seeking injunctive or

2  other judicial relief" (Ex. C, Oak. Mun. Code § 4.24.170) – also cannot be read to permit the City

3  to bypass the express administrative remedies in its Ordinance. *Centex*, 29 Cal. App. 4th at 1388-

4  89.[8]

5      In dismissing the Los Angeles and San Diego complaints, the superior court joined a list of

6  courts that have dismissed on exhaustion grounds judicial actions brought by cities or counties in

7  other states against online travel companies asserting liability under hotel occupancy tax

8  ordinances and equitable claims:

9      In *County of Nassau v. Hotels.com, L.P.*, No. 2:06-cv-05724, E.D.N.Y. (Aug. 17, 2007)

10  (Ex. E hereto), the district court dismissed an action brought by the county on behalf of itself and

11  an alleged class of other counties in New York against the OTC defendants because "the County

12  [had not] first determine[d] or estimate[d] the amount of tax that is due, and otherwise follow[ed]

13  the administrative procedures." Ex. E at 16.  The court so held even though the county's ordinance

14  did not "expressly set forth a procedure for the collection of taxes" because the ambiguity as to

15  procedure for collection of taxes, like any ambiguity in a tax ordinance, "must be resolved most

16  strongly in favor of the taxpayer and against the government." *Id.* at 13.

17      In *City of Philadelphia v. Hotels.com, L.P.*, 2006 Phila. Ct. Com.Pl. LEXIS 218, at *8 (May

18  25, 2006) (Ex. F hereto), the court held the city's failure to follow administrative procedures before

19  filing suit to collect occupancy taxes from OTC defendants required dismissal of action:

20
21        "Since it is well settled that the taxpayer is required to exhaust its administrative
      remedies before coming to court, logic dictates that the inverse should be true as well.

22  court determined the ordinance affords "the power to conduct 'discovery' in order to calculate the

23  amount of occupancy tax owed ... [and] the right to inspect [an operator's] records ...." *Id.* at 9.
And "a party's request to be permitted to take advantage of an available administrative remedy

24  should not be denied on the basis of speculation that the party later may refuse to participate in the
administrative process." *Id.* at 9-10.  The City of Oakland's Complaint does not attempt to allege

25  any basis that would permit it to evade compliance with the procedures in its Ordinance.

26  [8]  Like the parallel provisions in Los Angeles's business and occupancy tax ordinances, this
provision in the City's Ordinance merely confirms its authority to seek judicial relief to recover

27  delinquent taxes *after* the administrative process is exhausted, and to enforce sections requiring
hotel operators to register with the City, which are referenced immediately before that provision.

-14-

28

1  This court is not in the business of original tax collections, nor should it be." *Id.*

2  In *City of Atlanta v. Hotels.com, L.P.*, No. 2006-CV-114732, Sup. Ct. Fulton County (Dec.

3  12, 2006) (Ex. G hereto), the court dismissed the city's action for violation of its hotel tax

4  ordinance (brought by the same outside counsel representing Oakland), holding that "the City

5  should have first, at the very least, attempted to exhaust its administrative remedies...." *Id.* at 6.

6  The court rejected the city's argument that exhaustion should be excused as futile because "even if

7  given the opportunity to participate in the administrative process, [the OTC defendants] would ...

8  reject that taxes are do and owing" and claim they were not subject to the tax. *Id.* The court

9  recognized the

10  "speculative view proffered by the [c]ity does not allow the [c]ity to take what they
   deem to be the expedient course of action and file suit in court, as opposed to the correct
11  course of action which would have been to exhaust its administrative process." *Id.*

12  In *Miami-Dade County v. Internetwork Pub. Corp.*, No. 06-19187, Cir. Ct. Miami-Dade

13  County (Jan. 17, 2007), the court ruled the county's action for violation of its hotel occupancy tax

14  ordinance must be dismissed because the county "failed to allege exhaustion of administrative

15  remedies...", "that the amount of tax ha[d] been assessed and billed and that there is an

16  administrative remedy to the collection of [occupancy] taxes."  Hearing Tr. at 87 (Ex. H hereto).

17  In *City of Jacksonville v. Hotels.com, L.P.*, No. 16-2006-CA-5393, Cir. Ct. Duval County

18  (Aug. 21, 2007) (Ex. I hereto), the court also dismissed the city's action for violation of its hotel

19  occupancy tax ordinance because the city had not "exhausted its administrative remedies to

20  determine, assess, and collect unpaid taxes owed by Defendants." *Id.* at 6.

21  The same is true here.  The City's Complaint is subject to dismissal because all of its claims

22  are premised on the alleged violation of, and liability for tax under, the Ordinance, and the City has

23  failed to exhaust the administrative remedies mandated by the Ordinance. *See O'Guinn v. Lovelock*

24  *Corr. Ctr.*, No. 06-15972, 2007 U.S. App. LEXIS 21170, *16 (9th Cir. Sept. 5, 2007) (affirming

25  dismissal for failure to exhaust).[9]

26  _____

   [9] The superior court dismissed the Los Angeles and San Diego complaints with leave to file an
27  amended complaint if and when the city could allege it exhausted administrative remedies. Ex. A at
   11; Ex. B at 5. The court purported to *stay* the actions until then.  But the exhaustion requirement is

   -15-

28

## II.     EVEN IF THE CITY WERE NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES, ITS COMPLAINT IS SUBJECT TO DISMISSAL FOR FAILURE TO STATE A CLAIM AGAINST ANY DEFENDANT

### A.     The Legal Standard For Motions To Dismiss Under Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim should be granted where a plaintiff is unable to delineate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). As the Supreme Court explained in *Twombly*:

> "[A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65.

