# Exhibit H

1 (Pages 1 to 4)

**1**

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
GENERAL DIVISION JURISDICTION
CASE NO. 06-19187 CA 05

MIAMI-DADE COUNTY and IAN YORTY,
as MIAMI-DADE COUNTY TAX COLLECTOR,
     Plaintiffs,
vs.
INTERNETWORK PUBLISHING CORP., et al.,

     Defendants.

TRANSCRIPT OF PROCEEDINGS

BEFORE

THE HONORABLE JON I. GORDON

Miami-Dade County Courthouse
73 West Flagler Street
Miami, Florida

Wednesday, January 17, 2007
1:30 p.m. - 3:30 p.m.

**2**

APPEARANCES
For the Plaintiffs:
     ABBIE N. SCHWADERER, ESQ.
     CRAIG E. LEEN, ESQ.
     ERIC A. HERNANDEZ, ESQ.
     EVAN GROB, ESQ.
     SCOTT FABRICIUS, ESQ
     ANDREW BOESE, ESQ.
     Miami-Dade County Attorney's Office
     111 Northwest 1st Street
     Suite 2810
     Miami, Florida 33128

For Defendants:

     HAROLD R. MARDENBOROUGH, JR. (via telephone)
     Carr, Allison, Pugh, Howard, Oliver & Sisson
     305 South Gadsden Street
     Tallahassee, Florida 32301
     LAURENCE H. BARTLETT, ESQ. (via telephone)
     Crotty & Bartlett P A
     PO Box 9547
     Daytona Beach Florida 32120

     DEBORAH SAVARESE SLOAN, ESQ. (via telephone)
     Jones Day
     2727 North Harwood Street
     Dallas, Texas 75201
     PAUL CHRONIS, ESQ. (via telephone)
     McDermott Will & Emery LLP
     227 West Monroe Street
     Chicago, IL 60606

**3**

For Defendants:

STEVEN E. SIFF, P.A.
McDermott Will & Emery LLP
201 South Biscayne Boulevard
22nd Floor
Miami, Florida 33131

SANTIAGO A. CUETO, ESQ.
Concepcion, Sexton & Martinez
355 Alhambra Circle
Suite 1250
Coral Gables, Florida 33134

THOMAS M. MOON, ESQ.
Fromberg, Perlow & Kornik, P.A.
18901 Northeast 29th Avenue
Suite 100
Aventura, Florida 33180

- - - - - - - -

**4**

THE COURT: I'll tell you what, lawyers on the phone, why don't you make your appearances first.

MR. MARDENBOROUGH: This is Hal Mardenborough. I represent BookIt.com and Hotel America.

THE COURT: Where are you located?

MR. MARDENBOROUGH: I'm in Tallahassee.

THE COURT: Thank you. Next up.

MR. BARTLETT: My name is Larry Bartlett from Daytona Beach. I represent Tee Times USA.

THE COURT: Yes, sir. Thank you.

MR. CHRONIS: Your Honor, good morning. My name is Paul Chronis, C-H-R-O-N-I-S. I'm with McDermott, Will & Emery in Chicago. And along with Steve Siff and Aron Frakes, I represent the Orbitz entities.

THE COURT: Sir.

MS. SLOAN: Or ma'am. Debra Sloan from Jones Day in Dallas, and we represent Expedia, Hotels.com and Hotwire.

THE COURT: Thank you, ma'am. Is there anyone else, please, on the phone?

Negative.

By the way, if you all the have something

5

1   to add, it would be helpful if you would identify
2   yourself when you do that. Would you do that,
3   please?
4       MR. MARDENBOROUGH: Yes, Your Honor.
5       THE COURT: Let's go around the table. To
6   the right of me, Counsel, why don't you start.
7       MS. SCHWADERER: My name is Abbie
8   Schwaderer, and I represent Miami-Dade County and
9   Ian Yorty as Miami-Dade County tax collector.
10      THE COURT: Yes, ma'am.
11      MR. HERNANDEZ: Eric Hernandez, Assistant
12  County Attorney.
13      THE COURT: Thank you.
14      MR. LEEN: Craig Leen, Assistant County
15  Attorney.
16      THE COURT: Thank you.
17      MR. FABRICIUS: Scott Fabricius, Assistant
18  County Attorney.
19      THE COURT: Thank you.
20      MR. MOON: Tom Moon for defendant Travalco
21  USA.
22      MR. CUETO: Santiago Cueto for defendant
23  Tourico Holidays.
24      THE COURT: Thank you, sir.
25      MR. SIFF: Steve Siff from McDermott Will &

6

1   Emery on behalf of 18 defendants. I can go
2   through the list or it's the number of
3   defendants.
4       THE COURT: Your appearance identifies who
5   you are on behalf of. And the motion is on
6   behalf of them.
7       MR. SIFF: That's correct.
8       THE COURT: Is there anyone else that wants
9   to make an appearance?
10      MR. GROB: Evan Grob from the County
11  Attorney's Office.
12      THE COURT: Thank you, Counsel.
13      MR. BOESE: Andrew Boese also from the
14  County Attorney's Office.
15      THE COURT: We have the whole Gestalt.
16  Where is Murray? Murray's having lunch with
17  Judge Farina. Bringing the heavy guns, are you.
18  Okay. Well, this is an interesting case, and I
19  don't know how to thank you for favoring me with
20  all this information that you've shared with me
21  here. As you see, it's about a foot high.
22  Lawyers, this is a trial court. It ain't an
23  appellate court.
24      But at any rate, there's a couple of
25  interesting things. First of all, we know we

7

1   have your motion to dismiss.
2       MR. SIFF: That's correct, Your Honor.
3       THE COURT: I want you to go into it. I
4   can also say that I know that you were before
5   Judge Simons on your motion to transfer. And His
6   Honor felt that it ought not to be, and that's
7   fine.
8       I do, frankly, have a real problem that we
9   are going to have to deal with at some time or
10  another in my belief that it does not feel
11  particularly appropriate for the plaintiff to sue
12  30 or some defendants in the same lawsuit for
13  relief. To me that sounds like misjoinder, quite
14  frankly.
15      I'm not certain why each plaintiff --
16  strike that -- each defendant ought not to be an
17  individual defendant in its own lawsuit. I look
18  at this and wonder how in the world would a court
19  manage a case of this nature where the plaintiff
20  is suing all the defendants, wants to do the
21  discovery on each of them, obliging each of the
22  other co-defendants to sit through multiple
23  depositions and matters that do not involve them,
24  review countless documents that they care little
25  about.

8

1       So at some time or another I'm going to
2   have to come to grips with whether or not it
3   feels appropriate to handle this case in the
4   fashion in which it is. But right now I know we
5   are on the defendant's motion to dismiss the
6   amended complaint.
7       As I'm looking at the amended complaint,
8   County, help me if you would, please. In Count
9   I, what would we call that cause of action? It
10  looks like it's a count styled Violation of State
11  Law, Miami-Dade County Code, failure to remit
12  tourist and conventional tax, convention tax, I
13  mean, development taxes. What is the cause of
14  action?
15      MS. SCHWADERER: It's the violation of the
16  statute, and as allowed by Chapter 212, the
17  County, as the taxing authority, is in fact
18  directed to bring a case for violations of that
19  chapter in circuit court.
20      THE COURT: Okay. So this is a statutory
21  cause of action.
22      MS. SCHWADERER: Statutory and based on the
23  County code as well.
24      THE COURT: I don't know, frankly, that a
25  County code itself can generate a statutory cause

**9**

1  of action. I don't know about that. But if you
2  would, please, identify the statute or the
3  portion of the statute that directs the
4  plaintiff, and I'm not sure -- do we have two
5  plaintiffs in this case or just one plaintiff?
6  Do we have the Dade County tax collector who is a
7  plaintiff or do we have Metropolitan Dade County
8  who is a plaintiff? I'm not certain who is
9  entitled to recover, if at all. Why don't you
10  explain that to me.
11       MR. HERNANDEZ: For all practical purposes,
12  Your Honor, they are the same entity.
13       THE COURT: But are they not two separate
14  legal entities?
15       MR. HERNANDEZ: Not technically. Not
16  pursuant to our charter. The problem is that
17  many of the rights that are enumerated in the
18  statutes are directed directly to the tax
19  collector. It just happens to be that in this
20  County the tax collector is another department of
21  Miami-Dade County.
22       THE COURT: Okay. I guess my question is
23  normally throughout the rest of the state they
24  are constitutional officers?
25       MR. HERNANDEZ: Right.

**10**

1       THE COURT: Under the executive branch, I
2  suspect.
3       My question is, under the Dade County
4  Charter, I guess they hold the -- you know, they
5  are almost one and the same with the
6  constitutional officer. But when you have a tax
7  case, a straight tax case, if someone is not
8  paying their ad valorem taxes, who do they sue
9  when they challenge the taxes or who does --
10  which entity sues the taxpayer for the taxes when
11  they want to collect them?
12       MR. HERNANDEZ: Your Honor, they usually
13  sue the tax collector by itself.
14       THE COURT: Okay.
15       MR. HERNANDEZ: However, that's because
16  people may not understand that the tax collector
17  is also a part of Miami-Dade County. It really
18  never comes up. That's the answer to the
19  question.
20       But with respect to the rights that are
21  designated -- constitutional rights designated to
22  the tax collector, there's case law out there
23  that says the tax collector, even the Miami-Dade
24  County tax collector, retains all those rights
25  even though they are under the County or are a

**11**

1  separate department of the County.
2       THE COURT: And does the same thing apply
3  to -- although they are not a named party to the
4  tax appraiser.
5       MR. HERNANDEZ: Yes.
6       THE COURT: So whereas they are under the
7  charter, they still have all the indicia of a
8  constitutional officer obliged to do whatever it
9  is they are supposed to do.
10       MR. HERNANDEZ: That's correct.
11       THE COURT: Help me if you would, please,
12  in Count I, point to me or cite to me the statute
13  or portion of the statute that says one can bring
14  a lawsuit. If you have a copy of it that would
15  be helpful.
16       MR. HERNANDEZ: Yes, Your Honor.
17       THE COURT: Thank you.
18       MS. SCHWADERER: Your Honor, here is a copy
19  of 212.151.
20       THE COURT: Thank you that's Florida
21  Statute 212.151.
22       MS. SCHWADERER: Section A.
23       THE COURT: Section one?
24       MS. SCHWADERER: I'm sorry. Section one.
25       THE COURT: Let's read it. It says all

**12**

1  suits brought hereafter by the department -- what
2  department is that? Department is defined as
3  what?
4       MS. SCHWADERER: For the purposes of these
5  taxes, under the statutes, that I can go into
6  just a minute, under the statutes that we are
7  suing under, they give the County all the
8  enforcement powers of the Department of Revenue
9  that are granted to it under Chapter 212. So in
10  this statute, the department is the County.
11       THE COURT: Okay. Florida Statute 212.151
12  identifies suits brought by the department. Is
13  there another section of the statute or Chapter
14  212 that says that if the County passes some
15  ordinance --
16       MR. HERNANDEZ: Yes, Your Honor. This is a
17  county administered tax.
18       THE COURT: You know what, let's start it
19  at first base. First base is what portion of the
20  statute entitles you to bring the action? The
21  one you are showing me says department. I'm just
22  curious to read or have brought to my attention,
23  please, the portion that says with the collection
24  of County taxes, the County has all the rights or
25  whatever it is that the department has.

