# Exhibit K

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:06-CV-30-BO

| | | |
|---|---|---|
| PITT COUNTY, individually and on<br>behalf of others similarly situated, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| HOTELS.COM L.P. et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on Defendants' Motion for Reconsideration. The Court previously denied Defendants' Motion to Dismiss. For the reasons set forth below, the Motion for Reconsideration will be GRANTED, and Plaintiff's lawsuit will be DISMISSED. The Court's prior order on Defendants' Motion to Dismiss (DE #47) will be superseded by the following opinion.

BACKGROUND

Plaintiff is a county in North Carolina. Defendants are online travel companies that re-sell hotel rooms to the general public. Their dispute concerns the application of Plaintiff's hotel occupancy tax.

In 1987, the North Carolina General Assembly authorized Plaintiff to impose an occupancy tax on the rental of hotels and similar accommodations in the county. Plaintiff then levied its occupancy tax upon the "gross receipts derived from the rental in the county of any room, lodging, or similar accommodation subject to sales tax" under state law. *See* PITT

COUNTY, N.C. CODE OF ORDINANCES § 8-50 *et seq.* (1987) (the "Occupancy Tax"). North Carolina imposes its sales tax upon "retailers" for the privilege of selling; operators of hotels and motels are considered "retailers" for purposes of the sales tax. N.C. GEN. STAT. § 105-164.4(3).

Defendants agree to pay participating hotels a certain fixed amount if Defendants are able to find members of the public willing to rent one of the hotels' rooms. Consumers then book the rooms online at Defendants' web sites. As part of this transaction, Defendants charge a marked-up price, which encompasses applicable taxes and an unspecified service fee.

Defendants collect and pass on taxes to the hotels, for ultimate remission to Plaintiff's county tax authorities. However, Plaintiff alleges that, having collected the proper taxes, Defendants do not pass on the full amount. The rate of Plaintiff's Occupancy Tax is currently six percent.[1] If Defendants purchase a room from a hotel in Pitt County for $70, but then resell the room to an online customer for $100, the tax on the markup price would be six percent, or $6.00; if assessed on the lower price, the tax would be $4.20. Plaintiff claims that, when a customer books the room online for $100, Defendants will collect $6.00 in Occupancy Tax, but then pass

_____

[1] The parties disagree about the effective tax rate. North Carolina originally authorized, and Plaintiff enacted, an Occupancy Tax at the rate of three percent. However, the Enabling Act was subsequently amended to permit Plaintiff to raise the rate to six percent. Plaintiff then began taxing at the higher rate, but without codifying the increase in county ordinances. Defendants argue that the raise is inoperative without such codification. Plaintiff responds that such codification is unnecessary, provided that the rate hike was imposed pursuant to proper statutory authority.

Plaintiff appears to be incorrect, as North Carolina expressly requires codification as a precondition to the Occupancy Tax's enforcement. *See* N.C. GEN. STAT. § 160A-79(d) ("[N]o city ordinance shall be enforced or admitted into evidence in any court unless it has been codified or filed and indexed in accordance with G.S. 160A-77 or 160A-78."); *see also id.* § 153A-50 (applying § 160A-79(d) procedures to county ordinances.). The rate question is irrelevant to the Occupancy Tax's scope of application; the Court will accordingly accept Plaintiff's six percent figure solely for purposes of the Motion for Reconsideration.

on only $4.20 to the hotel, by figuring their tax liability according to the $70 discount price. Defendants thus pocket the difference between taxes collected and taxes due – in the above example, $1.80.

Defendants do not inform customers about how much of the charged cost goes to applicable taxes, and how much goes to Defendants' service fee. The agreements between Defendants and the hotels preclude the hotels from revealing the discount rate at which Defendants contracted for the rooms. The hotels are similarly unaware of the ultimate price paid by the customer.

Plaintiff and others brought this putative class action lawsuit in Pitt County Superior Court, alleging Defendants' violation of the Occupancy Tax, violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), and conversion. The lawsuit sought a declaratory judgment that Defendants violated the UDTPA, imposition of a constructive trust, and damages. Defendants then timely removed the case to this Court pursuant to 28 U.S.C. § 1332(d) and 28 U.S.C. § 1453. Defendants filed their Motion to Dismiss, which the Court denied on March 29, 2007. Thereafter, Defendants filed a Motion for Reconsideration. A hearing on the Motion was held in Elizabeth City, North Carolina, on July 31, 2007.