*See Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."); *e.g., In re Textainer P'ship Sec. Litig.*, No. C-05-0969 MMC, 2007 U.S. Dist. LEXIS 5283, at *12 (N.D. Cal., Jan.10, 2007) ("Conclusory allegations, unsupported by the facts alleged, need not be accepted as true."). Where, as here, a complaint does not contain either direct or inferential allegations with respect to every material element necessary to support liability, it must be dismissed. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

Claims turning on interpretation of a statute are especially appropriate for resolution on the pleadings because statutory interpretation is a question of law. *People ex rel. Lockyer v. Shamrock Foods Co.*, 24 Cal. 4th 415, 432 (2000) ("[t]o determine the meaning of such a [statutory] provision entails the resolution of a pure question of law"); *Honig v. San Francisco Planning Dept.*, 127 Cal. App. 4th 520, 524 (2005) (affirming dismissal of claims based on interpretation of statute); *see Schroeder v. Trans World Airlines*, Inc., 702 F.2d 189, 191-92 (9th Cir. 1983) (affirming dismissal of claim based on federal statute). The City's attempt to state a claim against the OTC Defendants under its Ordinance is defeated by the Ordinance's express limitations.

---

jurisdictional, and thus the proper course was to *dismiss* each action *without prejudice* to filing a *new action* if and when the city could allege exhaustion. *McAllister,* 147 Cal. App. 4th at 299.

Memorandum in Support of Defendants' Motion to Dismiss the Complaint

**B.     The City Cannot State A Claim Against Any OTC Defendant Under The City's Hotel Occupancy Tax Ordinance**

     **1.     The Rules Governing Construction Of Tax Statutes And Ordinances**

"[The] objective of statutory construction is to ascertain and effectuate legislative intent.  To determine that intent, we turn first to the words of the statute, giving them their usual and ordinary meaning. When the statutory language is clear, we need go no further." *In re Derrick B.*, 39 Cal. 4th 535, 539 (2006).

"[A court] must reject an interpretation that is plainly contraindicated." *AB Cellular LA, LLC v. City of Los Angeles*, 150 Cal. App. 4th 747, 758 (2007).

The California Supreme Court has explained:

"[w]hen interpreting statutes, we follow the Legislature's intent, as exhibited by the *plain meaning of the actual words* of the law....This court has *no power to rewrite the statute* so as to make it *conform to a presumed intention which is not expressed*. Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their *usual and ordinary meaning* and construing them in context.  *If the plain language of the statute is clear and unambiguous, our inquiry ends*, and we need not embark on judicial construction. If the statutory language contains no ambiguity, the Legislature is presumed to have meant what it said, and the plain meaning of the statute governs." *Stephens v. County of Tulare*, 38 Cal. 4th 793, 801-02 (2006).

These rules govern interpretation of tax statutes. *Lennane v. Franchise Tax Bd.*, 9 Cal. 4th 263, 268 (1994) (interpreting Cal. Rev. & Tax Code provisions: "Where the statute is clear, courts will not interpret away clear language in favor of an ambiguity that does not exist.").

However, because of the potential for governmental abuse of the taxing power, tax statutes are subject to special rules of construction.  The United States Supreme Court has made clear:

"In the interpretation of statutes levying taxes it is the *established rule not to extend their provisions, by implication, beyond the clear import of the language used,* or to *enlarge their operations* so as to embrace *matters not specifically pointed out*.  In case of doubt they are *construed most strongly against the Government, and in favor of the citizen.*" *Gould v. Gould*, 245 U.S. 151, 153 (1917).

*See Greyhound Corp. v. United States*, 495 F.2d 863, 869 (9th Cir. 1974) (citing *Gould*).

Thus, it is long-established that taxation must be limited to that which is clearly set forth in a properly enacted statute to which the taxing authority must strictly adhere, and which must be strictly construed against it:

"Since tax proceedings are *in invitum*, tax laws are strictly construed and a statute will not be held to have imposed a tax unless clear and explicit.  Courts will not extend by

-17-

construction a tax law to include those not described by in the statute." *Hill v. Eureka*, 35 Cal. App. 2d 154, 158 (1939).

These fundamental rules equally govern local tax ordinances:

"Any attempt [by] the state, or of the county as one of the subdivisions of the state, to take the property of an individual for public purposes by way of taxation, *must find* an *express statutory warrant*, and all laws having this object are to be *construed strictly* in *favor of the individual* as against the state ... no presumption is to be indulged in favor of the right to take property, or of *any intention* that is *not distinctly expressed* in the statute under which it is sought to be taken.... "*[T]he imposition of a tax by inference or implication*, no matter how logical or reasonable it may seem *is universally condemned* by the authorities which lay down the rule that *the tax must be based upon on express statutory authority, and that doubts will be resolved against the taxing power." Id.* at 156-57.[10]

Thus, a city must strictly adhere to the express limitations in its tax ordinance as enacted, and if any ambiguity is found to exist in its provisions, the ambiguity must be construed strictly against the city and in favor of the person sought to be held liable. These rules of construction ensure that a government imposing a tax does so clearly, and prohibits it from impliedly enlarging its tax or taking advantage of ambiguous terms to impose taxes in novel or discretionary ways.