13

1    MS. SCHWADERER: Of course, Your Honor.
2    There are two statutes, two Florida statutes that
3    we brought this suit under. The first one is
4    212.0305, and I do have a copy of that for you.
5    THE COURT: Yes, ma'am.
6    MS. SCHWADERER: That's the section setting
7    up the convention development tax, which is one
8    of the taxes we are suing under.
9    THE COURT: You are suing for the
10   convention development tax. And the other one?
11   MS. SCHWADERER: There are two others that
12   are under 125.0104.
13   THE COURT: Yes, ma'am.
14   MS. SCHWADERER: These two are the tourist
15   development tax and the sports facility franchise
16   tax.
17   THE COURT: And that site is?
18   MS. SCHWADERER: It's also under 125.
19   THE COURT: Sports --
20   MS. SCHWADERER: Facility franchise tax.
21   THE COURT: So you are suing -- I gather
22   you are suing for the collection of all these
23   taxes.
24   MS. SCHWADERER: Yes. We allege that
25   defendants have, in fact, already collected these

14

1    taxes but have not remitted them to us.
2    THE COURT: We are going to talk about
3    that, but insofar as understanding what your
4    statutory cause of action is in Count I, you are
5    saying that Florida Statute 212.151 entitles you
6    to bring the lawsuit.
7    MS. SCHWADERER: Yes. And, Your Honor, if
8    I may, in 212.0305 section five -- and this is a
9    copy for you and another copy for opposing
10   counsel.
11   THE COURT: 0305.
12   MS. SCHWADERER: Part five. It discusses
13   the local administration of the tax. And the
14   statute allows for a County by ordinance to
15   administer this tax locally and assume all the
16   powers of the Department of Revenue that are
17   granted to it in Chapter 212.
18   THE COURT: That's what I'm looking for.
19   Under 212.0305 insofar as the convention
20   development tax is concerned, the County can levy
21   under this provision -- it says the County can
22   levy under this provision of this section. A
23   County levying a tax under this provision of this
24   section may be exempt from the requirements of
25   the section that the tax collected be remitted to

15

1    the Department of Revenue before being returned
2    to the County and that such tax be administered
3    according to the provisions of this chapter if
4    the County adopts an ordinance providing for the
5    collection and administration.
6    Where does it say that --
7    MS. SCHWADERER: Part C on the next page.
8    THE COURT: Yes, ma'am. Let me turn it
9    over. C or B?
10   MS. SCHWADERER: I believe it's C.
11   THE COURT: Okay. County adopting an
12   ordinance providing for the collection and
13   administration of tax on a local basis shall also
14   adopt an ordinance electing to either assume all
15   responsibility for auditing the records, et
16   cetera, or to delegate such authority to the
17   department.
18   MS. SCHWADERER: And if you skip one line
19   down to right after it says 212.03, it says the
20   County may use any power granted in this chapter
21   to the department to determine the amount of tax,
22   penalties and interest to be paid by each dealer
23   and to enforce payment.
24   THE COURT: You are reading 212.0305 in
25   conjunction with 212 -- I guess, 0305 -- I guess

16

1    they are one and the same. I guess I was reading
2    the same statute -- with regard to the convention
3    development tax.
4    MS. SCHWADERER: Yes.
5    THE COURT: Now, let's go back to where it
6    says you can bring the action. No, no. I
7    misspoke. You are reading 212.0305 as giving you
8    the powers that the department has under 212.151.
9    MS. SCHWADERER: Exactly, Your Honor.
10   THE COURT: Let's go back to 151 for a
11   second. All suits brought hereafter by the
12   department against a retailer, dealer or vendor
13   for any violation of this chapter and for the
14   purposes of effecting collection of any tax due
15   from any dealer, including garnishment
16   proceedings, shall be brought basically in the
17   circuit court.
18   So it says all suits against a retailer for
19   violation of this chapter and for the purpose of
20   effectuating a -- effecting, I guess, collection
21   of any tax due. I wonder if this permits the
22   department, slash, the County to sue separately
23   for violations of the chapter and also for the
24   purpose of effecting collection of any tax due.
25   MR. HERNANDEZ: We are suing under both.

17

1  THE COURT: I'm going to ask you about
2  that. Now, does 212.151 in conjunction with
3  212.0305 only apply to the convention development
4  tax?
5  MS. SCHWADERER: No, it does not, Your
6  Honor, and I have a copy of 125.0104 which uses
7  identical language about the County being able to
8  use the powers of the department. But if I may
9  direct Your Honor to one of the lines right
10  above, it 10(A)(2), it says the tax be
11  administered according to Chapter 212. And, in
12  fact, in other sections of 125.0104 it directs
13  that this tax, although it's in a different
14  chapter, be enforced.
15  THE COURT: In the same fashion.
16  MS. SCHWADERER: Exactly.
17  THE COURT: So I guess we come back to what
18  is your cause of action under Count I. You are
19  telling me it is a cause of action pursuant to
20  Florida Statute 212.151, and you are suing
21  here -- are you suing in this count, I guess, to
22  collect taxes? Is that the upshot of it all?
23  MS. SCHWADERER: Well, we are suing based
24  on defendant's violation of this statute, both to
25  collect these taxes and because they have

18

1  violated the statute by collecting but not
2  remitting those taxes in full to the County.
3  THE COURT: Okay. Let's take a look at
4  what you allege. This says the defendants are
5  required to self assess and remit the required
6  tourist convention development tax. These
7  statutes and ordinances also require defendants
8  to maintain adequate records. Defendants have
9  failed to remit the amount due and owing to the
10  County pursuant to the above-mentioned statutes.
11  The County is entitled to collect from the
12  defendants the tourist and conventional
13  development taxes owed and penalties and interest
14  to be determined. The County has been damaged in
15  the failure to remit these taxes.
16  So you are suing in Count I for the taxes
17  due and owing, correct?
18  MS. SCHWADERER: Yes.
19  THE COURT: Have they ever been taxed?
20  Meaning have they ever been given a notice that
21  says you owe the County X amount and you have to
22  pay these taxes by a date certain? Has the
23  County ever taken the position of saying, okay,
24  here we go, the tax collector has assessed you
25  and pay the tax?

19

1  MS. SCHWADERER: Well, Your Honor, the way
2  this tax is set up, it's a self-assessing tax so
3  the defendants or anyone else that rents hotel
4  rooms are supposed to keep records of how many --
5  they are supposed to charge the tax to their
6  customers, and they are supposed to keep records
7  of how much taxes they are collecting and then
8  remit them to the County with those records at
9  the end of -- by every so often -- periodically.
10  Defendants have never done this.
11  THE COURT: Let me ask you, what happens
12  under the statute? I mean, do they ever get a
13  tax bill? Does the tax collector ever send them
14  a bill that says, okay, this is the amount of
15  taxes you owe, pay it?
16  MS. SCHWADERER: With a taxpayer who is
17  remitting this regularly, no.
18  THE COURT: Okay. Does the ordinance that
19  entitles you to collect this tax -- and I guess
20  you have a copy of the ordinance --
21  MS. SCHWADERER: I do.
22  THE COURT: Does it impose upon the tax
23  collector an obligation to send out a tax bill
24  that says, look, this is the amount of tax which
25  is due and owing, so pay the tax or suffer the

20

1  consequences?
2  MS. SCHWADERER: It doesn't impose an
3  obligation. It says that Miami-Dade County has
4  the authority to audit defendants and gives us
5  one of many powers to --
6  THE COURT: What is the ordinance you are
7  talking about? Let's identify the ordinance by
8  section.
9  MS. SCHWADERER: Of course. The first
10  ordinance is section 29-51 of the Miami-Dade
11  County code.
12  THE COURT: All right. Now, does this
13  apply to Count I?
14  MS. SCHWADERER: Yes, it does.
15  THE COURT: This is the tourist development
16  thing. Okay. When does a tax become collectible
17  and due and owing? When does it become due and
18  owing?
19  MS. SCHWADERER: Your Honor, if I can
20  direct your attention to the next page under
21  section 29-51.1(a).
22  THE COURT: Tax levied hereunder shall be
23  due and payable monthly on the first of each
24  month. And for the purpose of ascertaining the
25  amount of tax payable under this article, it

**21**

1 shall be the duty of the lessors to make a return
2 on or before the 20th of the month to the County
3 tax collector upon forms prepared and furnished
4 by the County showing all rentals, et cetera.
5 The County may authorize a quarterly return
6 and payment when the tax remitted by the lessor
7 for the proceeding quarter did not exceed $25.
8 The taxes levied shall be -- is there something
9 in this ordinance that deals with the tax
10 collector rendering a tax bill to these people?
11 MS. SCHWADERER: Your Honor, if I can
12 direct you to the next page under section
13 29-51.2.
14 THE COURT: Okay.
15 MS. SCHWADERER: It talks about the tax
16 collector's powers and duties and places a duty
17 on the tax collector to maintain accurate books,
18 records or accounts, but it never says that the
19 tax collector has a duty to issue an assessment
20 before defendants have a duty to pay. It's a
21 self-assessing tax.
22 MR. HERNANDEZ: It's a self-reporting tax.
23 THE COURT: One at a time. Well, what
24 happens if, let's say, a hotel doesn't get back
25 to you, doesn't come forth and doesn't say

**22**

1 anything to you about how many rooms they've
2 rented and this and that; how does the tax
3 collector go about collecting the money? Does
4 the ordinance deal with that? Oh, enforcement
5 and collections under 29.53. Failure to charge
6 and collect taxes. Any person who is taxable
7 hereunder who fails and refuses to charge and
8 collect paying any rental release or purchasing
9 any food, beverage, alcohol, et cetera, shall be,
10 in addition to being personally liable for the
11 payment of the tax, guilty of this and that.
12 Advertising and holding out to the public
13 that the tax not required. No person shall
14 advertise or hold out. Okay. Liens, tourist
15 development room tax and professional sports
16 franchise facility tax, hereby levied shall
17 constitute a lien. Okay. How is it levied?
18 Where in the ordinance does it describe how it's
19 levied?
20 MS. SCHWADERER: Your Honor, since it's
21 self-assessing tax, the person collecting the
22 tax, the defendants, are supposed to remit their
23 returns and their records along with those funds
24 to the County.
25 THE COURT: Is that -- levy, is that under

**23**

1 29-51.
2 MS. SCHWADERER: Yes, in A, the taxes
3 levied hereunder, levied by defendant.
4 THE COURT: Okay. That's kind of odd, but
5 let me read it. I'm looking at 29-51.1. Just
6 give me a moment to read it.
7 MR. HERNANDEZ: Sure.
8 THE COURT: I'm looking at 29-51.1(a). It
9 says it will be the duty of all lessors to make a
10 return on or before the 20th day of the month to
11 the tax collector, County tax collector upon
12 forms prepared and furnished by the County. Were
13 these forms prepared and furnished by the County
14 and given to these defendants?
15 MS. SCHWADERER: I believe these forms -- I
16 believe how the procedure works is that people or
17 entities who are subject to this tax register,
18 and this is in a point of this section, register
19 with the County and open an account in order to
20 pay these taxes.
21 MR. HERNANDEZ: As dealers
22 MS. SCHWADERER: They register as dealers.
23 THE COURT: Is that some other ordinance?
24 MR. HERNANDEZ: Yes.
25 THE COURT: Because I'm just looking at the

**24**

1 ordinance you gave me, and it says on remittance
2 and administration, apparently those persons who
3 you believe are lessors are supposed to fill out
4 a form that you all furnished to the individual,
5 and then it shall be the duty of all lessors to
6 make a return on or before the 20th day of the
7 month to the County tax collector upon forms
8 prepared and furnished by the County showing all
9 rentals during the preceding calendar month.
10 And then it goes on to say that the County
11 or its designated agent shall accept returns if
12 postmarked on or before the 20th day. Each
13 lessor shall file a form for each tax period. So
14 I guess I want to know whether or not the County
15 has tendered or demanded or given to the
16 defendants forms to fill out and said fill it out
17 and give it back to us by the 20th.
18 MS. SCHWADERER: Your Honor, if I may
19 address this.
20 THE COURT: Yes, ma'am.
21 MS. SCHWADERER: If you look at 51.1(B), it
22 imposes duties upon dealers such as defendants,
23 and dealers are defined in the Florida
24 statutes --
25 THE COURT: 51?

**25**

MS. SCHWADERER: Right under A.

THE COURT: Are you saying B?

MS. SCHWADERER: In section B it says the same duties imposed by Chapter 212 on other dealers are imposed on dealers in this.

THE COURT: Just give me a moment. This says they are supposed to make returns, keep books, records and accounts, correct?

MS. SCHWADERER: Yes.

THE COURT: Just a second. And that they have the duty to maintain adequate records, show gross collections. It shall be their duty to keep and preserve for a period of three years the records, this and that, but it still contemplates, does it not, the furnishing of a return for them to fill out, and based upon the information in the return, then you presumably know if you are satisfied with it, how much taxes are due, right?

MS. SCHWADERER: Yes.

THE COURT: So I'm asking you, were these returns ever either furnished to or given to the defendants in this case so that they could comply with the ordinance?

MS. SCHWADERER: Well, dealers are required

**26**

1  to register with the County.

2  THE COURT: Dealers? Who are dealers?

3  MS. SCHWADERER: If I can show you dealers

4  as I highlighted in 212.

5  THE COURT: You are giving me a copy

6  212.06.

7  MR. HERNANDEZ: Your Honor, I'm sorry.

8  THE COURT: Yes, sir.

9  MR. HERNANDEZ: Your Honor, let me see if I

10  explain it a little bit better. The point is

11  this is a self-reporting tax. We would provide

12  these forms to whomever wants it, but the duty

13  preceding us giving you a bill, you first have

14  to -- if you are renting or selling these hotel

15  rooms out, you are supposed to come in and

16  register as a dealer.

17  THE COURT: One second. Where is that?

18  MR. HERNANDEZ: That's what we are trying

19  to explain to you right now.

20  THE COURT: All right. Well, just show me

21  rather than tell me. You have 212.06, dealer.

22  Dealer is any person who leases or grants a

23  license to use, occupy or enter upon living

24  quarters. How does 212.06 relate to preparing

25  and furnishing forms --

**27**

1  MS. SCHWADERER: Yes, Your Honor.

2  THE COURT: -- under 29-51.1? I don't know

3  from dealers. What is a dealer?

4  MS. SCHWADERER: Well, dealers are defined

5  as a number of things in the statute. In that

6  part that we've highlighted for you in section

7  212.06, it defines dealers as someone who -- I'll

8  look at the exact language I highlighted.

9  THE COURT: It is defined to be any person

10  who leases, et cetera.