DISCUSSION

**I. Legal Standard**

Defendants' initial Motion sought dismissal for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. As the Court discussed with the parties during the hearing on the Motion for Reconsideration, however, Plaintiff's standing depends upon Plaintiff's establishing a particular injury in fact:

3

underpayment of properly collected Occupancy Tax. A litigant's failure to allege sufficient legal injury precludes him from satisfying constitutional standing requirements, and thus divests a federal court of jurisdiction over the case.[2] *Taubman Realty Group Ltd. P'ship v. Mineta,* 320 F.3d 475, 481 (4th Cir. 2002).

Article III standing issues, including those involving injury in fact, are properly considered under the rubric of Rule 12(b)(1). *See, e.g, Ballentine v. United States,* 486 F.3d 806, 810 (3d Cir. 2007) ("A motion to dismiss for want of standing is properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter") (citations omitted); *Republican Party of Minn., Third Congressional Dist. v. Klobuchar,* 381 F.3d 785, 792-93 (8th Cir. 2004) (affirming district court's conclusion that plaintiff had suffered no injury in fact for standing purposes, as well as dismissal of case pursuant to Rule 12(b)(1)).

A Rule 12(b)(1) motion to dismiss challenges subject matter jurisdiction. In response to such a challenge, the nonmoving party bears the burden of proving that subject matter jurisdiction is proper. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 769 (4th Cir. 1991). In determining whether such jurisdiction exists, a district court must regard the facts alleged in the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982).

---

[2] Article III standing requires a plaintiff to show: (1) injury in fact; (2) which is fairly traceable to the defendant; and (3) which will likely be redressed by a favorable decision from a federal court. *Blasting Svs., Inc. v. Wilkes County,* 288 F.3d 584, 595 (4th Cir. 2002) (citations omitted).

## II. Scope of the Occupancy Tax

The parties disagree about the Occupancy Tax's coverage, and consequently, the existence of a cognizable injury. Defendants argue that the Occupancy Tax is levied only upon "operators" of hotels. Because they do not operate hotels, Defendants say that the Occupancy Tax does not require them to remit any more revenue than they do already (as trustees for the hotels), and that Plaintiff cannot sue them for failing to do so. In other words, the core premise of Plaintiff's lawsuit – that Defendants underpay applicable Occupancy Tax – is wrong. Plaintiff responds that the Occupancy Tax is not levied solely upon hotel operators, but upon the gross receipts derived from all room rentals in the county, a scope broad enough to encompass Defendants' marked up resales.

Construction of a tax statute is at bottom a question of legislative intent. *Colonial Pipeline Co. v. Clayton*,166 S.E.2d 671, 679 (N.C. 1969) (citations omitted). The best indicator of that intent is the statute's plain language, which will control when its meaning is clear. *Id.* However, if the statute's language is ambiguous, a court will be required to construe it in order to ascertain legislative intent, and any ambiguity will be construed in favor of the taxpayer unless a contrary intent appears. *Id.*

As discussed above, North Carolina's legislature authorized Plaintiff to impose a tax on room occupancy in 1987. 1987 N.C. Sess. Laws, c. 143, § 1 (the "Enabling Act").[3] On the basis

---

[3] The pertinent part of the Enabling Act says:

**Section 1. Occupancy tax.**

(a) Authorization and scope. The Pitt County Board of Commissioners may by resolution, after not less than ten (10) days' public notice and after a public hearing held pursuant thereto, levy a room occupancy tax of three percent (3%) of

of that statutory authorization, Plaintiff enacted its Occupancy Tax later the same year. The

relevant part of the Occupancy Tax reads as follows:

> There shall be levied a room occupancy tax in the amount of three (3)
> percent of the gross receipts derived from the rental in the county of any
> room, lodging, or similar accommodation subject to sales tax under
> G.S.105-164.4(3), which shall be in addition to any state or local sales tax.

PITT CO. ORD. § 8-50.