The City exercised the grant of authority the Enabling Act conferred by enacting the Ordinance, and is strictly bound by the express limitations that its legislative body enacted. As shown below, under the Ordinance's clear terms, the City cannot state a claim against the OTC Defendants for tax on the amounts charged to customers and retained for their online services. Further, even if the Ordinance's terms were ambiguous (they are not), such ambiguity would have to be resolved in favor of the OTC Defendants and against the City, still defeating its claims.

### 2. None Of The OTC Defendants Has Any Obligations Under The Ordinance Because None Of Them Is "The Operator" Of A "Hotel" In Oakland

The Ordinance imposes tax collection, remittance and reporting obligations only on the "operator" of a hotel. *See supra* at 8, quoting Oak. Mun. Code §§ 4.24.050 & 4.24.070. The Ordinance defines hotel "operator" solely as *the* person who is [the] proprietor" or "the managing

---

[10] *Accord Hassett v. Welch*, 303 U.S. 303, 314 (1938) ("if doubt exists as to the construction of a taxing statute, the doubt should be resolved in favor of the taxpayer"); *Gutknecht v. City of Sausalito*, 43 Cal. App. 3d 269, 273 (1974) (same); *Peck v. State of California*, 96 Cal. App. 2d 638, 642 (1950) ("taxing statutes are to be strictly construed" against the taxing authority).

-18-

1  agent" of the hotel. *Id.* at § 4.24.020. The City does not attempt to allege, nor could it, that any of

2  the OTC Defendants is "the person who is [the] proprietor," *i.e.*, the owner, or the "managing

3  agent" of a hotel in Oakland. On this ground alone, the City's claims fail as a matter of law.

4        The Ordinance does not define "proprietor;" thus, the term is to be given its common

5  meaning. *DaFonte v. Up-Right, Inc.*, 2 Cal. 4th 593, 601 (1992) ("When construing statutory

6  language, we are, absent contrary direction, bound to give the words the Legislature chose their

7  usual and ordinary meaning."). "When attempting to ascertain the ordinary, usual meaning of a

8  word, courts appropriately refer to the dictionary definition of that word." *Wasatch Prop. Mgmt. v.*

9  *Degrate*, 35 Cal. 4th 1111, 1121-22 (2005). "Proprietor" commonly means "1. the owner of a

10  business establishment, a hotel, etc.; 2. a person who has the exclusive right or title to something;

11  an owner, as of real property." *Dictionary.com Unabridged* (v. 1.1); *The American Heritage*

12  *Dictionary*, 4th Ed. (2004) ("proprietor" means "1. One who has legal title to something; an

13  owner; 2. One who owns or owns and manages a business or other such establishment"); *accord*

14  *Barron's Dictionary of Business Terms* (2000) ("proprietor" means "[o]wner; the person who holds

15  Title to property."). The Legislature has defined "proprietor" to reflect this common meaning when

16  using the term in business statutes. *E.g.*, Cal. Bus. & Prof. Code § 21750 (2006) (""the *owner* of a

17  retail establishment, restaurant, inn, bar, tavern, or any other similar place of business or

18  professional office located in this state....").

19        This common-sense meaning is reaffirmed by the Ordinance's elaboration that "*the* person

20  who is proprietor" of the hotel is the "operator" "whether in the capacity of owner, lessee,

21  sublessee, mortgagee in possession, licensee, or any other possessory agent of any type or character

22  other than an employee...." *See supra* at 7, quoting Oak. Mun. Code § 4.24.020. Each such

23  capacity identified involves ownership or exclusive right of actual possession or title to the

24  physical establishment that is the hotel, which renders that party "*the* person who is proprietor" of

25  "the hotel." Merely contracting with a hotel to provide customers with a service of facilitating the

26  reservation of some rooms in a hotel does not involve ownership or exclusive right of possession

27  and does not render such a contracting party the "proprietor" of the hotel.

28

-19-

To understand the meaning of "managing agent" under the Ordinance, it is necessary to look to the meaning of "proprietor," because the Ordinance makes clear "the managing agent" is the person who performs the functions of the "proprietor" of the hotel. *See supra* at 7, quoting Oak. Mun. Code § 4.24.020. Thus, "the managing agent" is a person who stands in the place of the "proprietor" of the hotel – the owner – as its authorized agent to manage and operate the actual physical structure comprising the "hotel." *Id.*

The Complaint confirms the City cannot allege facts that would render any OTC Defendant "the managing agent" of any hotel. The Complaint does not attempt to do so. The City merely alleges in conclusory fashion that each OTC Defendant is an "online seller[]" or "reseller" of hotel rooms, which "contract[s] with hotels for rooms at negotiated discount rates ...[and] ...then mark[s] up their inventory of rooms and sell[s] the rooms to members of the public...." Cmplt ¶¶ 24, 29.