11  MS. SCHWADERER: We alleged in our

12  complaint that defendants do this, that they rent

13  and lease or let hotel rooms to consumers. So

14  for the purposes of these taxes, defendants are

15  dealers or should be registered as dealers.

16  THE COURT: Assume for a moment that they

17  are dealers, and I don't know, I don't really see

18  that alleged. But assume that they are. What in

19  212.06 obliges a dealer to do whatever somehow

20  somehow connects to the ordinance in question?

21  MS. SCHWADERER: Give me just one moment.

22  There is a part that requires dealers to

23  register.

24  THE COURT: Okay.

25  MS. SCHWADERER: Since as a self-assessing

**28**

1  tax --

2  THE COURT: Okay. You know what, just pass

3  that for a moment.

4  MS. SCHWADERER: There is a section, and it

5  does actually impose a penalty for someone

6  engaging in this without first registering.

7  THE COURT: And what is, according to the

8  statute, the remedy if one fails to do that?

9  MS. SCHWADERER: Well, if one has failed to

10  just register, not even talking about not paying,

11  but failing to register and still engaging in

12  this business, there's a fine.

13  THE COURT: Okay.

14  MS. SCHWADERER: But that's not -- we

15  haven't even brought a claim against defendants

16  for failing to register.

17  THE COURT: While you were looking for

18  that, I was reading further under section

19  29-51.1(c)(2). It says, if I'm reading

20  correctly -- and this is the ordinance that you

21  are looking to enforce. It says, for the purpose

22  of this subsection, if a lessor, or other person

23  collecting the tax under this article, does not

24  have adequate records of his rental or sales of

25  food, beverage or alcohol, the County or its

29

1  designated agent may upon the basis of test of
2  sampling of the lessors or persons available
3  records or other information relating to the
4  rentals or sales, make such lessor or person for
5  a representative period determine the proportion
6  that the taxable transaction bears to the total
7  transactions. This subsection does not affect
8  the duty of any lessor or person to collect or
9  the liability of any tenants.
10      So it says, if by chance they don't keep
11  records or they are not giving you what you think
12  they deserve, you can make an estimate of it.
13      Then it goes on to say under sub three, if
14  the records of the lessor or other person
15  collecting the taxes under this article are
16  adequate but voluminous, it says you can go ahead
17  and take sampling.
18      Then going down to D again, ordinance 29-51
19  -- strike that. 29-51(d), it says the County is
20  authorized to audit or inspect the records and
21  accounts of such lessors and persons and correct
22  by credit any overpayment of tax. And in the
23  event of any deficiency, an assessment shall be
24  made and collected. No administrative finding of
25  fact is necessary prior to the assessment of any

30

1  tax deficiency.
2      Subparagraph two says, in the event any
3  lessor or person charged herein fails or refuses
4  to make his records available for inspection so
5  that no audit or examination has been made of any
6  books and records of such lessor or person, fails
7  or refuses to register as a lessor, or other
8  person collecting the tax under this article, or
9  fails to make a report and pay the taxes as
10  provided by this article or makes a grossly
11  inaccurate report or makes a report that is false
12  or fraudulent, then in such event it shall be the
13  duty of the County to make an assessment from an
14  estimate based upon the best information
15  available to it for the tangible period of rental
16  sales of such lessor or other person collecting
17  the taxes.
18      The gross proceeds from the retails or
19  sales of beverages, et cetera, together with the
20  interest plus penalty of such have accrued as the
21  case may be, then the County shall proceed to
22  collect such taxes, interest and penalties on the
23  basis of such assessment which shall be
24  considered prima facie correct.
25      So if what you say is correct, that they

31

1  have not either been paying the taxes, if they
2  have not registered, has the County then made an
3  assessment of what they believe to be due and
4  owing based upon the best evidence available, and
5  have otherwise tried to collect that tax in the
6  normal course of affairs? That's my question.
7      MS. SCHWADERER: Well, Your Honor, first,
8  as you've noticed from the language that you read
9  to us, these options are permissive, that the
10  County may sample, the County is authorized to
11  audit. And none of these preclude us going to
12  court to also accomplish the same ends.
13      THE COURT: That's the question. The
14  question is if the ordinance obliges, presumably
15  the tax assessor, which is akin to a
16  constitutional officer, to make an initial
17  assessment of what he or she believes is to be
18  due and owing, and then it authorizes the County
19  to proceed to collect that tax, which is prima
20  facie correct in the normal course of affairs,
21  how is that normally done? How is that done? I
22  mean, does the County when it utilizes this
23  provision and takes its best estimate, it does
24  the things it's supposed to do, how does it go
25  about collecting the tax?

32

1      MR. HERNANDEZ: Well, Judge, we have
2  several options.
3      THE COURT: Tell me what they are.
4      MR. HERNANDEZ: Several options. First of
5  all, we have made an estimate of the taxes, and
6  we've alleged that in the complaint which is over
7  $7 million. That's the first thing.
8      THE COURT: Okay. I didn't see, frankly,
9  that the assessor has made that judgment. But I
10  don't know if that's your judgment of the
11  assessor's judgment.
12      MR. HERNANDEZ: No. That's the tax
13  collector's judgment. It's in the complaint,
14  Your Honor. It's in the common allegations.
15      THE COURT: Okay.
16      MR. HERNANDEZ: Second of all, the County
17  as the department under the statutes and
18  ordinances has broad discretion to do several
19  things. They can go ahead and try to collect the
20  tax administratively or they can immediately go
21  to court. They have the option of going to
22  court.
23      THE COURT: Wait one second.
24      MR. HERNANDEZ: Yes, Your Honor.
25      THE COURT: Right now I don't see anything

## 33

1   in this ordinance about going to court, so just
2   taking a look at the ordinance about what the
3   County does when a person does that you allege
4   that these persons have done, they haven't
5   registered, they are not paying the tax. So then
6   it says under the ordinance that the assessor
7   is -- let's see what it says. It says it shall
8   be the duty of the County to make an assessment.
9   That doesn't sound terribly discretionary. So
10  the County is duty bound to make an assessment
11  and then take its best shot and say okay,
12  partner, this is what you owe us, and go ahead
13  and try to collect it.
14       So how does the County collect a tax which
15  it claims to be due and owing?
16       MS. SCHWADERER: Your Honor, under section
17  29-51.2 at the bottom of that page, it says the
18  tax collector shall have the same duties and
19  powers as those vested in the Florida Department
20  of Revenue under Chapter 212. And, again, back
21  to 212.151 which authorizes us to go to court.
22       THE COURT: All right. Let's go back to
23  that. So if there is a tax which has been
24  assessed, which has been -- and the person has
25  been directed or given a tax bill, and they

## 34

1   refuse to pay it, how does the County in the
2   normal course of affairs go about collecting a
3   tax? You are saying that, well, they can do it
4   in the same way as Chapter 212 authorizes.
5       MR. HERNANDEZ: Right.
6       THE COURT: 212 I think we just looked at.
7   212.151 says, all suits brought hereafter by the
8   Department/County against these people for the
9   purposes of effectuating collection of any tax
10  due. So the question is, has the County tax
11  assessor, assessed and demanded and rendered a
12  tax bill to these people that is due? And the
13  answer to that is what, ma'am?
14       MS. SCHWADERER: Well, Your Honor, the
15  statute doesn't say that we have to have a set
16  number. Defendants haven't submitted any returns
17  to us, any information about exactly how much --
18       THE COURT: I understand, but under those
19  circumstances, doesn't the ordinance permit you
20  to take your best guess, which is prima facie
21  correct, and then say, okay, look, we have the
22  duty to take our best guess, we think it's this,
23  partner, you owe us the money, here is the tax
24  bill.
25       Now, once they get the tax bill, how do you

## 35

1   go about collecting it? Are you saying that the
2   way you collect a tourist tax, once you render a
3   bill to someone is to bring a lawsuit or is there
4   some other means administratively of collecting
5   the bill?
6       MS. SCHWADERER: There's no other means
7   administratively. We would have to take them to
8   court
9       MR. HERNANDEZ: Ultimately.
10      THE COURT: And you would take them to
11  court on the basis that you have assessed them,
12  you have billed them, and they haven't paid you,
13  right?
14      MR. HERNANDEZ: That's correct, Your Honor.
15      THE COURT: Okay.
16      MR. HERNANDEZ: Except for the fact that we
17  have the option.
18      THE COURT: You keep saying you have the
19  option.
20      MR. HERNANDEZ: Yes, because we don't have
21  to give them a tax bill in order to do this. The
22  reason that is so is because it is their
23  responsibility as a dealer to come in and
24  register.
25      THE COURT: Show me the law on that.

## 36

1       MR. HERNANDEZ: Absolutely, Your Honor.
2       THE COURT: Because what it sounds like,
3   unless you assess it -- listen, lawyer, unless
4   you assess it, unless you levy it, it sounds to
5   me as though you are asking the judicial branch
6   to do an executive function. And it is the tax
7   assessor's constitutional duty to make assessment
8   and levy taxes. It's not up to the Court to
9   determine what the proper assessment is, so
10  unless you initially assess and bill, it seems to
11  me as though you are asking the judiciary to
12  determine what the proper assessment is and to
13  collect it.
14      And I don't -- it sounds to me that that is
15  a violation of the separation of powers if the
16  tax assessor and the tax collector is a
17  constitutional officer.
18      MR. HERNANDEZ: Your Honor, I understand
19  what you are saying. That's why there's also a
20  declaratory judgment action part.
21      THE COURT: We'll get to the declaratory
22  action part because I don't know that you alleged
23  in the declaratory action that you are in doubt,
24  frankly, as to your rights. I didn't see that,
25  and that's normally an essential element of a dec

**37**

1    action, but besides that --
2        MR. HERNANDEZ: We feel --
3        THE COURT: Listen to me.
4        MR. HERNANDEZ: Yes, Your Honor.
5        THE COURT: I need for you to show me,
6    because you have advocated that you have the
7    option in collecting taxes -- you have no
8    administrative procedure to collect taxes, and
9    the only way you collect taxes is to file a
10   lawsuit. Show me --
11       MR. HERNANDEZ: That's not right, Your
12   Honor.
13       THE COURT: Help me with that.
14       MR. HERNANDEZ: What we are saying is we
15   can -- we can do these things that you have said,
16   assess and levy, we can put up an estimate, we
17   can do that, but we are not required to do that
18   before we file the lawsuit. That's exactly what
19   we are saying.
20       THE COURT: Okay. Well, show me why you
21   believe that to be the case when the ordinance
22   itself seems to impose a duty to make an
23   assessment. I don't see an allegation that you
24   all have made an assessment, nor that you've
25   rendered a bill, but you are asking the Court

**38**

1    basically to determine the amount of money which
2    seems to be the obligation of the County through
3    the tax assessor rather than the Court, so I'm
4    having a problem with that.
5        But what law do you have that says you can
6    come to court and the Court should determine the
7    amount of the assessment as opposed to the tax
8    assessor?
9        It's very interesting issues you are
10   presenting to me today. I'm delighted here to
11   have them.
12       MR. HERNANDEZ: What the particular
13   ordinance says is that the County is
14   authorized --
15       THE COURT: Where are you reading?
16       MR. HERNANDEZ: Under D-1. The County is
17   authorized --
18       THE COURT: D-1?
19       MR. HERNANDEZ: Yes.
20       THE COURT: The County is authorized to
21   audit, inspect the books and records.
22       MR. HERNANDEZ: That doesn't mean we have
23   to do it. That just means we have the authority
24   to do it. We have the option to do it.
25       THE COURT: Read down to D-2. In the event

**39**

1    the lessor fails to do it, et cetera, do you see
2    the portion that says in such event it shall be
3    the duty of the County to make an assessment for
4    an estimated basis and to collect?
5        MR. HERNANDEZ: We have done that. We have
6    estimated a basis of what the taxes are due, and
7    we've alleged that in the complaint.
8        THE COURT: I didn't see that to be.
9        MR. HERNANDEZ: We can show that to you.
10       THE COURT: Okay. I didn't see an
11   allegation that the assessor has assessed this
12   under this section and determined this is the
13   amount of taxes due from each defendant. It
14   seems like a collective amount from all the
15   defendants, which goes back to my earlier
16   question, to lump all these defendants in to
17   collect collectively a sum from all of them
18   doesn't make a lot of sense to me in trying to
19   litigate this.
20       If you had an assessment against one
21   defendant and a tax bill to that person, and if
22   you were saying that the only way the County has
23   to collect that tax is through a lawsuit, then I
24   can understand that's a manageable case. But the
25   way you have framed it that all these defendants

**40**

1    collectively owe you $7 million without knowing
2    how much each defendant has been assessed, it's
3    not manageable, but I'm going back to my question
4    to you here.
5        MS. SCHWADERER: About the registration.
6        THE COURT: No, no. Because assuming they
7    don't register, the ordinance seems to say take
8    your best guess County and it's prima facie right
9    and go ahead and collect it. Give them a bill
10   and collect it. How do you collect it unless you
11   are telling me the only way you can collect is to
12   bring a lawsuit. That's the way the County
13   collects it; is that it?
14       MR. HERNANDEZ: Yes. In this situation the
15   only way you can collect it is to bring a
16   lawsuit, Your Honor. And we are not asking the
17   Court to determine the amount owed in particular.
18       THE COURT: I know. That's a problem,
19   isn't it?
20       MR. HERNANDEZ: We are suing -- the statute
21   says the tax collector will do that. We are
22   suing defendants for the failure to comply with
23   these reporting procedures. What you have to
24   understand, Your Honor, that this again is a
25   self-reporting tax. So they are the ones that