"G.S. 105-164.4(3)" refers to a provision of North Carolina's state sales tax statute (the "Sales

Tax"), which states, in pertinent part:

> **Tax Imposed on Retailers**
>
> (a) A privilege tax is imposed on a retailer at the following percentage rates of the
> retailer's net taxable sales or gross receipts, as appropriate. The general rate of tax
> is four percent (4%).
> . . . .
>> (3) Operators of hotels, motels, tourist homes, tourist camps, and similar
>> type businesses and persons who rent private residences and cottages to
>> transients are considered retailers under this Article. A tax at the general
>> rate of tax is levied on the gross receipts derived by these retailers from the
>> rental of any rooms, lodgings, or accommodations furnished to transients
>> for a consideration.[]

N.C. GEN. STAT. § 105-164.4(a)(3).

---

> the gross receipts derived from the rental of any room, lodging or similar
> accommodation by a hotel, motel, inn, or similar place within the county that is
> subject to sales tax imposed by the State under G.S. 105-164.4(3). []
>
> (b) Collection. Every operator of a business subject to the tax levied under this
> section shall, on and after the effective date of the levy of the tax, collect the tax.
> This tax shall be collected as part of the charge for furnishing a taxable
> accommodation.

1987 N.C. SESS. LAWS, c. 143, § 1.

6

Here, Plaintiff's Occupancy Tax is imposed upon the "gross receipts derived from the rental in the county of any room, lodging, or similar accommodation subject to sales tax." PITT CO. ORD. § 8-50. The Sales Tax is imposed upon retailers, a category which includes "operators" of hotels and similar businesses. N.C. GEN. STAT. § 105-164.4(a)(3). As neither the Sales nor the Occupancy Tax defines the word "operator," the Court must give that term its plain or commonsense meaning. PITT CO. ORD. § 1-2 ("words and phrases shall be construed according to the common and approved usage of the language; but technical words and phrases and such others, as may have acquired a peculiar and appropriate meaning in law, shall be construed and understood according to such meaning"); *Appeal of Clayton-Marcus Co.,* 21 S.E.2d 199, 202-03 (N.C. 1974) (stating that, absent specific definition, a tax statute's terms must be given their common and ordinary meaning).

In the business context, "to operate" means generally to conduct or to manage a commercial enterprise's daily affairs.[4] Plaintiff does not claim that Defendants perform any of the day to day functions commonly associated with hotel management, such as handing over room keys or maintaining guest rooms. Rather, Plaintiff acknowledges that Defendants are "Online Travel Companies," that resell hotel rooms to the general public via the internet. The plain meaning of "operator" does not seem to cover Defendants' alleged practices, and thus calls Plaintiff's Occupancy Tax underpayment theory into question.

---

[4] *See, e.g., Webster's II New College Dictionary* 767 (1995) (defining "operator" as the "owner or manager of a business" and "to operate" as "to control or direct the function of . . . to conduct the affairs of"); *Am. Heritage Dictionary of the English Language* 1268, 1091 (3d ed. 1996) (defining "operator" as "the owner or manager of a business or an industrial enterprise; "to own" as "to have or possess as property; to have control over;" and "to manage" as to "to direct or control the use of; handle.")

7

Plaintiff nevertheless insists that the Occupancy Tax is not limited to "operators" of hotels and similar places, but that the Occupancy Tax instead covers the "gross receipts derived from the rental" of rooms in the county, regardless of who collects such amounts. Plaintiff concedes that the Occupancy Tax incorporates the Sales Tax, which is imposed upon retailers, including "operators of hotels." N.C. GEN. STAT. § 105-164.4(a)(3). In Plaintiff's view, however, this does not mean that the *Occupancy Tax's* reach is limited to persons or businesses who turn over keys, or maintain hotel premises. The "similar accommodations" enumerated by the Sales Tax are "hotels, motels, tourist homes, tourist camps, and similar type businesses." *Id.* Thus Plaintiff reads the Occupancy Tax as levied on the gross receipts derived from the rental in the county of any room, lodging, hotel room, motel room, tourist home, tourist camp, or similar type business. This interpretation is consistent with the Occupancy Tax's collection provision, which reaches more broadly than hotel operation. *See* PITT CO. ORD. § 8-52 ("[e]very operator of a *business* subject to the tax levied under this article shall . . . collect the tax") (emphasis added).