But, of course, even hotels do not "sell" hotel rooms in any sense, and the OTC Defendants are unaware of any definition of "hotel" that says anything about "selling" rooms. To the contrary, "hotels" are physical establishments that charge a transient *rent* for the right to occupy a room in the establishment. That is why the Ordinance's definition of "hotel" say nothing about "selling" rooms, but instead refers to "any ... space or structure ... offering the right to use such space for sleeping or overnight accommodations wherein the owner or operator thereof ..., for compensation, furnishes such right of occupancy to any transient...." *See supra* at 7, quoting Oak. Mun. Code § 4.24.020. As the Complaint recognizes, each OTC Defendant merely negotiates with hotels so it may provide a service to customers of facilitating the making of a room reservations. Cmplt ¶ 29. Thus, at most, the Complaint avers that an OTC Defendant "sells" or "resells" reservations for hotel rooms, *i.e.*, is involved in the reservation process.

Such conclusory allegations need not be accepted as true and are insufficient to defeat a motion to dismiss. *Supra* at 16, quoting cases. In any event, these allegations are insufficient to establish that any OTC Defendant is an "agent" of any hotel, even for the limited purpose of reserving some rooms in the hotel, much less establish that it is the "managing agent" of the hotel that performs all of the "functions" of the hotel's owner. The alleged tasks related to reserving

-20-

Memorandum in Support of Defendants' Motion to Dismiss the Complaint

1 | *some rooms* in the hotel is a far cry from performing the functions of the proprietor operating an

2 | *actual hotel*, which include, for example, actually furnishing a physical room, housekeeping

3 | service, bell desk service, concierge service, and front desk service. Indeed, the City cannot allege

4 | any OTC Defendant provides any of these functions even for any rooms in a hotel. Thus, even if

5 | the City's conclusory allegations were true (and they are not), at most they might render an OTC

6 | Defendant a agent of the hotel for the limited purpose of facilitating the reservation of *some rooms*

7 | in the hotel; they could not render the OTC Defendant *the* "managing agent" of *the hotel*.

8 |     Thus, the common meaning of "the person who is [the] proprietor" or "managing agent"

9 | makes clear such conduct does not render the OTC Defendants the "operator" of a hotel. The

10 | City's assertion that the OTC Defendants are somehow liable for the collection, reporting and

11 | remittance of the tax as "operators" of the hotel is refuted not only by the Ordinance's definition of

12 | hotel "operator," but also by the Ordinance's provisions utilizing that term.

13 |     *First,* the Ordinance clearly contemplates a single hotel "operator" per transaction with a

14 | transient customer, by referring in the singular to "*the* person who is proprietor" or "managing

15 | agent" of the hotel, by using the singular in imposing the tax only on "the rent charged by *the*

16 | *operator,*" and by making clear that compliance by the "proprietor" or "the managing agent" is

17 | deemed compliance by both. *See supra* at 7, quoting Oak. Mun. Code § 4.24.030.[11]

18 |     *Second,* the Ordinance's requirement that a hotel "operator" register with the Director and

19 | post a certificate "in a conspicuous place" on the premises of each hotel it operates also makes clear

20 | that each hotel has but one "operator" under the Ordinance. *See supra* at 8, quoting Oak. Mun.

21 | Code § 4.24.060. Expanding the definition of "operator" to include not only the "proprietor" of the

22 | hotel or its "managing agent," but also third parties that facilitate (or "sell" or "resell") reservations

23 | of rooms in a hotel, would produce the absurd result of requiring each OTC Defendant to register

---

24 | [11] The City Finance and Management Agency Revenue Division's official brochure (Ex. J hereto)

25 | also confirms the Ordinance contemplates a single "operator." It states "*[t]he hotel /motel operator* is responsible for collecting and remitting the [occupancy tax]...;" that "*[t]he hotel/motel operator*

26 | must register within 30 days of ownership change, and/or before commencing business;" and that a "collection action against *the operator* and/or a lien may be filed against the property owner." The

27 | Court may take judicial notice of the brochure (*see supra* at 13 n.6), which can be found at http://www.oaklandnet.com/government/fwawebsite/revenue/pdf/TOT%20Brochure%20BW.pdf

-21-

28 | Memorandum in Support of Defendants' Motion to Dismiss the Complaint

1   as the "operator" of every hotel at which it facilitates room reservations and to post a certificate in

2   each hotel identifying itself as the hotel's operator.  One can imagine an entire hotel lobby wall

3   devoted to such certificates under that construction.  Such absurd results are to be avoided when

4   interpreting a statute.  *Smith v. Super. Ct.*, 39 Cal. 4th 77, 83 (2006) ("if the statutory terms are

5   ambiguous....[the court will] avoid a construction that would lead to absurd consequences").

6        *Third*, such an expanded definition of "operator" also would impermissibly result in double

7   taxation, because two entities – the hotel and an OTC Defendant – would each be required to

8   collect tax from an occupant on the full amount each receives on the same customer transaction.