**41**

1 have the duty to first come in and report this.
2     THE COURT: I understand that. But you are
3 missing my point, which is in the event they do
4 not do it as you've alleged, what is the County's
5 obligation? Is it to say, okay, partner, I'm
6 taking the best shot with you, you didn't do it,
7 here is the assessment, here is the tax bill, pay
8 it.
9     Now I'm dealing with -- assuming you've
10 done that, because it seems to be an obligation,
11 how do you collect it? Unless you are saying,
12 well, the only way to collect it is to go to
13 court. Okay, that's what you are saying.
14     Let me just take a moment, please. It's
15 your motion. This is what I'm focusing on. Help
16 me, if you would, please. In your judgment, give
17 me whatever argument you have as to why you
18 believe the court is not a proper forum to
19 determine either the amount nor to collect the
20 taxes at this stage of the proceedings. And what
21 remedies, if any, does the County have to collect
22 a tax which is otherwise been assessed and
23 billed. That's my question.
24     MR. SIFF: Let me respond, Your Honor, to
25 the first question, which was should this court

**42**

1 take on the obligation of -- and as I read the
2 complaint, they are asking you to determine in a
3 FDUTPA claim and other common law claims what
4 their amount of damages are that they suffered.
5     So that the record is absolutely clear,
6 there has been no assessment communicated by the
7 tax collector's office or Miami-Dade County to
8 any of my clients saying we have determined that
9 you owe a certain amount of taxes. There is, in
10 fact, no allegation that that has ever taken
11 place.
12     What has happened in this case, is that the
13 lawyers, based upon whatever information they had
14 available to them, have put together an aggregate
15 number of $7 million that this aggregate group of
16 defendants allegedly owe them.
17     In fact, what the County has done at the
18 same time that they filed this lawsuit is that
19 they have commenced an audit process that is
20 contemplated by the ordinance against several of
21 these defendants. And they have had meetings
22 with several of these defendants.
23     So what they are doing on the one hand is
24 exactly what they should have been doing under
25 the statute, and it's the basis of our exhaustion

**43**

1 of remedies defense that we have asserted in our
2 motion to dismiss, which is do your audit. You
3 claimed that we should have registered, we should
4 have filed this report, and we owe you taxes.
5 They have the right to audit. They've commenced
6 that audit at least against some of the
7 defendants. Conduct your audit, come to an
8 assessment.
9     If we don't cooperate, they have the
10 ability under the ordinance to give their best
11 estimate of what the taxes are owed, assess it.
12 We have administrative rights at that point in
13 time.
14     THE COURT: What are those rights? How
15 does the County -- the County Attorney's Office
16 is advising me that the only way they have -- the
17 only vehicle they have to collect a tax of this
18 nature is a lawsuit. Anyone who doesn't pay, get
19 ready, they have to file a lawsuit on them.
20 They've assessed it, and that's what it is. Do
21 you disagree?
22     MR. SIFF: I disagree with that, Your
23 Honor. And, frankly, it happens every day. And,
24 it's in fact, contemplated by the statute and the
25 ordinances that we've reviewed today. They can

**44**

1 serve a writ of garnishment once if there's an
2 assessment that is final and it's gone through
3 the administrative appeal process.
4     THE COURT: That's what I'm asking you.
5 What ordinance discusses the administrative
6 appeal process with a tax that has been assessed
7 and billed?
8     MR. SIFF: I don't have that information in
9 front of me, Your Honor, and, frankly, I think
10 it's the County's obligation to --
11     THE COURT: If you don't have it, you don't
12 have it. Let me ask you, are you saying there is
13 no administrative procedure that the County in
14 the normal course of affairs goes through to
15 collect a tax?
16     MS. SCHWADERER: No, Your Honor. There is
17 no administrative procedure that the County would
18 go through.
19     THE COURT: Well, is there an
20 administrative procedure that if the County
21 renders a tax bill to an entity, what remedies,
22 if any, does that entity have to contest the tax
23 bill?
24     MR. HERNANDEZ: They can bring it to court,
25 Your Honor.

45

1   THE COURT: They can bring you to court.
2   MR. HERNANDEZ: Right.
3   THE COURT: How do they bring you to
4   court? By way of a writ of certiorari as an
5   appeal from the tax review board? Are there
6   masters, like in ad valorem taxation?
7   MR. HERNANDEZ: That's the whole point,
8   Your Honor. With this kind of tax -- let's
9   compare it to an ad valorem taxation situation in
10  which there are set administrative remedies that
11  we go through before bringing anything to court.
12  For instance, if somebody doesn't pay their
13  taxes on their home, we can sell their home.
14  THE COURT: Do you sell it with court order
15  or do you just sell it?
16  MR. HERNANDEZ: We just sell it.
17  THE COURT: Do you have that same
18  prerogative here?
19  MR. HERNANDEZ: We don't have that
20  prerogative here. And that's why ultimately, no
21  matter what we do here, especially in a situation
22  where we have defendants that are out-of-state
23  defendants that don't have any assets --
24  THE COURT: Do they have --
25  MR. HERNANDEZ: We have to go to court to

47

1   all right, I got a bill, the hell with you, I'm
2   not paying it. What are you going to do?
3   MS. SCHWADERER: Your Honor, just two
4   points. Normally we have a lien process. We can
5   put a lien on someone's property, but since
6   defendants are mostly out-of-state companies or
7   are small internet businesses, they don't have
8   large assets like other businesses.
9   THE COURT: So there is a procedure. You
10  can lien them?
11  MS. SCHWADERER: If the defendant is
12  located in Washington state --
13  THE COURT: I don't Know that. Show me the
14  ordinance or portion of the statute that says how
15  you go about collecting a tax which has been --
16  MR. HERNANDEZ: That's precisely what we've
17  been trying to say, Your Honor.
18  THE COURT: You better get to it, partner.
19  You are telling me a lot, but that's not it.
20  MR. HERNANDEZ: Absolutely, Your Honor.
21  The point is --
22  THE COURT: Stop, stop. Take a breath.
23  MR. HERNANDEZ: Yes, sir.
24  THE COURT: What I want to know is where in
25  the ordinance or where in the statutes does it

46

1   collect them and there's no board --
2   THE COURT: Question.
3   MR. HERNANDEZ: Yes, Your Honor.
4   THE COURT: After you -- let's say you were
5   to make an assessment and bill them, do they have
6   an administrative remedy that they can appeal the
7   assessment?
8   MR. HERNANDEZ: Not that I'm aware of.
9   THE COURT: Let's take a look at --
10  MR. HERNANDEZ: Is that right?
11  MS. SCHWADERER: I'm not sure.
12  MR. HERNANDEZ: Not that I'm aware of right
13  now.
14  THE COURT: Better to tell me you don't
15  know then tell me it doesn't exist.
16  So what your belief is when this type tax
17  is assessed against an individual, if they failed
18  to pay, they have no administrative remedy of
19  appealing it or contesting it, and the only
20  remedy they have is to say, my goodness, I've
21  been assessed, and I have to go to court.
22  What happens if they don't go to court?
23  What harm comes to them? Let's say, if you don't
24  have any teeth to collect your tax, without going
25  to court, why would they go to court? They say

48

1   provide any down side for someone who does not
2   pay one of these taxes? What happens? It's hard
3   for me to imagine that the County has the
4   authority to assess and tax and cannot impose any
5   leverage on the individual to pay it once it's
6   been billed other than to go to court. So let's
7   take a look at the ordinance again and take a
8   moment because I'm hard pressed to believe that
9   to be the case.
10  MR. HERNANDEZ: Absolutely, Your Honor.
11  But the statute -- isn't the statute 212?
12  MS. SCHWADERER: Well, in the County
13  ordinance 29-61.1 --
14  THE COURT: Let's take a look.
15  MS. SCHWADERER: A-3, excuse me.
16  THE COURT: Well, I don't have that. You
17  didn't give me that one. 29 what?
18  MS. SCHWADERER: 29-61. Do you have that?
19  THE COURT: No, ma'am.
20  MS. SCHWADERER: You have 29-51.
21  THE COURT: This is 29-60, levy and
22  imposition of conventional tax.
23  MS. SCHWADERER: Excuse me, Your Honor. I
24  think I gave you my copy as well.
25  THE COURT: Well, I don't mind. Thank you,

49

1   ma'am. Let me take a look. Collection and
2   disbursement, is that it, 29-61.1?
3       MS. SCHWADERER: I believe it's
4   2-61.1(a)(3) the tax imposed by this article
5   shall constitute a lien on the property.
6       Furthermore, tax under 212.15, which I can
7   provide you with a copy, says that taxes
8   collected as -- I'm sorry. Taxes imposed by this
9   chapter become state funds at the moment of
10  collection and are due to the department on the
11  first day of the succeeding month.
12      THE COURT: But the County ordinance says
13  it goes to the County, right?
14      MS. SCHWADERER: Right, so they are County
15  funds.
16      THE COURT: Assume they are County funds.
17  You have been asking -- we've been spending a lot
18  of time me asking you how collect it, and you've
19  been holding back the ordinance, which is 29-61
20  which says collection and disbursement. I don't
21  understand why you are doing that.
22      MS. SCHWADERER: I'm sorry, Your Honor. It
23  also appears in the tourist development -- the
24  tourist development ordinance has the same
25  provision about a lien.

50

1       THE COURT: Show me where it is. I mean,
2   what you gave me, I don't see it. All right. I
3   see this, 29 levy and imposition. Okay. Let me
4   read it. Is this a different tax here?
5       MS. SCHWADERER: No. That's the convention
6   development tax, which is under 212.0305.
7       THE COURT: Let me read it. It says a
8   person or entity receiving the consideration
9   shall receive an account for and remit the tax.
10      It says a tax imposed by this article shall
11  constitute a lien on the property of the lessee
12  or the rentee of any sleeping accommodation in
13  the same manner as and shall be collectible as
14  are liens authorized and imposed by 713.67,
15  713.68 and 713.69.
16      Okay. Well, so we know how it's done. A
17  lien is imposed and you collect it pursuant to
18  713.67, 68 or 69. If I look at 713.67, 68 and
19  69, what does it say, how do you collect the
20  tax. It says it right here. It's a lien and you
21  collect it pursuant to chapter 713. Why was that
22  so hard to get out of you?
23      713.67, Liens for board, lodging and hotels
24  in favor of keepers of hotels, apartment houses.
25  Could that be right? That doesn't seem to make a

51

1   lot of is sense. The tax imposed by this article
2   shall constitute a lien on the property of the
3   lessee -- oh, on the property of the lessee.
4   Okay. So that's like if the person who rents the
5   hotel rooms doesn't pay the tax, then you can
6   impose on a lien on the property of the lessee
7   like a hotel.
8       Okay. I don't know that that provides an
9   answer. 68 -- no, no. This subsection
10  29-61.1(a)(3) talks in terms of if the renter
11  doesn't pay the tax, then you can grab the
12  renter's property to pay the tax. We are looking
13  at what remedy does a County have to collect a
14  tax properly assessed and properly billed.
15  That's what we are looking at.
16      MS. SCHWADERER: Again, Your Honor, our
17  only remedy is to go to court.
18      One thing you asked me about earlier that I
19  couldn't find about the registration obligations
20  that the defendants have. If I can direct your
21  attention to 212.18(3)(B) and pass you this.
22  It's not the part highlighted. It's just this
23  last section here, and I have a copy for opposing
24  counsel. It discusses the obligations of
25  registration that are imposed on dealers.

52

1       THE COURT: Okay. I'm appreciating the
2   fact that you have alleged that they have not
3   registered, and I also am looking at the
4   ordinance that says in the event one doesn't
5   register what is the obligation of the County.
6   Let me just read here.
7       It says for the purpose of collecting the
8   convention development tax, I'm looking at
9   29-61.2, the tax collector shall have the same
10  duties and powers of those vested in the Florida
11  Department of Revenue under Chapter 212.
12      MS. SCHWADERER: Yes.
13      THE COURT: So what are the powers of the
14  Florida Department of Revenue under Chapter 212
15  in collecting taxes assessed and due and
16  payable?
17      MS. SCHWADERER: Again, Your Honor, going
18  to court under 212.151.
19      THE COURT: That's the only remedy?
20      MR. HERNANDEZ: No, Your Honor, it's not
21  the only remedy. I just want to explain there's
22  another statute, which is 212.15.
23      THE COURT: What does that say?
24      MR. HERNANDEZ: Your Honor, it gives a
25  bunch of other similar remedies such as liening

53

1  their properties. That's one of the options we
2  have. The other option we have is going to
3  court. That's the accurate answer. I'm sorry,
4  Your Honor. I apologize for that.
5      THE COURT: Thank you. Go ahead, Counsel.
6      MR. SIFF: Your Honor, I don't believe they
7  have that option. Under the ordinance that we
8  read, which is 29-51.1, it sets forth scenarios
9  where the person collecting the taxes, in this
10  case, allegedly the defendants in this case,
11  where they don't have available records, where
12  the records are too voluminous or finally where
13  we fail or refuse to make the records available,
14  as part of the audit process which they've
15  already instituted against our clients, what it
16  says there, it shall be -- it doesn't say it may
17  be the duty. It shall be the duty of the County
18  to make an assessment from an estimate based upon
19  the information.
20      There's no allegation in this complaint
21  that they've ever made that assessment. And
22  frankly, I'll represent to Your Honor, with
23  respect to my client, no assessment has ever been
24  sent by the County of what the taxes are that are
25  allegedly owed from the County.