Plaintiff's position is problematic for several reasons. First, the Occupancy Tax is imposed upon certain amounts (gross receipts), while the Sales Tax is imposed upon certain classes of "retailers," including "operators" of hotels and like places. N.C. GEN. STAT. § 105-164.4(a)(3). While Plaintiff's argument – that the Occupancy Tax's "similar accommodations" should be read as those listed in the Sales Tax – is hardly implausible, it ignores the Sales Tax's "retailers" and "operators" language altogether. Absent more explicit direction from the legislature, the Court is reluctant to disregard statutory terms which the Occupancy Tax incorporates wholesale. Had the General Assembly intended to override the Sales Tax's classification structure for purposes of the Occupancy Tax, it surely could have said so by way of

8

the Enabling Act. *See* 1987 N.C. SESS. LAWS, c. 143, § 1. The Enabling Act, both as enacted and as amended, contains no such instruction. To the contrary, the Occupancy Tax's terms naturally track those of the Enabling Act.

In any event, even if Plaintiff were correct about the Occupancy Tax's application to "gross receipts," that much would not resolve the question of whether those "gross receipts" must be understood as the amount charged by the hotel, or as the higher-dollar amount charged by Defendants. Indeed, Plaintiff acknowledges that "[r]egardless of whether a hotel taxes a guest or an Online Travel Company taxes a guest, the guest is still paying the same amount. The issue is what amount is due to be remitted to Pitt County." Pl. Resp. to Mot. to Dismiss at 14. Though it makes economic sense to assume that the Occupancy Tax would target the marked up price, Plaintiff has not identified anything in the Occupancy or Sales Taxes which supports that view, apart from the Occupancy Tax's collection provision. At the same time, as Defendants point out, there are more persuasive reasons to read "gross receipts"as the amount charged by the hotels in the first instance.

Any broader construction of "gross receipts" would flout statutory limits imposed by North Carolina's General Assembly. Counties have no independent taxation powers, and must receive prior authorization from the legislature in order to impose a tax. *See* N.C. GEN. STAT. § 153A-146 ("A county may impose taxes only as specifically authorized by act of the General Assembly"). As discussed above, the Occupancy Tax's scope is expressly circumscribed by the that of the Sales Tax. Critically, North Carolina has not intervened in this action, or asserted that

Defendants should be considered "operators" for purposes of the Sales Tax.[5]  It would be highly unusual if Plaintiff could reach funds with the Occupancy Tax which North Carolina could not with the relevant provisions of its Sales Tax, even more so given that counties may only tax to the extent that the state allows them to do so.  To put the point another way, if the Occupancy Tax extends to Defendants' conduct, then the Sales Tax's "operators of hotels" provision must also have applied to the higher amount charged by Defendants all along.  North Carolina has either not realized as much, or simply not bothered to collect the taxes.  The statutes' plain language to one side, the low likelihood of such an outcome weighs strongly against Plaintiff's construction of the Occupancy Tax.

And lastly, when their meaning is doubtful, tax statutes must be construed against the government and in favor of the taxpayer.  *See Colonial Pipeline Co.,* 166 S.E. 2d. at 679.  Regardless of who one identifies as the true taxpayer (Defendants, the hotels, or the consumer who bears the ultimate economic incidence of the tax), surely that must mean adopting the construction which calls for taxation on the lower, $70 amount described in Plaintiff's hypothetical hotel room transaction: figuring the tax on the higher, $100 price means more liability for the taxpayer in any case.

Considering the Occupancy Tax's plain language, the limits of county taxation authority, and the requirements of North Carolina statutory construction law, the Court will read the Sales and Occupancy Taxes as coextensive.  The Sales Tax applies only to "operators of hotels" and

---

[5] *See* Mot. to Dismiss at 8, n. 7 ("Accordingly, Plaintiff cannot collect the tax on charges to customers that are not subject to state sales tax on room occupancy.  The State of North Carolina has not asserted that Defendants are "operators" under the state sales tax statute, nor has it asserted that any taxes are due on the charges that are at issue in this case.").