9   This would result in taxation on two entities for one hotel room stay, even though nothing in the

10  Ordinance suggests, much less expressly imposes, such double taxation.

11       An intent to impose double taxation is not to be presumed in the absence of clear and

12  unambiguous expression in the tax statute.  *Southern Pac. Co. v. McColgan*, 68 Cal. App. 2d 48, 69

13  (1945) (applying the "rule against double taxation"); *see Forman v. C.I.R.*, 199 F.2d 881, 883 (9th

14  Cir. 1952) ("The presumption against double taxation is always present.").  Here, there is no

15  express intent to impose double taxation.  Rather, the Ordinance makes clear double taxation is not

16  intended: the Ordinance prevents the risk of double taxation created by including both the

17  "proprietor" and "the managing agent" in the definition of "operator" by making clear only one or

18  the other must comply with its terms.  *See supra* at 7.

19       *Fourth*, the narrow meaning of "operator" is also evidenced by the provisions allowing the

20  use of a property to be encumbered if the hotel "operator" fails to register or report taxes as

21  required by the Ordinance.  *See* Oak. Mun. Code § 4.24.170.  If, as the City seemingly suggests,

22  "operator" could be read to include companies that facilitate (or "sell or resell") reservations for

23  hotel rooms online, the Ordinance would permit the City to encumber the hotel if *any* OTC

24  Defendant facilitating room reservations failed to follow the Ordinance's requirements.  Again,

25  such absurd results are to be avoided when construing a statute.

26       In sum, under the Ordinance's plain terms, none of the OTC Defendants is the "operator" of

27  a hotel.  For this reason, the City cannot state a claim against any of them based on its Ordinance.

28

-22-

Memorandum in Support of Defendants' Motion to Dismiss the Complaint

1    Even if all of these terms in the Ordinance were also reasonably susceptible to the City's

2    contrary constructions (they are not), the OTC Defendants would still be entitled to dismissal of the

3    City's claims because tax statutes must be construed strictly against the taxing authority and in

4    favor of the taxpayer. *See supra* at 17-18, citing cases. Thus, if any of those terms were

5    ambiguous, such ambiguity would have to be decided in the OTC Defendants' favor, still requiring

6    dismissal of the City's claims.

7        The district court's decision in *Pitt County v. Hotels.com L.P. et al.*, Case No. 4:06-CV-30

8    (E.D.N.C.) (Ex. K hereto), is instructive. The court granted with prejudice the OTC defendants'

9    motion to dismiss the county's complaint asserting tax liability under is hotel occupancy tax

10   ordinance. The ordinance imposed obligations only on "operators of hotels ...and similar type

11   businesses." The court, applying the term's common meaning, held "operator" was limited to

12   entities that "conduct or manage a commercial enterprises daily affairs" of the hotel. Ex. K at 7.

13   The court held the OTC defendants did not fall within the scope of a hotel "operator" because they

14   do not "perform any of the day to day functions commonly associated with hotel management, such

15   as handing over room keys or maintaining guest rooms." *Id.*

16       The district court in *Pitt County* held that the county also failed to state a claim because the

17   ordinance imposed the tax only on "gross receipts derived by [operators] from the rental of ...rooms

18   ... to transients for consideration", and therefore, not on the amount an OTC defendant charges

19   customers and retains for its online facilitation services. *Id.* at 11. Finally, the court held that, even

20   if the ordinance's terms were also reasonably susceptible to the county's contrary constructions,

21   dismissal was required because "when their meaning is doubtful, tax statutes must be construed

22   against the government and in favor of the taxpayer." *Id.* at 10.[12]

23       The same is true here. The City's claims fail as a matter of law.

24       **3. The Consideration Paid By A Customer And Retained By An OTC**
         **Defendant For Its Online Services Is Not "Rent Charged By The**
25       **Operator" Of A Hotel Subject To The Tax Imposed By The Ordinance**

---

26   [12] Exhaustion of administrative remedies was not an issue in *Pitt County* because the county's
27   ordinance, unlike Oakland's Ordinance, does not set forth administrative procedures.

-23-

28

1    The Ordinance imposes a tax only on "the rent charged by the operator" for the privilege of

2    occupancy in the hotel. *See supra* at 7, quoting Oak. Mun. Code § 4.24.020.  The Ordinance

3    defines "room rental" as the "total charge *by a hotel* ... for sleeping or overnight accommodations

4    ...." *Id.* § 4.24.020.

5    As the City concedes, it receives from the hotel full payment of the tax on the amount

6    "charged by the hotel" for occupancy of a room in the hotel. Cmplt ¶ 30.  Again in contravention

7    of the Ordinance's express terms, the City seeks to broaden the tax by also imposing it on the

8    amount an OTC Defendant charged the customer and retained  for its online facilitation services.

9    Since none of the OTC Defendants is a hotel "operator" under the Ordinance, money

10    charged by them and retained for their online services is not subject to the tax because it is not

11    "rent charged *by the operator*" of a hotel.  And, even if each OTC Defendant could be somehow

12    deemed the "operator" of a hotel, the amount each charges and retains is not "rent" for the privilege

13    of "occupancy;" rather, it is compensation for information and reservation facilitation services

14    provided by the OTC Defendant.