54

1      Now they continue to rely upon 212.151 for
2  the authority that they can bring a lawsuit or
3  that they have to bring a lawsuit. The fact of
4  the matter is that all that statute says is that
5  if they bring a lawsuit, it's going to be in
6  circuit court. We are not contesting that.
7      Our point is two-fold. One -- actually,
8  several-fold. One, under the exhaustive remedies
9  argument that we make, they ought to go through
10  the process. They have to go through the process
11  where they either give us an opportunity to give
12  them our books and records where they ask for it
13  as they've already commenced with some of these
14  defendants, that audit process results in an
15  assessment. Either we cooperate with the
16  process, we provide the books and records, they
17  get the information and they make the assessment
18  and we go from there. Or we don't provide them
19  the books and records and they make an estimate
20  based on whatever information they make an
21  assessment and we go from that point. They
22  haven't done that.
23      In addition, Your Honor, the other issue
24  and the issue of primary jurisdiction that we
25  raise in our motion relates to the Department of

55

1  Revenue who has these same issues. And just so
2  we are clear, the taxes that the County are
3  trying to collect, the right that they have the
4  ability to impose those taxes and ultimately
5  collect those taxes comes from the Department of
6  Revenue, and it's an enabling statute.
7      Those taxes are piggybacked to the hotel
8  tax that's imposed by the Department of Revenue.
9  The Department of Revenue has a process, which,
10  frankly, they have undertaken with at least one
11  of my clients, Expedia, where they are trying to
12  determine what, if any, tax is owed under the
13  same statutory language which is any party who
14  rents, leases or lets a hotel room or other
15  occupancy for less than six months.
16      Our position is that the Department of
17  Revenue should undertake that process as they are
18  doing, and this court should not touch this
19  litigation and proceed with this litigation until
20  the Department of Revenue reaches a conclusion
21  based upon its audit process as to whether or not
22  this tax applies.
23      THE COURT: Let me ask you, I don't know
24  from what the Department of Revenue is doing, but
25  if the statute permits the County to pass an

56

1  ordinance and try to assess and collect a tax,
2  I'm not, frankly, understanding why you believe
3  the County should be barred from court if they
4  are otherwise entitled to be here simply because
5  another taxing entity is reviewing something
6  similar.
7      MR. SIFF: The principle of primary
8  jurisdiction is really for the court's
9  convenience, and what makes sense in the overall
10  sense of this case. And the reason why it makes
11  sense for the Department of Revenue to handle
12  this issue, as they are doing it, is so that
13  these defendants on this side of the table know
14  what their obligation is under these taxes that
15  are imposed, not only by the Department of
16  Revenue, not only by Miami-Dade County, but by 37
17  other counties in the State of Florida.
18      THE COURT: Question: Would Dade County be
19  bound by whatever determination the Department of
20  Revenue makes on the collection of its taxes or
21  could they say, nonetheless, you know what, we
22  don't believe that to be the case, we think we
23  have our own ordinance, and we are proceeding.
24  We are not bound by it.
25      If you told me they were bound by it, that

**57**

1  would be something else.  If they are not bound
2  by it, I'm not quite certain why we should wait
3  to see what they do.
4      MR. SIFF:  We believe that they are bound
5  by it because that process could ultimately
6  result in the promulgation of a rule.  And even
7  the County concedes, I believe, that if a rule is
8  promulgated -- and the way that process is
9  undertaken is first there's an audit, then
10  there's a policy statement by the Department of
11  Revenue.  And ultimately there may or may not be
12  a rule promulgated.  Certainly if a rule is
13  promulgated, they are bound.
14      As a practical matter, if the Department of
15  Revenue, which is the enabling statute which
16  allows the County to exercise and impose these
17  taxes, reaches a conclusion that our clients
18  aren't subject to this tax, clearly the County is
19  going to follow that decision.  But even if we
20  are not --
21      THE COURT:  I'm getting a negative over
22  here from the County.
23      MR. SIFF:  Even if we are not going to wait
24  for the County -- I mean, for the Department of
25  Revenue, at a minimum, as Your Honor has pointed

**58**

1  out with your question, they need to go through
2  their own process with each of these defendants
3  and assess a tax and go through the audit process
4  with each of these defendants before they can go
5  to court.
6      THE COURT:  Let me take a look at Chapter
7  212 for a second.
8      MS. SCHWADERER:  Your Honor, can I respond
9  to the question of whether we are bound by the
10  DOR's audit.
11      THE COURT:  I wouldn't think you are, but
12  do you think you are bound?
13      MS. SCHWADERER:  No.
14      THE COURT:  I don't know why you would
15  necessarily be bound, but let me just take a look
16  at Chapter 212 because the last statute you gave
17  me or ordinance --
18      MS. SCHWADERER:  One last thing, Your
19  Honor.  Your Honor, although defendants say that
20  the DOR is in the process of auditing at least
21  one of them, and they will eventually promulgate
22  a rule, we actually have an affidavit from the
23  DOR that says they are not in the process of
24  promulgating a rule, proposing a rule and have no
25  plans to in the future.

**59**

1      MR. SIFF:  Your Honor, if I may respond
2  briefly to this affidavit which by the way I
3  received for the first time yesterday at 2:00.
4      THE COURT:  I won't consider an affidavit,
5  and I won't consider your representation either.
6      MR. SIFF:  Just so the record is clear,
7  this affidavit that's dated January 8th of 2007
8  was sent to my office for the first time
9  yesterday at 2:00.  And that's just not right.
10  If they are going to rely upon it here, they
11  ought to send it to us.
12      THE COURT:  You are right.  That's not
13  right, and I can't take your representations
14  either.
15      I'm looking at Chapter 212 because section
16  29-61.2 gives the tax collector all those rights
17  that the department has under Chapter 212.  And
18  if we take a look at Chapter 212, let's see if
19  there's anything in here.  212.15.
20      MR. HERNANDEZ:  Right.  That's the statute
21  that we pointed out to you before, Your Honor.
22      THE COURT:  Let's take a look.
23      MR. HERNANDEZ:  Which is the one that sets
24  forth --
25      THE COURT:  Counsel, let me just take a

**60**

1  look.
2      MR. HERNANDEZ:  Sure.  Absolutely, Your
3  Honor.  It's under four.
4      THE COURT:  You still won't stop
5      MR. HERNANDEZ:  Just trying to help you.
6      THE COURT:  Well, you are not.  Okay.
7  212.15, I was looking at 212.151.  212.15 says
8  the taxes imposed by this chapter shall be --
9  number 2, persons who with intent to unlawfully
10  deprive or defraud the state or fails to remit
11  the taxes is guilty of theft.
12      Let's see number four.  All taxes collected
13  under this chapter shall be remitted to the
14  department, and I guess we should insert the word
15  the County.  In addition to criminal sanctions,
16  the department, slash, County is empowered and
17  shall -- and it shall be its duty when any tax
18  becomes delinquent or is otherwise in jeopardy
19  under this chapter to issue a warrant for the
20  full amount of the tax due or estimated to be due
21  with the interest, penalties, cost of collection,
22  directed to all and singular the sheriffs of the
23  state, and mail the warrant to the clerk of the
24  circuit court of the county where any property of
25  the taxpayer is located.  Upon receipt of the

**61**

1  warrant, the clerk of the circuit court shall
2  record it. And thereupon the amount of the
3  warrant shall become a lien on any real or
4  personal property of the taxpayer in the same
5  manner as a recorded judgment. The department
6  may issue a tax execution to enforce the
7  collection of taxes imposed by this chapter and
8  deliver it to any sheriff.
9      The sheriff shall thereupon proceed in the
10 same manner as prescribed by law for executions
11 and shall be entitled to the same fees, et
12 cetera. The department may also have a writ of
13 garnishment to subject any indebtedness due to a
14 delinquent dealer. Upon payment of the
15 execution, warrant, judgment or garnishment, the
16 department shall satisfy the lien.
17     Goodness. Why do you want to go to court?
18 You concede all you have to do is bill them, and
19 if it's not paid, you have all these remedies
20 without going to court. Why would you want to go
21 to court?
22     MS. SCHWADERER: Your Honor, since this
23 would be a warrant directed to the sheriffs of
24 the state, if the defendants are in Washington
25 state or Texas or elsewhere around the country,

**62**

1  this does not provide us with the remedy.
2      And just the next section, 212.151, says
3  that all suits brought hereafter by the
4  department. If the only remedy of the department
5  was to put a lien or issue a warrant, this
6  section wouldn't exist.
7      THE COURT: I don't know that. I'm just
8  saying that you have all the remedies to collect
9  a money judgment available to you without
10 bringing the lawsuit. What are you suing for in
11 Count I?
12     MS. SCHWADERER: Your Honor, we are suing
13 for taxes they have collected but not remitted.
14 These defendant as out-of-state companies have no
15 property in the state.
16     THE COURT: If you got a judgment, I guess
17 you could domesticate it in some other state and
18 go after them. To the extent the hotels owe
19 them money, I guess you could put a garnishment
20 on them and say, look, don't pay dot-com over
21 here, pay us. I'm just -- there seems to be a
22 whole source of remedies available to you.
23     MS. SCHWADERER: Your Honor, we agree with
24 you that these are options available to us, but
25 we also --

**63**

1      THE COURT: This is the first time that you
2  are agreeing. Half an hour ago you were telling
3  me you only had a lawsuit.
4      MS. SCHWADERER: Well, we have options
5  available to us, but if defendants won't --
6      THE COURT: Okay.
7      MS. SCHWADERER: If defendants --
8      THE COURT: Do you get my point? I've been
9  asking you for the last half hour, what are your
10 remedies, and now I just found them and read
11 them.
12     MS. SCHWADERER: This is an option. But in
13 the end, if defendants -- if we go through these
14 other options and defendants still don't pay, our
15 only option is to go to court.
16     THE COURT: Well, maybe it's their option
17 to go to court. Maybe if they want to avoid the
18 effects of your process they have to come to
19 court. I don't know, but all right.
20 Nonetheless, that's Count I.
21     Count II is violation of the Florida
22 Deceptive Unfair Practices. They've alleged
23 that, look, you don't have standing, you are not
24 a consumer. What is your position?
25     MS. SCHWADERER: Our position is that the

**64**

1  Florida legislature changed the FDUTPA statute in
2  2001 from the word consumer to the word person in
3  order to make it broader. And there are cases on
4  point that we've cited in our response that say
5  nonconsumers can maintain actions.
6      THE COURT: Read me the portion of the
7  statute that says consumer -- I mean, person
8  rather than consumer.
9      MR. HERNANDEZ: Here you go, Your Honor.
10     THE COURT: Thank you, counsel. I'm
11 looking at Florida Statute 501.211.
12     MR. HERNANDEZ: Under two
13     MS. SCHWADERER: Under one is for the
14 declaratory and injunctive relief, and it says
15 anyone aggrieved by a violation of this part.
16     THE COURT: This says with regard to any
17 other remedy or relief to which a person is
18 entitled, anyone aggrieved by the violation may
19 bring an action for declaratory judgment. In any
20 action brought by a person who has suffered a
21 loss as a result of a violation of this part,
22 such person may recover actual damages plus
23 attorney's fees in any action brought under the
24 section.
25     All right. Number one is, I guess, you are

65

1  saying that you are wanting the Court to
2  interpret the use of the word person meaning
3  Metropolitan Dade County, which is obviously not
4  a person. It is an entity. But it doesn't say
5  person or entity. It says person. But you are
6  believing that that person means something other
7  than a live person, right?
8      MS. SCHWADERER: The defendants haven't
9  cited to any cases that preclude the County --
10      THE COURT: I'm just reading the plain
11  words of the statute.
12      MS. SCHWADERER: Yes, Your Honor.
13      THE COURT: It says person. I really
14  wouldn't normally think of the County as a
15  person. I think of it as a governmental entity.
16  It doesn't seem like a person to me. But maybe
17  the Court would say, well, it is a person. But
18  the loss you suffered is the loss of the taxes,
19  right?
20      MR. HERNANDEZ: Yes.
21      MS. SCHWADERER: Yes.
22      THE COURT: That's the same. So would you
23  have this violation of the Florida Deceptive and
24  Unfair Trade Practices against any entity that
25  ever failed to pay you taxes because you would