10

similar places. As a consequence, the Occupancy Tax may only be assessed against gross receipts as figured from the standpoint of an operating hotel. In other words, Defendant's assertion – that the Occupancy Tax applies only to "operators" in the strict sense – is correct. *See* N.C. Gen. Stat. § 105-164.4(a)(3) ("operators of hotels . . . are considered retailers under this Article. A tax at the general rate of tax is levied on the gross receipts derived by *these retailers* from the rental of any rooms, lodgings or accommodations furnished to transients for consideration.") (emphasis added).

Here, assuming Defendants contract with a hotel for $70 and then charge an online guest $100 to reserve a room, Plaintiff alleges that Defendants charge and collect $6 in Occupancy Tax based upon the $100 markup. Yet Defendants only pass on $4.20 in Occupancy Taxes to the hotel, by figuring the tax on the lower, $70 price. According to Plaintiff, in such a transaction, Defendants unlawfully "pocket the difference," by collecting but not remitting the remaining $1.80. Yet as discussed above, the Occupancy Tax applies only to the *hotel's* gross receipts, or put another way, to the room price charged by the hotels themselves. In this case, Defendants pay participating hotels $70. As trustees, therefore, Defendants are required only to collect and remit taxes on this lower amount - the $4.20 which Plaintiff says Defendants collect and remit already. Compl. ¶ 26; Pl. Resp. to Mot. to Dismiss at 5.

Plaintiff's legal injury turns on demonstrating Occupancy Tax underpayment. However, the facts as alleged reveal no such underpayment on Defendant's part. The failure to establish sufficient injury in fact forecloses Plaintiff's standing to sue. The Court accordingly lacks jurisdiction over Plaintiff's Occupancy Tax claim, which will be dismissed. Plaintiff's remaining claims for conversion, violation of North Carolina's Unfair and Deceptive Practice Act

("UDTPA"), and its request for a constructive trust also depend on the basic and incorrect

assumption that Defendants under-remit applicable taxes. The other claims must likewise be

dismissed in lockstep with Plaintiff's Occupancy Tax claim.

CONCLUSION

Plaintiff has not alleged a sufficient injury in fact, a prerequisite for standing and the

Court's jurisdiction. The Motion for Reconsideration is GRANTED, and the Court's prior Order

(DE #47) is hereby superseded by this opinion. Plaintiff's case is DISMISSED in its entirety.

SO ORDERED.

This the 17 day of August, 2007.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:06-CV-30-BO

Pitt County, individually and on behalf  )
of others similarly situated,  )
  )
  )
v.  )    **JUDGMENT**
  )
Hotels.Com L.P., Hotels.com GP, LLC,  )
Hotwire, Inc., Cheap Tickets, Inc.,  )
Cendant Travel Distribution Services  )
Group, Expedia, Inc., Internetwork  )
Publishing Corp. d/b/a Lodging.com,  )
LowestFare.com, Inc., Orbitz, Inc., Orbits,  )
LLC, Priceline.com, Inc., site59.com, LLC  )
Travelocity.com, Inc., Travelocity.com, LP,  )
Travelweb, LLC, TravelNow.com, Inc.,  )
Does 1-1000; and Maupintour Holding,  )
LLC  )

**Decision by Court.** This action came to trial before the Court. The issues have been tried and a decision has been rendered.

**IT IS ORDERED, ADJUDGED AND DECREED** that Plaintiff has not alleged a sufficient injury in fact, a prerequisite for standing and the Court's jurisdiction. The Motion for Reconsideration is GRANTED, and the Court's prior Order (DE#47) is hereby superseded by this opinion. Plaintiff's case is DISMISSED in its entirety.(BOYLE, J)

**This Judgment Filed and Entered on August 13, 2007, and Copies To:**

Marvin Key Blount, III             Charles B. Neely, Jr.
Rebecca Cameron Blount         Nancy Sherwin Rendleman
Blount & Blount                   Robert Ward Shaw
400 West First Street             Williams Maupin Taylor
P O Drawer 58                   3200 Beechleaf Court Suite 500
Greenville, NC 27835-0058      Raleigh, NC 27604

August 13, 2007                /s/ Dennis P. Iavarone,
                                 Clerk of Court