15    In any event, "room rental" includes only the "total *charge* made *by a hotel*" for "sleeping

16    or overnight accommodations...", and not a charge to a customer by a third party, which the third

17    party retains for its services.  As the Complaint recognizes, the amount a customer pays to an OTC

18    Defendant is greater than the amount "charged *by the hotel*" for the right to occupy the room.

19    Cmplt ¶ 30.  Thus, that additional amount is not "room rental" subject to the tax.

20    On these grounds too, the Ordinance's plain terms defeat the City's claims. *See supra* at 23,

21    discussing *Pitt County*.  Again, even if these terms were also reasonably susceptible to the City's

22    contrary constructions, any ambiguity would have to be decided in the OTC Defendants' favor,

23    requiring dismissal of the City's claims.[13]

24

25    ───────────────────
[13]   The City also asserts in conclusory fashion that the OTC Defendants have violated the
26    Ordinance provision that provides the amount of tax be stated separately from the amount of rent
     charged.  Cmplt ¶ 41, citing Oak. Mun. Code § 4.24.050.  However, as with the Ordinance's other
27    obligations, this provision applies only to the hotel "operator."  Moreover, the Complaint confirms
     that requirement is being satisfied; it alleges the customer is charged a "taxes and services fee"

-24-

28    ───────────────────────────────────────────────────────────────
Memorandum in Support of Defendants' Motion to Dismiss the Complaint

### 4.  The City's Conclusory Allegations Of "Over-Collected," But Unremitted, Tax Cannot Save Its Failed Claims

The City is left to allege that each OTC Defendant not only charges a customer an amount to cover the tax on the "rent charged by the hotel" (an amount the City admits the hotel remits to it), but also collects and retains "tax" from the customer on the additional amount the OTC Defendant charges for its online facilitation services. Cmplt ¶ 29. Again, such a conclusory allegation is properly ignored on a motion to dismiss. *See supra* at 16. Indeed, the City's conclusory allegation turns out merely to be the circular assertion that the "taxes and service fee" item an OTC Defendant charges a customer *is sufficient in amount* to cover the *additional* tax the City asserts is owed by the OTC Defendant, *if* such additional tax is in fact owed. Cmplt ¶¶ 30-33. This assertion is a far cry from collecting such amount from the customer in the name of that tax.

But even if the City could allege facts to support its conclusory allegation of additional collected but unremitted "tax" (it cannot), it could not save its failed claims. As shown, the City's tax applies only to the "rent charged by the hotel", and not to the amount an OTC Defendant charges and retains for its online services. The City would have no claim to any amount not owed to it as tax under the Ordinance. Indeed, the Ordinance's refund provisions recognize the City has no claim to tax collected but not owed under the Ordinance. Rather, any "taxes overpaid or erroneously or illegally collected" belong to the customer, not the City, and, if not paid to the City, are subject to an action by the customer against the hotel operator. Oak. Mun. Code § 4.24.120.

Thus, any claim for amounts that an OTC Defendant allegedly collected from customers in the name of a tax which the customers did not owe, would belong, if at all, to the *customers*, not the City. *See Rider v. County of San Diego*, 11 Cal. App. 4th 1410, 1419-20 (1992) (proper remedy for over-collection of taxes was refund of the excess amount to the consumer); *Decorative Carpets, Inc. v. State Bd. of Equalization*, 58 Cal. 2d 252, 255-56 (1962) (same); *Javor v. State Bd. of Equalization*, 12 Cal. 3d at 802 (*Javor I*) (any over-collected tax amounts belong to the consumer, not the taxing authority; "[t]he integrity of the sales tax requires not only that the

charge separately stated from the rent charged for the hotel room. Cmplt ¶ 32. Thus, the amount of tax is stated separately from the amount of rent charged.

-25-

1    retailers not be unjustly enriched, but *also that the state not be similarly unjustly enriched*"); *Javor*

2    *v. State Bd. of Equalization*, 73 Cal. App. 3d 939, 950-51 (1977) (*Javor II*) (proper remedy for

3    over-collection of tax by the state is refund to the consumers).[14]

4         **C.**    **The City's Tag-Along Equitable Claims Also Fail As A Matter Of Law For The Same Reasons, And More**

5

6         The City's claims for violation of the UCL, conversion, imposition of a constructive trust,

7    unjust enrichment and declaratory relief are premised solely on the City's failed claim that the

8    OTC Defendants are liable for transient occupancy tax under the Ordinance on the consideration

9    paid to them by customers and retained for their online facilitation services, and fail for all the

10   above reasons, and for additional reasons. *See Pitt County v. Hotels.com L.P. et al.*, Case No. 4:06-

11   CV-30 (county could not assert claims for conversion, constructive trust or violation of the state

12   unfair practices act, since each such claim "depend[ed] on the basic and incorrect assumption that

13   Defendants under-remit applicable taxes" under the county's tax ordinance), Ex. J at 11-12.

14        **1.**    **The City Has Not Stated A Claim Under Business & Professions Code Section 17200, *Et Seq.***

15        The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Bus. &

16   Prof. Code, § 17200. To state a UCL claim, Plaintiff must allege facts, which if proven, would

17   establish an act of unfair competition by each Defendant. *Id.* A UCL claim is subject to dismissal

18   where the complaint "fails to describe with any reasonable particularity the facts supporting the

19   [alleged] violation." *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993); *see Gregory*

20   *v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 857 (2002) (affirming dismissal of UCL claim where

21   complaint "identifie[d] no particular section of the statutory scheme ...which was violated").