66

1  say, well, we are a person, they owe us taxes,
2  and they are not paying us. So, therefore, we
3  get to sue them under this act?
4      MR. HERNANDEZ: Yes.
5      MS. SCHWADERER: Your Honor, in this case
6  we have alleged that they have deceived consumers
7  about the amount of taxes that they are remitting
8  to us.
9      THE COURT: They've deceived consumers, not
10  you, but other people.
11      MR. HERNANDEZ: And us.
12      MS. SCHWADERER: And us.
13      THE COURT: This may be -- if there are
14  consumers who have been billed to pay taxes that
15  were not remitted, it may be a very good class
16  action lawsuit by any such person against them to
17  get back the money. But I'm just not certain the
18  County is the proper person.
19      Persons who may well have paid them may
20  well be aggrieved. And, again, it could be a
21  class action lawsuit against them. I'm just not,
22  frankly, seeing the County in on it. But let's
23  take a look at breach of fiduciary duty. Did you
24  want to say something? Make your appearance.
25      MR. LEEN: My name is Craig Leen, Assistant

67

1  County Attorney. They are collecting this tax as
2  our agent. They are collecting the money and
3  giving it to us, and there's a problem --
4  Miami-Dade County has a problem, and it is
5  aggrieved if they go out and collect these taxes
6  and tell consumers that this is a tax, we may
7  potentially be liable as well if we don't act to
8  prevent it.
9      THE COURT: What is there in the law that
10  makes them your agents? Read to me the law that
11  says all the hotels around are basically your
12  agents.
13      MS. SCHWADERER: Your Honor, we have three
14  cases on point that say one who collects taxes in
15  the name of a taxing authority -- in the name of
16  the taxing authority is that taxing authority's
17  agent when they are collecting those taxes.
18      THE COURT: Any involving the hotel tax and
19  any of the taxes you are suing on?
20      MR. HERNANDEZ: Two points, Your Honor.
21      THE COURT: That's my question.
22      MS. SCHWADERER: No, they are not --
23      MR. HERNANDEZ: Yes.
24      THE COURT: Get together folks
25      MS. SCHWADERER: They are not involving the

68

1  hotel tax.
2      MR. HERNANDEZ: I'm sorry. Go ahead.
3      MS. SCHWADERER: There really aren't many
4  cases interpreting this.
5      THE COURT: I'm not faulting you. I'm just
6  asking you whether or not any of the cases you
7  are now giving to me deal with Chapter 212 or the
8  county ordinance that identifies the various
9  hotels or lessors as agents of the County.
10  That's what I'm looking for.
11      MS. SCHWADERER: Well, this deals with
12  sales tax, which is also under 212, and says that
13  taxes -- even if a defendant is ultimately not
14  liable for taxes, taxes that it collected from
15  consumers are funds of that entity and the
16  defendants have violated their duties.
17      THE COURT: Let me read it. You are giving
18  me the case of Blackshears II Aluminum, Inc.
19  versus Department of Revenue found at 641 So.2d
20  928. Let me take a look.
21      Here the Department of Revenue ordered them
22  to do something.
23      MS. SCHWADERER: Because it was a state
24  sales tax.
25      THE COURT: Blackshear appeals from a final

69

1  order of the Department of Revenue which required
2  it to pay to the state over so and so taxes.
3  Apparently they collected taxes that weren't due
4  on nontaxable transactions.
5      Okay. I asked you do you have law that
6  says that persons that collect taxes are agents,
7  and this case says clearly that whenever so and
8  so collects funds for customers as taxes, it does
9  so as the State's agent. It has no right to
10  retain the money, whether wrongfully or
11  rightfully collected and that they are State
12  funds.
13      MS. SCHWADERER: Your Honor, we have
14  another case on point.
15      THE COURT: Let me read one at a time.
16      Let me ask you under this principle of
17  persons who ostensibly collect taxes on behalf of
18  the County are agents of the County, and if they
19  improperly collect taxes and don't remit them or
20  give them back to the customers, they have to
21  give them to the County, right? Which count is
22  that in your complaint?
23      MS. SCHWADERER: The breach of agency and
24  fiduciary duty is Count III.
25      THE COURT: Okay. I see that. Thank you.

70

1  Yes, sir.
2      MR. SIFF: Your Honor, assuming that, and
3  the law is pretty clear that a dealer or retailor
4  who collects a tax is collecting on behalf of the
5  State, it doesn't give rise to a fiduciary duty.
6  There's not a fiduciary duty that goes with every
7  agency relationship. There has to be some
8  relationship of trust. The attorney/client
9  relationship is a fiduciary duty. The
10  banker/client relationship is a fiduciary duty.
11      THE COURT: Aside from -- assume that no
12  fiduciary relationship occurred, but it was a
13  matter of you all were collecting on their behalf
14  and you were either collecting more than you were
15  supposed to or -- and so they are saying hey,
16  look, if you were collecting for us, even though
17  it was improper, either give it back to us or
18  give it back to the customers, but you can't keep
19  it. Why do you feel under those circumstances
20  Count III does not state a cause of action?
21      MR. SIFF: Your Honor, because the count,
22  as stated, is a breach of fiduciary duty. While
23  the allegations in the complaint, particularly
24  paragraph three of the complaint certainly --
25      THE COURT: Count III?

71

1      MR. SIFF: I'm sorry. Paragraph three of
2  the complaint alleges that the defendants
3  collectively are collecting more taxes than they
4  are remitting to the State. It's a little bit
5  ironic because the County is telling us that we
6  haven't remitted any taxes to them, and we
7  haven't paid any taxes because we haven't
8  registered.
9      What's really happening here is just
10  factually, Your Honor, my clients, at least, and
11  I can't speak for all the other defendants, but
12  my clients charge the consumer an amount of the
13  anticipated tax that is going to be paid by the
14  hotel. The hotel, when the consumer booking a
15  room through Orbits, for example, the consumer
16  goes to the hotel, checks into the hotel, doesn't
17  have to pay for the room because under that mode
18  it's already been paid, the County collects the
19  taxes from the hotel. We are not in the business
20  of collecting taxes.
21      THE COURT: How about if you overestimate
22  the amount of taxes that are due on the hotel
23  room and you've already collected that from the
24  perspective customer; where does that go? That's
25  the money they seem to be wanting you to remit.

72

1      MR. SIFF: If we collect the taxes which we
2  don't --
3      THE COURT: I thought you said you do
4  collect.
5      MR. SIFF: No. We charge the customer the
6  anticipated amount of taxes that are going to be
7  collected by the hotel. The hotel actually
8  collects the taxes.
9      THE COURT: All right.
10      MR. SIFF: If we collected taxes and we
11  didn't remit those taxes but kept them for our
12  own benefit, then there would be a claim.
13      THE COURT: That's what they are claiming.
14      MS. SCHWADERER: Exactly.
15      MR. SIFF: That's what they are claiming at
16  least with respect to that one allegation.
17      THE COURT: Yes, sir. At least to that one
18  allegation, if they are saying you, in whatever
19  you are doing, are collecting a tax, either you
20  have no authority to collect a tax or you are
21  collecting more than you ought to collect and you
22  are keeping it, I guess the question is, does the
23  County have to make an assessment of that amount
24  and then bill you and then you have to come back
25  and fight it administratively or do you go

73

1    immediately to court?
2        MR. SIFF: It goes back to the same
3    original issue. In order for the County to take
4    the position that there's been a tax collected by
5    us that we have not remitted and we are not
6    entitled to keep, if that's their allegation,
7    they have to assess that. They have to exhaust
8    that administrative process, and that hasn't been
9    done.
10       THE COURT: Let's go back to the
11   ordinance.
12       MS. SCHWADERER: Your Honor, if I can make
13   two points just quickly before we get to the
14   ordinance. To the extent that defendants are
15   making factual claims that go outside of what
16   we've alleged, this is improper on a motion to
17   dismiss. And furthermore, for an agency and
18   fiduciary duty claim, that's a common law claim.
19   It doesn't have any requirements of us assessing
20   someone before we would determine that they
21   breached their duty.
22       THE COURT: A fiduciary claim arises from a
23   situation of special relationship of trust and
24   confidence. I don't think every person who is an
25   agent is necessarily a fiduciary. They are just

74

1    an agent. They have an obligation, but it
2    doesn't give rise necessarily to a fiduciary
3    obligation as opposed to an otherwise duty. I'm
4    not saying it doesn't give rise to a duty, but it
5    doesn't necessarily rise to the level of a
6    fiduciary.
7        Let me look again under the ordinance
8    29-61. In the event any lessor charged herein
9    fails or refuses to make his records available
10   for inspection, fails or refuses to register,
11   fails to make a report or makes a grossly
12   inaccurate report -- doesn't really look like a
13   tax as opposed to a recoupment of sorts, meaning
14   that, look, whether you -- let's assume -- I
15   guess they are saying assume for the moment that
16   you were not entitled to collect a tax at all.
17   If you ostensibly collected a tax on our behalf,
18   you owe it to us. You can't keep it. You can't
19   represent to the public that you can collect a
20   tax whether or not it's owed or not.
21       MS. SCHWADERER: Exactly, Your Honor.
22       THE COURT: But in this instance, the case
23   that you cited me is the taxing authority
24   basically made a judgment that there was a sum
25   certain due that was collected ostensibly on

75

1    their behalf and retained, neither given over to
2    them nor returned to the customer. Is that what
3    you had in Count III?
4        I don't really see it as a breach of
5    fiduciary duty, but I do see it as a breach of
6    the duty arising out of general agency.
7        You want to show me another case?
8        MS. SCHWADERER: I do want to show you
9    another case.
10       THE COURT: What is this?
11       MS. SCHWADERER: It was a criminal case, so
12   there wasn't ever an assessment made.
13       THE COURT: For the record, you are showing
14   me styled Cash versus State, 628 So.2d 1100 which
15   is a Florida Supreme Court case. Tell me about
16   this case. Does it say there's a fiduciary
17   duty?
18       MS. SCHWADERER: This case talks about the
19   taxpayer or the person who didn't pay taxes,
20   collected taxes from consumers on the
21   representation that they were owed to the state
22   and never remitted them.
23       THE COURT: Okay.
24       MS. SCHWADERER: And the Court clearly
25   held -- so this is a criminal case, so there was

76

1    no assessment made before a determination of
2    agency relationship of agent principal, but the
3    Court clearly held that the relationship with the
4    state, who is the taxing authority, was that of
5    an agent and principal.
6        THE COURT: I'm not -- I'm buying that.
7    I'm just not seeing it as a fiduciary, but I see
8    what you have here, and it would appear to the
9    extent that you could allege and prove that they
10   collected taxes, that they did not remit or were
11   not remitted by others and they kept -- they
12   shouldn't do that. Whether or not it subjects
13   them to criminal prosecution or civil, it sounds
14   like you may have something here.
15       MS. SCHWADERER: Thank you, Your Honor.
16   One last point on the point of fiduciary
17   relationship. Because this is a self --
18   defendants have an obligation to report to us
19   that we don't -- there is a relationship of
20   trust, that we trust that they will report to us
21   correctly.
22       THE COURT: Okay. Thank you.
23       MS. SCHWADERER: Thank you.
24       THE COURT: Unjust enrichment, what is that
25   one and the same with Count III?