22        As a threshold matter, Defendants are aware of no case authority that a taxing authority

23   may transform a purported claim for collection of a disputed tax into a UCL claim. Unlike other

24   statutes that provide an administrative regime and nonetheless expressly permit a private right of

25

26      [14] In *Jovar I*, the taxpayers asserting overpayment were permitted to join the taxing authority in its case against the retailers who overcharged the tax because the taxing authority was in possession of

27   the over-collected funds. *Jovar I*, 12 Cal. 3d at 802-03. That is not the case here as to any amount alleged y collected from customers as "tax," that was not owed to the City under the Ordinance.

-26-

28

1  action pursuant to Section 17200, such as Cal. Ins. Code § 1861.02 (enacted by Proposition 103),

2  neither the Ordinance nor the state's enabling statute under which it was enacted so provide. To

3  allow taxing authorities, which are neither competitors nor consumers of the asserted taxpayers, to

4  bring tax collection claims under the guise of Section 17200 would open the judicial door to a

5  flood of UCL actions by taxing authorities end-running state and local tax administrative and

6  regulatory schemes. It should be left to the Legislature to so broaden the UCL if it so desires. On

7  this ground alone, the City's purported Section 17200 claim should be dismissed.

8       Even if a taxing authority could in theory properly assert a claim under Section 17200 for

9  alleged non-payment of tax, the City has not alleged facts sufficient to state such a claim. The City

10  purports to state a claim under each of the UCL's three prongs; however, its allegations are

11  insufficient to state a claim under any of them:

12       *No Unlawful Business Practice.* An "unlawful" business practice "is an act or practice,

13  committed pursuant to business activity that is at the same time forbidden by law." *Bernardo v.*

14  *Planned Parenthood Fed. of Am.*, 115 Cal. App. 4th 322, 351-52 (2004); *see Korea Supply Co. v.*

15  *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003) (the UCL "borrows violations from other

16  laws by making them independently actionable"). "A practice is forbidden by law if it violates any

17  law, civil or criminal, statutory or judicially made, federal, state or local." *McKell v. Washington*

18  *Mut., Inc.*, 142 Cal. App. 4th 1457, 1474 (2006). A UCL claim is subject to dismissal where, as

19  here, the "complaint identifies no particular section of the statutory scheme which was violated and

20  fails to describe with any reasonable particularity the facts supporting a violation." *Khoury*, 14 Cal.

21  App. 4th at 619. As demonstrated, the OTC Defendants have not violated the Ordinance; no other

22  violation of law is alleged.

23       *No Unfair Business Conduct.* While "unfair" conduct under the UCL has been described

24  by some lower courts as that which "offends an established public policy or … [where] the practice

25  is immoral, unethical, oppressive, unscrupulous or substantively injurious to consumers" (*People v.*

26  *Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984)), the California

27  Supreme Court has criticized that definition as "too amorphous." *Cel-Tech Comm., Inc. v. Los*

28

-27-

1  *Angeles Cellular*, 20 Cal. 4th 163, 184-185 (1999).  *Cel-Tech* held "unfairness" under the UCL

2  must be "tethered to some legislatively declared policy or proof of some actual or threatened

3  impact on competition."  *Id.* at 186-187.  Abundant subsequent authority confirms that in the

4  consumer context, the "public policy which is a predicate to the action also must be 'tethered' to

5  specific constitutional, statutory or regulatory provisions."  *Gregory*, 104 Cal. App. 4th at 854;

6  *accord Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1274 (2006) (recognizing

7  uncertainty in the definition of "unfair" and calling on the Legislature to clarify it).  Even under the

8  broader definition in earlier consumer cases, a plaintiff still must plead facts sufficient to "state[ ] a

9  prima facie case of harm, having its genesis in an apparently unfair business practice."  *Schnall v.*

10  *Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000).

11      The Complaint is devoid of any factual allegations regarding the business practices of the

12  OTC Defendants to support a UCL claim by the City for "unfair" business conduct.  It alleges in

13  conclusory fashion that they have failed to collect, and remit transient occupancy taxes owed to the

14  City.  *See, e.g.*, Cmplt ¶ 31 (alleging "Defendants failed to collect and/or remit the Transient Taxes

15  due and owing to the Plaintiff").  However, as shown, the OTC Defendants owe no such taxes and

16  have no such duty to collect and remit.  But even if Defendants were subject to the Ordinance and

17  required to collect taxes based on the alleged "retail" amount, an asserted taxpayer's mere failure to

18  pay a *disputed* tax deficiency would not constitute an "unfair" business practice – especially where,

19  as here, the City has end-run the very administrative procedures mandated by its Ordinance to

20  resolve such a dispute, *see supra* at 12.  Again, a contrary conclusion would mean every taxing

21  authority within the state could assert a UCL action against any business that ever dared to dispute

22  an asserted tax or tax deficiency.