77

1    MS. SCHWADERER: It's Count IV, and it's
2   plead in the alternative, Your Honor.
3    THE COURT: You are right, Count IV.
4   Equitable accounting, what is that?
5    MS. SCHWADERER: Count V.
6    THE COURT: Yes, ma'am.
7    MS. SCHWADERER: What is it?
8    THE COURT: Why do you need an equitable
9   accounting?
10    MS. SCHWADERER: Well, since the defendants
11   have never remitted any documents to us, any
12   returns, any information about how much they are
13   collecting in tourist taxes in our names, in the
14   alternative we've asked the Court for an
15   equitable accounting.
16    THE COURT: Let's see if that's what you
17   plead here. What are the elements of equitable
18   accounting? Help me with that. Or maybe I
19   should turn to the defendant now. Why do you
20   believe this count for equitable accounting
21   doesn't lie
22    MR. SIFF: Two reasons. What they are
23   attempting to do in an equitable accounting claim
24   through the judicial system is exactly what they
25   are doing through the audit system. That's first

78

1   and foremost. They are trying to get the
2   information that they can determine what, if any,
3   tax has been collected, is owed and what hasn't
4   been paid. That's exactly what they are doing in
5   the audit process. That's what they should be
6   doing.
7    Equitable accounting lies when there is no
8   remedy at law that would allow them to recover
9   damages. They've asserted those claims. I don't
10   believe that they can pursue those claims, but
11   they've had those claims that they have
12   asserted. The equitable accounting is simply a
13   device to try to get the discovery that they are
14   trying to get through the audit process.
15    THE COURT: Okay. In your equitable
16   accounting, do you allege an inadequate remedy at
17   law?
18    MS. SCHWADERER: We plead it in the
19   alternative, and we do allege an inadequate
20   remedy at law.
21    MR. HERNANDEZ: Paragraph 104.
22    THE COURT: Let me ask you, you do have a
23   remedy at law, do you not?
24    MS. SCHWADERER: We believe these taxes are
25   owed to us, but in the event a court could

79

1   determine that defendants were not liable under
2   the statute, we wouldn't have a remedy at law,
3   but they've still collected these taxes.
4    THE COURT: I buy the argument that it's
5   wrong for persons to ostensibly collect taxes in
6   the name of the County and keep them and not
7   either pay them to the County or return them.
8   I'm just trying -- and I see your count for
9   breach of duty, you know, if they have a duty,
10   I'm just not -- I'm trying to understand what the
11   elements of this count of equitable accounting is
12   and whether or not you do have an adequate remedy
13   at law. You are suing for breach of the duty, so
14   having an adequate remedy at law, breach of duty
15   money judgment sounds like you have a remedy at
16   law that you don't need an equitable remedy.
17    Okay. The last count, injunctive relief.
18   What is this?
19    MR. LEEN: Actually, you skipped Count VI,
20   declaratory judgment.
21    THE COURT: Do I see an allegation in here
22   that you are uncertain as to your rights?
23    MR. LEEN: Your Honor, we said that there
24   is a bona fide dispute about those rights. Any
25   time someone would bring a declaratory judgment

80

1   action they would trust in their contract
2   interpretation. If there's a dispute among the
3   parties that causes doubt, there is dispute, and
4   we have plead that. And that's my understanding
5   of the elements.
6    THE COURT: Let's take a quick look.
7    MR. LEEN: I hope I'm correct.
8    THE COURT: I imagine you are.
9    MR. HERNANDEZ: If you like, I have the
10   statute right here for Your Honor.
11    THE COURT: Give me a moment. I think this
12   should be pretty easy. I don't know why you need
13   a dec action, to tell you the truth, but --
14    MS. SCHWADERER: Your Honor, here is a copy
15   of the statute.
16    THE COURT: Thank you. Just looking at
17   Trawick for a second. It says the six requisites
18   for declaratory relief are a bona fide actual
19   present and practical need for the declaration, a
20   present ascertainable or ascertainable state of
21   facts or a present controversy about the facts, a
22   power, privilege or right the party seeks relief
23   must be dependent upon the facts. And it says --
24   skipping, must be an actual present adverse
25   interest. The adverse interest must be before

**81**

1  the Court, and the declaration must not be merely
2  giving legal advice, but declaratory judgment
3  will be denied where the parties can obtain
4  complete relief in another pending civil action.
5  Facts that may occur in the future cannot be
6  determined. All right. Did you want to speak to
7  that?
8      MR. SIFF: Your Honor, just briefly. What
9  they are asking the Court to declare in the
10  declaratory judgment action is exactly what they
11  should be doing through the assessment process.
12  They are asking the Court to determine whether or
13  not the statute applies, whether or not the tax
14  applies, and then they are asking for the
15  incidental damages. It's redundant to the entire
16  claim that they've had, and it isn't a claim that
17  ought to be in the judicial system. It ought to
18  be in an administrative system.
19      MR. LEEN: Your Honor, may I say one thing
20  to the declaratory judgment?
21      THE COURT: Yes, sir.
22      MR. LEEN: Your Honor, the defendants have
23  taken the position that this entire process
24  doesn't apply to them. We have had extreme
25  difficulty receiving anything from them.

**82**

1      So the reason why we need a declaratory
2  judgment count is, say, for example, Your Honor,
3  we did do what you say, we believe we have the
4  option to bring this lawsuit, but we proceeded
5  with the audit. They've taken the position in
6  the audit so far that they are not subjected to
7  this tax because legally it doesn't apply to
8  them. We are going to the Court to ask the Court
9  to determine whether this tax applies.
10      THE COURT: Just assess them and bill them
11  and start issuing your writs. They will start
12  responding quick enough.
13      MR. LEEN: We have chosen to do this option
14  because we would like to establish this
15  throughout Miami-Dade County for all taxpayers.
16      THE COURT: I guess I have to give you some
17  rulings.
18      A couple of things. Again, having been
19  blessed with all this that I would like to return
20  to you. A couple of things came to mind, and I
21  made some copies, and I'll pass them out to you.
22      First of all, on the question of joinder or
23  misjoinder, let me give you from Florida Trial
24  Practice and Procedure section 4-10 of Trawick
25  and in particular footnote number one. Let me

**83**

1  pass that down. I told you I have a serious --
2  yes, sir.
3      MR. LEEN: I'm sorry. I didn't mean to
4  interrupt, Your Honor. I have some authority for
5  you on that issue if you would like to hear me.
6      THE COURT: What did you want to say?
7      MR. LEEN: I just wanted you to have the
8  case that we brought because Judge Simons
9  mentioned this issue and we did research it.
10      THE COURT: Which case is that?
11      MR. LEEN: Carbonell versus American
12  International Pictures.
13      THE COURT: What cite?
14      MR. LEEN: 313 So.2d 417 from the Third
15  District.
16      THE COURT: What does it say?
17      MR. LEEN: It's a case where a number of
18  plaintiffs brought a claim who distributed
19  movies, motion pictures. Each sued a movie
20  theatre under separate contracts, all of which
21  were similar, and the language in there said that
22  the opposing side argued, even though they were
23  all independent sort of fraud actions or breach
24  of contract actions, the other side argued that
25  this was either misjoinder or they called it

**84**

1  multifariousness.
2      And the Court first determined that you
3  cannot dismiss the complaint for misjoinder,
4  because of the misjoinder rule. And then it said
5  the case shouldn't be severed, and I highlighted
6  the relevant action.
7      THE COURT: I appreciate that. And I think
8  you'll find something similar in footnote number
9  one under the material I just provided to you,
10  but do take a look at it. You can see that it
11  cites a more recent case of Alanco, A-L-A-N-C-O,
12  versus Bystrom, our former tax collector, found
13  at 555 So.2d 217. This was a case before Judge
14  Levy where you had a good number of condominium
15  owners all banded together as plaintiffs suing
16  the tax collector, and Judge Levy said, hey, what
17  am I handling all these cases for? File your own
18  suits. I'm not handling all these together. And
19  he came up with a procedure, which Trawick says,
20  you know what, the only error was in dismissing
21  the action and not allowing it to proceed in the
22  name of one plaintiff as opposed to all of them,
23  but all right. So that's that.
24      There's some more law that I want to give
25  to you, if I might, please. I get buried with

85

1  all this paper. Okay. I can't find it. Let me
2  look again. It was under Florida Trial Practice
3  and Procedure I think. If you look up this case
4  under West Law and -- wait a second. No, no. I
5  tell you what. I have it right here. Here it
6  is.
7       Frankly, it was under West Florida Practice
8  Series TM Civil Procedure talking about joinder,
9  misjoinder, dropping parties, and I'll give you a
10 copy of this right now. They talk about
11 misjoinder. That's where you have multiple
12 claimants where you have a single respondent or
13 multiple respondents with citations there. Let
14 me just give you all respective copies so you see
15 where I'm coming from. Pass it down. More
16 copies than you need.
17      MR. HERNANDEZ: Thank you, Your Honor.
18      MR. SIFF: Thank you, Your Honor.
19      THE COURT: If you look to the back of this
20 package here that I put together, you'll see
21 under Four Florida Practice Civil Procedure Rule
22 1.250 it discusses it. That's the rule, and it
23 seems to be uniformly that the rule and the cases
24 seem to say that you ought not to dismiss the
25 entire action for misjoinder.

86

1       I'm hard pressed, however, to understand
2  how this particular lawsuit can proceed with one
3  plaintiff, 35 defendants, in which the discovery
4  on this would entail the multiple depositions of
5  persons that most of the defendants wouldn't have
6  any interest in attending, the propounding of
7  interrogatories, the requests for productions,
8  all of which should be supplied to one another,
9  the attendance at hearings, et cetera.
10      Reading the footnote in Trawick footnote
11 number one under section 4-10, he seems to
12 indicate that perhaps the only error that Judge
13 Levy made in the Alanco case was in dismissing
14 the entire action rather than simply giving the
15 plaintiff the opportunity to proceed with an
16 amended complaint picking one defendant to go
17 with, and if he wants to sue the other
18 defendants, sue the other defendants. And
19 whether or not they should be consolidated for
20 any purpose, I don't really know why, frankly,
21 but this case, as it is, seems to be as
22 unmanageable in the fashion which it is
23 presented.
24      I don't know that severance is going to be
25 the solution. Were the Court to sever each of

87

1  the claims, then I guess the whole file would be
2  somehow divided into multiple defendants each of
3  which would be propounding interrogatories to the
4  plaintiff. I am not certain whether or not they
5  would have to propound interrogatories or serve
6  the same interrogatories on the codefendants,
7  whether or not depositions are taken that
8  everyone have to attend. It doesn't seem like a
9  workable thing.
10      At any rate, here we go, folks. On the
11 motion on the amended complaint, the Court is
12 going to grant the motion to dismiss Count I on
13 the basis that it's failed to allege exhaustion
14 of remedies. It fails to allege that the amount
15 of taxes has been assessed and billed and that
16 there is an administrative remedy to the
17 collection of those taxes.
18      The Court grants the motion on Count II.
19 I'm not believing the County is a proper party to
20 bring the cause of action under the violation of
21 the Florida Deceptive and Unfair Trade
22 Practices.
23      Count III I believe is subject to
24 amendment. I do believe that they can maintain a
25 cause of action in Count III for breach of the

88

1  agency duty to recover the funds that might have
2  been collected that were neither paid over to the
3  County nor returned to the customer, if any. But
4  that should be replead in a fashion that
5  eliminates the fiduciary duty aspect of it.
6       The Court grants the motion to dismiss
7  Count IV, the unjust enrichment. I don't believe
8  the County has standing to bring that, and also
9  the Court will grant the motion on Count V, the
10 equitable accounting. I think that's covered in
11 what will be the amended Count III.
12      So to recoup, the Court is granting the
13 motion on Count I on the argument that this Court
14 is not the tax assessor, it's not the collector.
15 It's not been assessed. It's not been billed.
16 There are administrative procedures, and this
17 action is premature on that aspect.
18      Again, Count II, the County does not have
19 standing.
20      Count III I think can state a cause of
21 action. Has to be replead.
22      Count IV is out.
23      Count V is out. The dec action is out as
24 well because there is an adequate remedy which is
25 the collection of the taxes in the regular course

89

1   of affairs.
2       In addition, I am going to order that the
3   County pick one defendant, whichever defendant
4   they want in this case and proceed against that
5   defendant. And if they have claims against any
6   of the other defendants, they are welcomed to
7   file lawsuits against them that will not be a
8   part of this lawsuit.
9       I am not dismissing the action for
10  misjoinder. I'm permitting it to remain active
11  against whichever defendant the County chooses to
12  proceed against. It will have 20 days to amend
13  to drop all parties with the exception of one.
14      Again, I'm not dismissing it. And that it
15  may replead Count III as the viable case.
16      This may be something you want to take up
17  on appeal. If you want to, that's great. Tell
18  me how you want to handle it, and that's fine by
19  me.
20      So any questions on the phone here?
21      MR. MARDENBOROUGH: This is Hal
22  Mardenborough up in Tallahassee. The question I
23  have is obviously most of us have sat back
24  quietly while these issues were dealt with over
25  the last couple of hours. I know I had written

90

1   to the Court and pointed out that I had adopted
2   the same arguments that were being made by those
3   moving parties. I just want to make clear that
4   your rulings are going to apply as to all
5   defendants and not just the OTC defendant.
6       THE COURT: I think it applies to those
7   defendants who have made motions. If you all
8   have made the motions, then I think it applies.
9   If you haven't, I think probably in short order,
10  unless they choose to appeal this, in which they
11  are more than welcome to, then the County is
12  going to make a selection as to which of the
13  named defendant they wish to proceed on.
14      If you are not one of them, then you are
15  not going to be in the lawsuit anymore. They
16  may choose to bring a lawsuit against you, and
17  you may have the obligation to raise whatever
18  similar arguments there are in whoever's division
19  they fall into.
20      So if you have a motion pending and -- do
21  you have a motion scheduled?
22      MR. MARDENBOROUGH: No, Your Honor. I
23  never did make formal motions to adopt theirs. I
24  just assumed given their arguments would apply
25  across the board to every defendant, I figured

91

1   that an order would apply to everyone.
2       THE COURT: You know what, it's likely that
3   they will, but I don't normally reach out to rule
4   on motions that are not presented to me, so I'm
5   only ruling on the motions that are before me.
6   I'm giving the plaintiff the opportunity to
7   identify the defendant to keep this action alive,
8   not to dismiss it, and to proceed against
9   whichever named defendant it chooses to proceed
10  against on a replead Count III. The other ones
11  are out.
12      Yes, sir. What did you want to say?
13      MR. SIFF: Your Honor, I wanted to clarify
14  that one point because as you went through the
15  counts you didn't mention Count VII which is the
16  injunctive relief.
17      THE COURT: That's out.
18      MR. HERNANDEZ: On the same basis as six, I
19  presume.
20      THE COURT: The dec action?
21      MR. HERNANDEZ: Yes.
22      THE COURT: Yes, sir
23      MR. LEEN: Your Honor, we would like to
24  note that we would have liked to have briefed the
25  joinder issue. It's a major decision and we