23      ***No Fraudulent Business Practice.***  To establish a "fraudulent" business act or practice

24  under the UCL, a plaintiff is required to show that "members of the public are likely to be

25  deceived."  *Bernardo*, 115 Cal. App. 4th at 355.  The City has not alleged facts, which if proven,

26  would demonstrate any OTC Defendant's business practice is likely to deceive consumers.  The

27  complaint does not allege any statement made by an OTC Defendant to consumers or to the City

-28-

28  ───────────────────────────────────────
Memorandum in Support of Defendants' Motion to Dismiss the Complaint

itself – it alleges only that Defendants charge and customers pay "a taxes and service fee.'" Cmplt

¶ 32. Those allegations are insufficient as a matter of law to establish a fraudulent (or unfair)

business practice under the UCL. *See Searle v. Wyndham Int'l Inc.*, 102 Cal. App. 4th 1327, 1335

(2002) (hotel not engaged in unlawful, unfair or fraudulent practice by allegedly charging room

service fee without disclosing whether fee is remitted to employees or retained by hotel); *Walker v.*

*Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1170-1178 (2002) (mortgage loan

servicing company's practice of passing costs to borrowers not unlawful, unfair or fraudulent).

    The City also has not alleged harm based on consumer deception. The remedy it seeks

under its UCL claim – purported "restitution of all funds seized from [the City]" (Cmplt ¶ 50) – is

based on the twin false premises that the OTC Defendants owe taxes under the Ordinance and that

the amounts the City seeks were "seized" from it. Funds an OTC Defendant obtained for its online

services in facilitating a hotel room reservation are not money obtained from the City, much less

"wrongfully obtained" or "acquired by means of ...unfair competition." *Bank of the West v. Super.*

*Ct.*, 2 Cal. 4th 1254, 1266 (1992); *see Searle* at 1335; *Walker* at 1178.

### 2. The City Has Not Stated A Claim For Conversion, Imposition Of A Constructive Trust Or Unjust Enrichment

    The City's conversion and constructive trust claims fail because they do not allege properly

that the OTC Defendants have exercised control over monies belonging to the City. *See AmerUS*

*Life Ins Co. v. Bank of Am., N.A.*, 143 Cal. App. 4th 631, 642 & n.4 (2006) ("Conversion is the

wrongful exercise of dominion over the property of another" requiring proof of plaintiff's "right to

possession of the property at the time of the conversion," a "wrongful act" by defendant, and

damages); *Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 990 (1995) (constructive

trust is "a remedy" for an underlying tort or violation of law, not a cause of action); *Burger v.*

*Super. Ct.*, 151 Cal. App. 3d 1013, 1017-1018 (1984) (same). Because the OTC Defendants are

not subject to the City's tax and its claims for violation of its Ordinance fail, there is no underlying

violation of law to remedy, and the OTC Defendants do not possess funds owed to the City.

Memorandum in Support of Defendants' Motion to Dismiss the Complaint

Finally, "[t]he phrase 'unjust enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." *Lauriedale Assocs. v. Wilson*, 7 Cal. App. 4th 1439, 1448 (1992). More specifically, the phrase

"is used in law to characterize the result or effect of a failure to make restitution of or for property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly." *Dinosaur Dev. v. White*, 216 Cal. App. 3d 1310, 1315 (1989).

Again, because the OTC Defendants are not subject to the City's tax, they are not in possession of funds owed to the City, and there is no restitution to be made.

### 3.    The City Has Not Stated A Claim For A Declaratory Judgment

The City's declaratory judgment claim merely repeats its defective allegations regarding violation of the Ordinance and California law (Cmplt ¶ 64), and thus should be dismissed for all the above reasons.

### CONCLUSION

For all of the above reasons, the OTC Defendants' Motion to Dismiss the City's Complaint should be granted and this action should be dismissed: (i) without prejudice to the City filing a new action if and when it can allege it has exhausted its administrative remedies; or (ii) if exhaustion is held not to be required, with prejudice for failure to state a claim.

Dated:  September 18, 2007          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


                                    */s/ Darrel J. Hieber*
                                    DARREL J. HIEBER
                                    Attorneys for Defendants
                                    priceline.com Incorporated, Travelweb LLC
                                    and Lowestfare.com Incorporated

-30-

Dated: September 18, 2007          JONES DAY

                                   /s/ Craig E. Stewart
                                   CRAIG E. STEWART
                                   Attorneys for Hotels.com, L.P. and Expedia, Inc.

Dated:  September 18, 2007         McDERMOTT WILL & EMERY LLP

                                   /s/ Matthew Oster
                                   MATTHEW OSTER
                                   Attorneys for Orbitz, LLC, Trip Network, Inc. (d/b/a
                                   Cheaptickets.com), Internetwork Publishing Corp. (d/b/a
                                   Lodging.com), Travelocity.com LP and Site59.com, LLC

## ATTESTATION UNDER GENERAL ORDER 45

I, DARREL J. HIEBER, hereby declare pursuant to General Order 45 that I have obtained

the concurrence in the filing of this document from each of the other signatories listed above.

I hereby attest that the foregoing attestation is true and corrected.

Executed on September 18, 2007, in Los Angeles, California.

                                   /s/ Darrel J. Hieber
                                   Darrel J. Hieber

-31-

Memorandum in Support of Defendants' Motion to Dismiss the Complaint