92

1   didn't have a chance to brief it.
2       MR. MARDENBOROUGH: I couldn't hear that
3       THE COURT: Counsel was chagrinned that I
4   ruled on the misjoinder issue without having done
5   it sua sponte, and having done the research, I'm
6   not quite certain what more -- if you look at the
7   Alonzo case -- there's not a lot on this, other
8   than what I gave you.
9       But it's important that you feel that you
10  had due process and a fair opportunity to respond
11  to the Court's rulings as it were. What do you
12  want?
13      MR. LEEN: We would like an opportunity to
14  replead the complaint against all the parties.
15  At that point and give us one chance because we
16  would take this up on appeal at some point, and
17  we want our allegations in there. And then they
18  can move for misjoinder, they can move to sever,
19  they can move to dismiss again.
20      THE COURT: I'll tell you what. Rather
21  than have you go through the labor of repleading
22  this against each defendant, because the way it
23  is, you can't collectively ask for $7 million
24  collectively from all these defendants in this
25  fashion. It's just not manageable. But I will

93

1  permit you to do this. Within X many days, if
2  you want to give me a memo as to why the ruling
3  on misjoinder is inappropriate, and, counsel, you
4  can respond if you like as well, or those who are
5  interested can file responsive memorandum, before
6  you amend at least Count III, I will review
7  whatever it is you give me on that matter.
8      MR. LEEN: Your Honor, I understand that.
9  This is a major ruling that you made. We would
10  want to talk to the County Attorney and the
11  County because we very well may not want to
12  proceed on a claim that's just on Count III. We
13  want to go up on appeal and have that decided and
14  then come back.
15      THE COURT: I don't want to frustrate your
16  right to appeal. I want to do everything I can
17  do so that you can take it up in short order. I
18  understand your unhappiness in the Court's sua
19  sponte ruling on the misjoinder, and I want to
20  give you the opportunity to give me whatever
21  additional law that you want. But it seems like
22  a waste of your time to prepare a second amended
23  complaint on Count III alone including all the
24  defendants if the Court is of the mind that it is
25  misjoinder.

94

1      So before you replead everything and serve
2  everybody again, why don't you just give me a
3  memorandum setting forth your position or
4  objection to the misjoinder and the order here
5  can simply say, look, this is the Court's
6  ruling. However, on the issue of misjoinder,
7  because it same up sua sponte and the County
8  wants an opportunity to brief the subject, let me
9  give you an opportunity to brief it, and I'll
10  read whatever else anyone else has. And I'll
11  give you a ruling.
12      If you persuade me otherwise, I will rule
13  it won't be misjoinder. It will be something
14  else. In any event, you can still go ahead and
15  amend as to all parties on that Count III.
16      If I feel comfortable that the ruling is
17  appropriate, then I will so advise you by ruling,
18  that, no, if you are going to amend, just do it
19  as to whichever named defendant you want to
20  proceed with. I don't know how else I can do
21  it. I'm trying to be responsive to your
22  objection.
23      MR. LEEN: I understand. The problem from
24  the County's perspective is we can't refile a
25  second amended complaint with just Count III in

95

1  there. We do not want to abandon. Usually you
2  get three chances to, and we understand maybe you
3  don't think that we have a legal claim, but we
4  would at least like a chance to amend all the
5  claims and state the elements.
6      THE COURT: Let me ask you something. How
7  would you want to amend Count I? Unless you go
8  ahead and have the County make an assessment,
9  render a bill and pursue whatever administrative
10  remedies you have, I don't believe it's
11  appropriate. On the dec action, you have an
12  adequate remedy. You can collect your taxes in
13  the regular course of affairs.
14      On the equitable accounting, I don't
15  believe that you have an adequate remedy in that
16  you are suing for the breach of the duty to
17  collect. I'm not going to repeat all this.
18      MR. LEEN: I understand.
19      THE COURT: You know what, partner, I am
20  going to give you -- how much time do you want to
21  give me a memo on the issue of misjoinder and the
22  court's management of this case? Because that's
23  what I want to give you the opportunity to do.
24      MR. LEEN: Well, we would like it to be
25  resolved before the 30 days for appeal, so we

96

1  would like --
2      THE COURT: Why don't you just -- why don't
3  you just take the order and just appeal the whole
4  thing. Look, I'm not trying to frustrate your
5  appeal. I would like to have the Third District
6  review this and look at Mr. Trawick's comments.
7      What is the best way for you, County, to
8  have the Third District look at what the Court
9  has done so that you don't waste your time in
10  litigating something that you don't feel is total
11  relief, and you wait too long to get the
12  appellate review. Is it better for me to -- if
13  you don't want to amend and you think what you've
14  done is okay, and you say, look, Judge, you
15  dismissed it, we think what we have is okay, we
16  really don't want to amend, and we are telling
17  you right now we object to this misjoinder
18  business. We don't like that either. We want to
19  take the whole thing up now. I'll say okay, let
20  me go ahead and dismiss it with prejudice. And
21  when I say with prejudice, it's not as to the
22  merits as to whatever future taxes may or may not
23  be assessed or billed.
24      MR. LEEN: We are passed taxes. We can
25  still do our --

97

1    THE COURT: It's all that. I'm just saying
2  that if you want to take it up now, and you don't
3  feel that amending it is -- you really have
4  anything meaningful to amend. If you believe the
5  Court is absolutely in error, and you would
6  rather have the appellate court basically remand
7  it to say reinstate all these causes of action
8  and trial court go ahead and try these cases with
9  these 35 defendants and do your best on figuring
10  it out. Okay. Hey, look, I live in the Third
11  District, I do what the Third District says.
12    MR. LEEN: Can we have a few days to at
13  least tell you what we plan to?
14    THE COURT: Absolutely
15    MR. HERNANDEZ: Exactly because we have to
16  go back and discuss this with the County Attorney
17  and see what you are best options are --
18    THE COURT: Not a problem
19    MR. LEEN: Why don't we submit to you a
20  position as to both what you said and the joinder
21  issue at the same time whether we want to proceed
22  or go up on appeal or not.
23    THE COURT: That's fine. I guess, look, if
24  you need a final order, because it's important
25  for you now to take it up because, number one,

98

1  you might say I don't like this misjoinder
2  business, I don't care what he did with the other
3  counts, I know that's wrong, I don't like it, and
4  I would rather take it up now than file 35 other
5  lawsuits and figure out where it goes. Okay.
6  Take it up.
7    Or if you are saying, look, you know what,
8  I think these counts are well plead, and I
9  frankly don't want to make any amendment to it
10  because I like the way it's plead and I'm not
11  going to amend it. So, look, don't give us leave
12  to amend, we'll just take it up and have the
13  appellate court look at it the way it is. And
14  you know what? That's fine too.
15    So either decide that you want me to make
16  it final so that you can appeal it, or go ahead
17  and comply with the order with leave to amend
18  Do one or the other, and I'll give you whatever
19  period of time you think you need to make that
20  judgment.
21    MR. LEEN: How much time?
22    MR. HERNANDEZ: 30 days.
23    THE COURT: Okay.
24    MR. LEEN: Can we have until Monday?
25    THE COURT: Not a problem.

99

1    MR. MARDENBOROUGH: Your Honor, this is Hal
2  Mardenborough again up in Tallahassee. As I'm
3  listening to this, I guess what strikes me is you
4  are talking about making this final partially.
5  There's going to be an order that would dismiss
6  counts as to the moving defendants, but I guess
7  to the extent the Court is going to make a
8  decision about whether there's misjoinder, that
9  obviously effects all the defendants.
10    THE COURT: Yes, sir.
11    MR. MARDENBOROUGH: In the mean time while
12  the County is trying to figure out what they want
13  to do --
14    THE COURT: Yes, sir
15    MR. MARDENBOROUGH: Would it bother the
16  Court if those of us who had not previously moved
17  simply filed motions adopting the same motion?
18    THE COURT: Sure. Go ahead and do it.
19    MR. MARDENBOROUGH: That way we can at
20  least have all the merits done. And if there's
21  an appeal, we will all be on the same page
22    MS. SCHWADERER: Your Honor, some of these
23  defendants including Mr. Mardenborough's client
24  have already answered the complaint.
25    THE COURT: If you answered the complaint,

100

1  then I guess there is an appropriate motion
2  perhaps under the rules to file. Whether it's --
3  if you've answered it, it doesn't seem likely
4  that its a motion to dismiss. It may well be a
5  motion for judgment on the pleadings. It could
6  well be a motion for summary judgment. It could
7  be any appropriate motion in light of whatever
8  particular pleadings stage you are in.
9    But if you feel obliged to file that, I
10  wouldn't say don't do it. But right now it seems
11  the way it is is this: Unless the Third District
12  directs me otherwise, I'm going to direct the
13  County to pick which defendant it wants to
14  proceed with in this lawsuit without prejudice to
15  their pursuing similar claims, if any, against
16  other defendants.
17    Again, I am not dismissing the action. It
18  remains pending. So they have the choice either
19  to file an amended complaint selecting one
20  defendant and repleading Count III or to advise
21  me, Judge, you know what, we are really unhappy
22  with your ruling we would rather have it reviewed
23  by the Third District now, so under these
24  circumstances, you know what, go ahead and make
25  it final, and we don't intend to amend, and we

101

1  are not going to separate it out either or we are
2  not going to elect which one we want to proceed
3  with.
4      And I would say under those circumstances,
5  if that's the County's position, then I'll go
6  ahead and dismiss the entire matter. And, again,
7  it would be without prejudice to the County
8  pursuing post administrative remedies, whatever
9  options they have. It's just premature at this
10 time. Does that work for you, County?
11     MR. LEEN: We do object to the ruling, but
12 thank you, Your Honor.
13     MR. HERNANDEZ: Thank you for your time.
14     MS. SCHWADERER: Thank you.
15     MR. HERNANDEZ: We really appreciate it.
16     MR. SIFF: We do appreciate it.
17     THE COURT: Anything else from you on the
18 phone?
19     MR. MARDENBOROUGH: No Your Honor.
20     THE COURT: Good-bye.
21     (Discussion off the record.)
22     THE COURT: Oh, is everyone here? I'm
23 sorry they are off the phone. The material that
24 I provided to you, it occurs to me, I'm trying to
25 figure out what is meant by lease, let -- if I

102

1  ever had to reach the merits, what is the legal
2  relationship between someone who has possession
3  of a unit and lets someone else stay there?
4  Well, I made copies of stuff there and it
5  differentiates what is a lease as opposed to an
6  assignment. Whether or not this applies or not,
7  I don't know, but the statute is talking in terms
8  of lease, let, da-da-da.
9      MR. HERNANDEZ: All that, right, Your
10 Honor.
11     THE COURT: So if I have a hotel room, and
12 I pay for it and I say, look, I would rather have
13 my son stay here, I don't want to stay there.
14 Danny, give me a couple of bucks and you can stay
15 there. Am I leasing it or am I simply assigning
16 to him my right to what I have?
17     MS. SCHWADERER: Your Honor, actually there
18 is a section, and we can address this at some
19 other point, but there is a section in the
20 Florida Administrative Code that specifically
21 addresses subleasing and subletting.
22     MR. HERNANDEZ: Any interest at all,
23 assignment, whatever, Your Honor.
24     THE COURT: If it says assignment whatever.
25     MR. HERNANDEZ: It says any interest or any

103

1  portion of the hotel.
2      THE COURT: Okay. I don't know.
3      MR. HERNANDEZ: Which is something we would
4  have gotten into.
5      THE COURT: I'm certain that will be part
6  of what we deal with if we ever get to it. To
7  the extent that I made a copy of it, and I gave
8  it to everyone, please give it to these folks
9  here or somebody take the responsibility to mail
10 the package and because that was certainly in the
11 order of Mr. Trawick.
12     MR. SIFF: Thank you, Your Honor.
13     I'll take it expedited. I want to start
14 working on the order.
15     (Thereupon the hearing was concluded.)

104

1          CERTIFICATE OF NOTARY
   STATE OF FLORIDA:
2              SS.
   COUNTY OF DADE:
3      I, JANET BALDAUF, Registered Professional
4  Reporter and Notary Public in and for the State of
5  Florida at Large, do hereby certify that I was
6  authorized to and did stenographically report in
7  shorthand the proceedings in the above-styled cause
8  before the Honorable JON I. GORDON; at the time and
9  place as set forth; that the foregoing pages, numbered
10 from 1 to 104, inclusive, constitute a true and
11 complete record of my stenographic notes.
12     I further certify that I am not a relative,
13 employee, attorney or counsel of any of the parties,
14 nor am I a relative or employee of any of the
15 parties' attorney or counsel connected with the
16 action, nor financially interested in the action.
17     Dated this 21st day of January, 2007.
18
19
20
21     _____
       JANET BALDAUF, RPR
22     Notary Public - State of Florida
       Commission No. DD187669
23     Expires 3-31-2007.
24
25