1  DARREL J. HIEBER (CA Bar No. 100857)
   DANIEL M. RYGORSKY (CA Bar No. 229988)
2  *dhieber@skadden.com*
   *drygorsk@skadden.com*
3  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue
4  Los Angeles, California 90071-3144
   Tel: (213) 687-5000
5  Fax: (213) 687-5600

6  Attorneys for Defendants
   PRICELINE.COM INC., TRAVELWEB LLC
7  and LOWESTFARE.COM INC.

8  (APPEARANCES OF ADDITIONAL COUNSEL LISTED ON NEXT PAGE)

9

10                 UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                     OAKLAND DIVISION

13

14  CITY OF OAKLAND, CALIFORNIA,          ) Case No. C 07-03432 SBA
                                          )
15             Plaintiff,                 ) **DEFENDANTS' REPLY IN SUPPORT**
                                          ) **OF MOTION TO DISMISS THE CITY**
16        vs.                             ) **OF OAKLAND'S COMPLAINT**
                                          )
17  HOTELS.COM, L.P.; HOTELS.COM GP,      ) Noticed for:   November 6, 2007
    LLC; TRIP NETWORK, INC. (d/b/a CHEAP  ) Time:          1:00 p.m.
18  TICKETS, INC.); TRAVELPORT, INC. (f/k/a )
    CENDANT TRAVEL DISTRIBUTION           )
19  SERVICES GROUP INC.); EXPEDIA, INC.;  )
    INTERNETWORK PUBLISHING CORP.         )
20  (d/b/a LODGING.COM); LOWEST           )
    FARE.COM INCORPORATED;                )
21  MAUPINTOUR HOLDING, LLC; ORBITZ,      )
    INC.; ORBITZ, LLC; PRICELINE.COM,     )
22  INCORPORATED; SABRE HOLDINGS          )
    CORPORATION; SITE 59.COM, LLC;        )
23  TRAVELOCITY.COM, INC.;                )
    TRAVELOCITY.COM, LP; TRAVELWEB        )
24  LLC; TRAVELNOW.COM, INC. and DOES     )
    1 THROUGH 1000, INCLUSIVE,            )
25                                        )
               Defendants.               )
26  _____ )

27

28

_____
Defendants' Reply in Support of Motion to Dismiss

1   Craig E. Stewart (State Bar No. 129530)              James P. Karen (*pro hac vice* forthcoming)
    Martha A. Boersch (State Bar No. 126569)            Deborah S. Sloan (*pro hac vice* forthcoming)
2   *CEStewart@JonesDay.com*                             *JKaren@JonesDay.com*
    *MABoersch@JonesDay.com*                             *DSloan@JonesDay.com*
3   JONES DAY                                            JONES DAY
    555 California Street, 26th Floor                    2727 North Harwood Street
4   San Francisco, California  94104                     Dallas, Texas  75201
    Telephone:    (415) 626-3939                         Telephone:  (214) 220-3939
5   Facsimile:    (415) 875-5700                         Facsimile:  (214) 969-5100

6   Attorneys for Defendants
    EXPEDIA, INC. and HOTELS.COM, L.P.
7
    Matthew Oster (State Bar No. 190541)
8   *moster@mwe.com*
    McDERMOTT, WILL & EMERY LLP
9   2049 Century Park East, 34th Floor
    Los Angeles, CA 90067
10  Telephone:    (310) 277-4110
    Facsimile:    (310) 277-4730
11
    Paul E. Chronis (admitted *pro hac vice*)
12  Elizabeth B. Herrington (admitted *pro hac vice*)
    Purvi G. Patel (admitted *pro hac vice*)
13  *pchronis@mwe.co*
    *eherrington@mwe.com*
14  *ppatel@mwe.com*
    McDERMOTT, WILL & EMERY LLP
15  227 West Monroe, Suite 4400
    Chicago, IL  60610
16  Telephone:    (312) 372-2000
    Facsimile:    (312) 984-7700
17
    Attorneys for Defendants
18  ORBITZ, LLC, TRIP NETWORK, INC. (D/B/A CHEAPTICKETS.COM), and
    INTERNETWORK PUBLISHING CORP. (D/B/A LODGING.COM)
19
    Brian S. Stagner (*pro hac vice* application forthcoming)
20  J. Chad Arnette (*pro hac vice* application forthcoming)
    Stacy S. Russell (admitted *pro hac vice*)
21  *brian.stagner@khh.com*
    *chad.arnette@khh.com*
22  *stacy.russell@khh.com*
    KELLY HART & HALLMAN LLP
23  201 Main Street, Suite 2500
    Fort Worth, TX 76102
24  Telephone: (817) 878-3561
    Facsimile: (817) 878-9761
25
    Attorneys for Defendants
26  TRAVELOCITY.COM, L.P. and SITE59.COM, LLC

27

28

Defendants' Reply in Support of Motion to Dismiss

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ................................................................................................................1

ARGUMENT .......................................................................................................................3

I.  THE CITY'S OPPOSITION CONFIRMS THAT ITS COMPLAINT IS SUBJECT
    TO DISMISSAL FOR LACK OF JURISDICTION BECAUSE THE CITY HAS
    FAILED TO EXHAUST ADMINISTRATIVE REMEDIES ...........................................3

    A.  The Ordinance's Administrative Remedies Apply To The City .........................3

    B.  The Administrative Process Is Mandatory, Not Optional, For The City ...........4

    C.  Judicial Enforcement Of The Exhustion Requirement Is Not Discretionary .................8

    D.  The Ordinance's Administrative Remedies Are Not "Inadequate." ...................8

    E.  Exhaustion Of The Administrative Remedies Is Not Futile ............................10

        *Presence of Legal Issues* ....................................................................10

        *The City's Predetermination Excuse* ....................................................12

        *Purported Lack Of Information* ............................................................12

II. THE CITY'S OPPOSITION CONFIRMS THAT EVEN IF IT WERE NOT
    REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES, ITS COMPLAINT
    IS SUBJECT TO DISMISSAL FOR FAILURE TO STATE A CLAIM ...........................14

    A.  The City's Opposition Confirms That It Cannot State A Claim Against Any OTC
        Defendant Under The City's Hotel Occupancy Tax Ordinance .......................14

        1.  The Amount Charged To A Customer And Retained By An OTC
            Defendant For Its Online Service Is Not Part Of The "Total Charge By
            A Hotel" Subject To The Tax Imposed By The Ordinance ...........................14

        2.  None Of The OTC Defendants Has Any Obligations Under The
            Ordinance Because None Is "The Operator" Of A "Hotel" ...........................15

    B.  The City Cannot Impose Tax Obligations On Non-Hotel "Operators" ..............19

III. THE CITY'S OPPOSITION CONFIRMS THAT ITS TAG-ALONG EQUITABLE
     CLAIMS AGAINST THE OTC DEFENDANTS ALSO FAIL ..........................................19

CONCLUSION...................................................................................................................20

# TABLE OF AUTHORITIES

**PAGE**

*Allen v. Hickman,*
    407 F. Supp. 2d 1098 (9th Cir. 2005) ...............................................................8

*Amato v. Bernard,*
    618 F.2d 559 (9th Cir. 1980) ...........................................................................12

*Atlanta v. Hotels.com, L.P.,*
    No. 2006-CV-114732, Superior Court Fulton County (Dec. 12, 2006) ............13

*Baker v. Warren County Fiscal Court,*
    C.A. No. 1:06-CV-153-R, 2007 WL 486738, at *3-*4 (W.D. Ky. Feb. 12, 2007) .....12 n.6

*Bell Atl. Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) ....................................................................................14

*Booth v. Churner,*
    532 U.S. 731 (2001)...........................................................................................8

*Boos v. Barry,*
    108 S. Ct. 1157 (1988) ...............................................................................18 n.13

*Britt v. City of Pomona,*
    223 Cal. App. 3d 265 (1990) .....................................................................18 n.13

*California Corr. Peace Officers Association v. State Pers. Bd.,*
    10 Cal. 4th 1133 (2005) ....................................................................................3

*California ex rel. Christensen v. FTC,*
    549 F.2d 1321 (9th Cir. 1977) ...................................................................11 n.5

*Campbell v. Regents of the Univ. of California,*
    35 Cal. 4th 311 (2005) ...........................................................................*passim*

*City of Los Angeles v. Centex Telemanagement,*
    29 Cal. App. 4th 1384 (1994) .................................................................*passim*

*City of Rome, Georgia v. Hotels.com, L.P.,*
    No. 4:05-CV-249-HLM,
    2006 U.S. Dist. LEXIS 56369 (N.D. Ga. May 8, 2006) ...........................19 n.15

*Commonwealth v. DLX, Inc.,*
    42 S.W. 624, 626 (Ky. 2001) ...................................................................12 n.6

*Erickson v. Pardus,*
    127 S. Ct. 2197 (2007) ..............................................................................14 n.9

*Finnerty v. Cowen,*
    508 F.2d 979 (2d Cir. 1975)............................................................................10

Defendants' Reply in Support of Motion to Dismiss

*Flores v. Los Angeles Turf Club,*
    55 Cal. 2d 736 (1961) ................................................................................. 12

*Fuentes v. Roher,*
    519 F.2d 379 (2d Cir. 1975) ..................................................................... 9, 10

*Greyhound v. United States,*
    495 F.2d 863 (9th Cir. 1974) ....................................................................... 14

*Hill v. Colorado,*
    530 U.S. 730 (2000) ............................................................................. 18 n.13

*Jonathan Neil & Assoc., Inc. Jones,*
    33 Cal. 4th 917 (2004) ............................................................................. 8 n.4

*Kelly v. Methodist Hosp.,*
    22 Cal. 4th 1108 (2000) .............................................................................. 16

*Kentucky Retirement System v. Lewis,*
    163 S.W.3d 1 (Ky. 2005) ........................................................................ 12 n.6

*Louisville/Jefferson County Metro Government v. Hotels.com, L.P.,*
    No. 3:60-CV-480-R
    2007 WL 2323322 (W.D. Ky. Aug. 10, 2007) ......................................... 12 n.6

*McAllister v. County of Monterey,*
    147 Cal. App. 4th 253 (2007) ................................................................... 9, 11

*Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.,*
    762 F.2d 1374 (9th Cir. 1985) ..................................................................... 10

*People v. West Publishing Co.,*
    35 Cal. 2d 80 (1950) ................................................................................... 11

*Popplewell's Alligator Doc No. 1, Inc. v. Revenue Cabinet,*
    133 S.W. 3d 456 (Ky. 2004) ................................................................... 12 n.6

*Robinson v. Dep't of Fair Employment & Hous.,*
    192 Cal. App. 3d 1414 (1987) ................................................................. 10, 11

*Rojo v. Kliger,*
    52 Cal. 3d 65 (1990) ..................................................................................... 9

*State of California v. Superior Court of Orange County,*
    12 Cal. 3d 237 (1974) ............................................................................. 11, 12

*U.S. v. Hooshmand,*
    931 F.2d 725 (11th Cir. 1991) ..................................................................... 11

*U.S. v. Monsanto,*
    109 S. Ct. 2657 (1989) ................................................................................... 7

Defendants' Reply in Support of Motion to Dismiss

1

## STATUTES

2  Oakland Mun. Code § 4.24.020 ...........................................................................14, 16

3  Oakland Mun. Code § 4.24.030 ...................................................................................17

4  Oakland Mun. Code § 4.24.050 ...................................................................................16

5  Oakland Mun. Code § 4.24.070 ...................................................................................16

6  Oakland Mun. Code § 4.24.090. ...............................................................................4, 13

7  Oakland Mun. Code § 4.24.130 ...................................................................................19

8  Oakland Mun. Code § 4.24.170 ...........................................................................5, 7 n.3

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Reply in Support of Motion to Dismiss

**INTRODUCTION**

As the OTC Defendants demonstrated, because of the potential for Government abuse of the power to tax, a tax must be limited to that which is clearly set forth in a properly enacted statute to which the Government must strictly adhere, and which must be strictly construed against it. Accordingly, one would expect in a case in which a city asserts that someone owes obligations and is liable under the city's tax ordinance, the express, controlling terms of that ordinance would be front and center in the city's argument.

The City of Oakland seeks to impose tax obligations and liability on the OTC Defendants under its hotel occupancy tax ordinance (the "Ordinance"), and to levy its tax on a revenue stream – the amount an OTC Defendant charges a customer and retains for its online facilitation services – that the City has never before attempted to tax. Yet, remarkably the City continues to ignore the very provisions in the Ordinance that state what amount is subject to the tax.

As the OTC Defendants showed, the Ordinance imposes the tax only on "the total charge *made by a hotel* ...for sleeping or accommodations space furnished to a transient...."[1] The City does not, and cannot, allege that the OTC Defendants are "hotels." Under this express limitation, the Ordinance does not impose tax on the amount an OTC Defendant charges a customer and retains because that amount is not part of the "total charge *by a hotel*." *The City in its Opposition says nothing in response because there is nothing it can say* that could change this reality. On this ground alone, the City's purported tax claims fail as a matter of law.

The OTC Defendants also demonstrated that because the Ordinance imposes tax only on the "total charged by a hotel," it imposes obligations to collect, remit and report the tax only on *the* "operator" of the hotel. The Ordinance defines the "operator" solely as *the person* who is the proprietor" or the "managing agent" of the hotel. The OTC Defendants showed that, contrary to the Complaint's conclusory allegation, none of them is "the managing agent" of a hotel because none stands in the place of the hotel's owner as its authorized agent to manage and operate the actual physical structure comprising the hotel. The City's Opposition confirms this reality as well.

The City now asserts every OTC Defendant is "*the person* who is proprietor" of each hotel

---

[1] All emphasis in quotations is added, and internal citations are omitted, unless otherwise noted.

1  at which they facilitate room reservations, as a "possessory agent" of the hotel.  But that assertion

2  also is defeated by the Ordinance's express terms and the rules requiring strict construction of tax

3  statutes.  A person can be *the* "proprietor" of the hotel only if he has exclusive right of actual

4  possession of the hotel.  Performing *some* tasks related to the reservation of *some* rooms in a hotel,

5  does not make any OTC Defendant *the* "possessory agent" or "*the* managing agent" of *the hotel*.

6  On this ground too, the City's purported tax claims fail.

7       Thus, contrary to the City's assertion, the OTC Defendants are not engaged in a "tax

8  evasion scheme;" nor do they seek an "exemption" from the tax.  They merely insist, as does the

9  law, that the City strictly adhere to the express limitations in the Ordinance it enacted.

10       However, the Court cannot reach these issues.  The City concedes it has not initiated, much

11  less exhausted, the administrative remedies mandated by the Ordinance.  Therefore, the Court lacks

12  subject matter jurisdiction, and the City's Complaint must be dismissed.

13       The City now proffers three arguments to evade the exhaustion rule.  All three are refuted

14  by the Ordinance and the very cases the City cites.  First, the City asserts that though the

15  Ordinance's administrative process is mandatory as to alleged taxpayers, it does not apply to the

16  City.  However, the Ordinance creates a three-step process, each step involves both the City and

17  the alleged hotel "operator," and the process provides a remedy for both – namely a determination

18  that tax is not owed or the amount of tax owed.  The City must comply with its own procedures.

19       Next, the City asserts that if the administrative process also applies to the City, its

20  participation in the process is entirely optional.  The City relies on the Ordinance's provision that

21  "nothing in this chapter shall be interpreted to preclude or limit the city from seeking injunctive or

22  other judicial relief."  The City contends this provision means "nothing shall limit the City's right

23  to seek judicial relief *at any time*."  (Opp. at 8.)  But the provision does not say "at any time."  And

24  the very California Supreme Court case the City cites makes clear that provision must be construed

25  together with the detailed administrative procedures that precede it, and thus, cannot be read as

26  authorizing judicial action before those procedures are exhausted.

27       Finally, the City asserts that, if the Ordinance's administrative remedies are mandatory as to

28  the City, its failure to exhaust should be excused because its own remedies are "inadequate" and

Defendants' Reply in Support of Motion to Dismiss

1  exhaustion would be "futile." But its Opposition confirms it cannot establish either ground. The

2  City's failure to exhaust is not excused; its claims against the OTC Defendants must be dismissed.[2]

3  **ARGUMENT**

4  **I.    THE CITY'S OPPOSITION CONFIRMS THAT ITS COMPLAINT IS SUBJECT**

5  **TO DISMISSAL FOR LACK OF JURISDICTION BECAUSE THE CITY HAS
       FAILED TO EXHAUST ADMINISTRATIVE REMEDIES**

6  "[W]here an administrative remedy is provided by statute ... [it] ... must be ... exhausted

7  before the courts will act." Motion at 11, quoting *Cal Corr. Peace Officers Assoc. v. St. Pers. Bd.*,

8  10 Cal. 4th 1133 (2005). This requirement especially applies to claims concerning taxation. *Id.*

9  The Ordinance provides such a remedy, a three-step administrative process to be followed

10  if the City believes a hotel "operator" owes occupancy tax. *Id.* at 7-12. This process must be

11  exhausted before judicial action can be initiated. *Id.* The City concedes this process has not been

12  initiated, much less exhausted. Opp. at 7. Thus, this Court lacks subject matter jurisdiction over

13  the City's claims, which must be dismissed. Motion at 10-11, citing cases.

14  **A.   The Ordinance's Administrative Remedies Apply To The City**

15  The City concedes the Ordinance's administrative remedies are mandatory as to alleged

16  hotel "operators," but asserts they do not apply to the City. Opp. at 10. The City contends the

17  Ordinance does not provide a "self-contained" system of administrative procedures because "there

18  is no administrative process applicable to [the City], other than [the City]'s right to undertake an

19  administrative audit and assessment." *Id.* The City misconstrues its own process.

20  Each of the administrative process's three steps involves both the City and the alleged hotel

21  "operator." The process provides both parties a remedy for alleged tax liability – a determination

22  that tax is not owed or the amount owed. That determination is subject to judicial review upon

23  exhaustion of this process. Motion at 8-9, 11-12, quoting Ordinance.

24  Contrary to the City's assertion, this three-step process is no "creative reading of the

25  Ordinance." As the City concedes, it, through its Tax Administrator, not the alleged hotel

26  "operator," commences this process by performing an audit and issuing an assessment where the

27  Administrator believes taxes are owed by a hotel "operator." *Id.* If the "operator" does not

28  _____

[2] The City has dismissed all Non-OTC Defendants (*see* Notice of Motion at 3, n.1) .

Defendants' Reply in Support of Motion to Dismiss

1  dispute, and therefore does not challenge, the resulting assessment, the tax assessed becomes "due

2  and owing" 20 days after the assessment is served. *Id.* The administrative process is thereby

3  exhausted and a remedy provided.

4      If the alleged hotel "operator" disputes the assessment, the second step in the process

5  applies. The alleged "operator" has the right to challenge the assessment and request a hearing

6  before the Tax Administrator at which "the operator may appear and offer evidence why ...[the] tax

7  ... should not be so fixed." Motion at 9, quoting § 4.24.090(A). The City is involved in the

8  hearing, and its Tax Administrator is the hearing officer. *Id.* After the hearing, the Administrator

9  either affirms or amends his assessment. *Id.* If the alleged hotel "operator" does not dispute the

10  resulting assessment (if any), the tax assessed becomes "due and owing" 15 days after receipt of

11  that determination. *Id.* The administrative process is thereby exhausted and a remedy provided.

12      If the alleged hotel "operator disputes the Tax Administrator's determination, the third step

13  in the process applies. The alleged "operator" has the right appeal to the Review Board, comprised

14  of three City officials and two members of the public. *Id.* at 9. At the appeal hearing, the alleged

15  "operator" has the right to present additional evidence challenging the determination. *Id.* The City

16  is certainly involved in the appeal process. The tax assessed (if any) becomes due and owing upon

17  service of the Board's findings of fact following the hearing. *Id.* The administrative process is

18  thereby exhausted and a remedy provided.

19      As the courts recognized in upholding Los Angeles' parallel three-step administrative

20  process under its business and hotel occupancy tax ordinances, and San Diego's three-step process

21  under its occupancy tax ordinance, such a process is self-contained, governs the City and alleged

22  taxpayer, and provides a remedy to both. *Id.* at 12-14, discussing *City of Los Angeles v. Centex

23  Telemanagement*, 29 Cal. App. 4th 1384 (1994), *City of Los Angeles v. Hotels.com, L.P.*, Case No.

24  BC 326693 ("*Hotels.com*"); *City of San Diego v. Hotels.com, L.P.*, Case No. GIC 861117.

25      **B. The Administrative Process Is Mandatory, Not Optional, For The City**

26      The City nonetheless contends that even if the Ordinance's administrative process applies

27  to the City, its participation is entirely optional and it may commence judicial action "at any time."

28  Opp. at 8. The City relies on the provision that "nothing in this chapter shall be interpreted to

1  preclude or limit the city from seeking injunctive or other judicial relief." *Id*, quoting § 4.24.170.

2  However, as Defendants showed, this provision does not grant the City the option to bypass

3  the Ordinance's detailed administrative procedures and rights conferred on asserted taxpayers;

4  rather, it merely confirms the City's authority to seek judicial relief to recover delinquent taxes

5  *after* the administrative process is exhausted, and to enforce the hotel registration requirements

6  referenced immediately before the "nothing in this chapter" provision. Motion at 14 & n.8. This

7  construction is compelled not only by the provision's express language, but by the "basic rule of

8  statutory construction that all parts of a statute must be read together and harmonized." *Id.* at 13,

9  quoting *Centex*, 29 Cal. App. 4th at 1389. The provision must be read together and harmonized

10 with the Ordinance's administrative procedures, giving meaning and effect to each provision. *Id.*

11 As courts have held in construing parallel provisions of Los Angeles' tax ordinances, this rule

12 precludes the City's contrary construction. *Id.*

13 In *Centex*, the Court of Appeal held the provision in Los Angeles' business tax ordinance's

14 provision authorizing the city to bring a judicial action could not be construed to allow the city to

15 institute such an action before exhausting the administrative process, because "allow[ing] [the city]

16 to proceed directly to court" would "nullify the administrative remedies provided to the asserted

17 taxpayer" by the Ordinance. Motion at 13, quoting *Centex*. The court held

18  "where the taxpayer requests a hearing …, the *City cannot bring an action because the*
19  *administrative process is not yet exhausted.* Additionally, because ... one of the board of
    review's options is to decrease the assessment, it would be *pointless for the City to bring a*
20  *collection action without knowing what amount, if any, it is entitled to collect. Exhaustion*
    *of the administrative process does not occur until the taxpayer either files or fails to file its*
21  *exceptions to the board's decision....* It is clear …from these provisions that … exhaustion
    applies …and *pending such exhaustion the [c]ity was not authorized to begin a legal*
22  *action.*" *Centex*, 29 Cal. App. 4th at 1388.

23 In *Hotels.com*, the superior court, following *Centex* as it must, held the parallel provision in

24 Los Angeles' occupancy tax ordinance authorizing the city to bring a judicial action also must be

25 read together with the ordinance's administrative process, and thus rejected the city's assertion that

26 it need not exhaust that process. Motion at 13, quoting *Hotels.com*. Construing the judicial action

27 provision as allowing the city the option to bypass the process would "nullify the administrative

28

Defendants' Reply in Support of Motion to Dismiss

1  remedies provided to the asserted taxpayer" and thus conflict with those provisions. *Id.* Thus, the

2  city "must exhaust the administrative remedies …before turning to this court for relief." *Id.*

3  The City's proffered construction of the "nothing in this chapter" provision – as allowing it

4  the option to bypass its own administrative process – would also "nullify the administrative

5  remedies provided to the asserted taxpayer" under the Ordinance and thus conflict with them.

6  Under the City's view, it could derail any ongoing administrative proceedings by filing suit or

7  ignore the process altogether. Such a construction would render the process and rights afforded

8  alleged hotel "operators" illusory. "Additionally, because one of the [appeal Board's] options is to

9  decrease the [Administrator's] assessment, it would be *pointless for the City to bring a collection*

10 *action without knowing what amount, if any, it is entitled to collect.*" *Centex* at 1388. Thus, the

11 City's contrary construction must be rejected. The "nothing in this chapter" provision must be read

12 together with the administrative provisions, and thus construed as authorizing the City to seek

13 judicial relief to recover alleged delinquent taxes only *after* the administrative process is exhausted.

14 The City ignores *Hotels.com* and asserts *Centex* can be evaded because the provision

15 authorizing judicial action in *Centex* does not include the specific phrase "nothing in this chapter

16 shall be interpreted to preclude or limit.…" Opp. at 8. This assertion is refuted by the very

17 California Supreme Court case the City cites. The Court in *Campbell v. Regents of the Univ. of*

18 *Cal.*, 35 Cal. 4th 311, 329 (2005), held such language could not be construed as allowing judicial

19 action before exhaustion of administrative remedies.

20 *Campbell* involved whistleblower claims by a university employee seeking damages under

21 the Government and Labor Codes for retaliatory termination. The Supreme Court construed

22 provisions from those two statutory schemes that plaintiff asserted afforded her direct access to the

23 courts, and held neither could be read to nullify the requirement that administrative remedies be

24 exhausted before seeking judicial relief. *Id.* at 332.

25 The Court held the Government Code provision that "[a]n employee may bring an action …

26 for [the] relief provided …." must be read in the "context" of the entire statutory scheme and thus

27 could not be read as permitting such an action before exhaustion of administrative remedies. *Id.* at

28 324-25. The Court then construed the Labor Code provision that states: "*Nothing in this chapter*

Defendants' Reply in Support of Motion to Dismiss

1  *shall prevent* the injured employee from recovering damages from his employer for injury suffered

2  through a violation of this chapter." *Id.* at 329.  The Court held this provision also must be read in

3  context with the administrative provisions, and viewed in light of "the past 60 years of California

4  law on administrative remedies, the provision could not be read as permitting judicial action prior

5  to the exhaustion of administrative remedies." *Id.*  "[C]ourts should not presume the Legislature in

6  the enactment of statutes intends to overthrow long-established principles of law," and thus,

7  "absent a clear indication of legislative intent, [a court] should refrain from inferring a statutory

8  exemption from our settled rule requiring exhaustion of administrative remedies." *Id.* at 329, 332.

9      The same is true of the "nothing in this chapter" provision here.  There is no clear intent to

10  nullify the administrative procedures and rights of asserted taxpayers that precede that provision.

11  Thus, it cannot be read as authorizing judicial action before those procedures are exhausted.

12      Despite this controlling authority, the City contends the "nothing in this chapter" provision

13  must be construed to mean that "nothing shall limit the City's right to seek judicial relief *at any*

14  *time.*"  Opp. at 8.  But the provision does not say "at any time."  The City apparently now wishes it

15  did.  But the City cannot rewrite its Ordinance through this lawsuit.  *See U.S. v. Monsanto*, 109 S.

16  Ct. 2657, 2664 (1989) (the court cannot "rewrite language enacted by the legislature").  The

17  provision includes no temporal element.  That omission reaffirms that the provision was not

18  intended to address *when* judicial relief may be sought, much less to authorize the City to render

19  the administrative procedures that precede the provision a nullity.  *See Campbell* and *Centex*.[3]

20      Even if the "nothing in this chapter" provision were nonetheless also reasonably susceptible

21  to the City's contrary construction, dismissal on exhaustion grounds would still be compelled.  Any

22  ambiguity in a tax statute "must be resolved most strongly in favor of the taxpayer and against the

23  government."  Motion at 14, quoting cases.  Thus, any ambiguity as to the administrative

24

25  [3]  The City also makes passing reference to the Ordinance's provision that "[e]nforcement action specifically authorized by this chapter may be utilized in conjunction with, or in addition to, any other provision of this chapter, and any other statute, code, administrative or regulatory

26  procedure applicable to the regulation of buildings, structures or property."  Opp. at 7. The same analysis mandated by *Campbell and Centex* applies.  This provision merely confirms the City's

27  authority to enforce Ordinance provisions in conjunction with requirements imposed elsewhere in the Municipal Code governing buildings, structures or property.  Ordinance § 4.24.170.

28

1  provisions would have to be construed against the City as requiring exhaustion. *County of Nassau*

2  *v. Hotels.com, L.P.*, No. 2:06-cv-05724, E.D.N.Y. (Aug. 17, 2007) at 13.

3  **C. Judicial Enforcement Of The Exhaustion Requirement Is Not Discretionary**

4  The City contends that if the Ordinance's administrative remedies apply to it, the Court

5  nonetheless has "discretion" to hear this case even absent exhaustion of them. Opp. at 9. Again,

6  the very California Supreme Court case the City cites refutes this assertion:

7  "The [exhaustion] rule is not a matter of judicial discretion, but is a fundamental rule of
   procedure binding upon all courts.... Exhaustion of administrative remedies is a

8  jurisdictional prerequisite to resort to the courts." *Campbell*, 35 Cal. 4th at 321.[4]

9  Thus, where an ordinance provides an administrative remedy, a court *must* enforce the

10 exhaustion rule unless the plaintiff can demonstrate that one of the narrow, judicially recognized

11 grounds for excusing exhaustion applies. *Id.* at 322. The City asserts exhaustion should be

12 excused because the administrative remedies are "inadequate" and exhaustion would be "futile."

13 But its Opposition confirms it cannot establish either ground.

14 **D. The Ordinance's Administrative Remedies Are Not "Inadequate."**

15 The City asserts exhaustion is not required, contending that its own administrative process

16 under the Ordinance is inadequate because it would not resolve all issues, requests for relief, or

17 claims before the court. Opp. at 9. However, an administrative process is adequate, and

18 "plaintiff[] must pursue a remedy through [the] process as long as *some* action can be ordered in

19 response to the complaint." *Booth v. Churner*, 532 U.S. 731, 739 (2001); *Allen v. Hickman*, 407 F.

20 Supp. 2d 1098, 1103 (N.D. Cal. 2005) ("the available remedies need not be plain, speedy and

21 effective ... for the exhaustion requirement to apply, and exhaustion is a prerequisite even when

---

22 [4] The City bases its contrary assertion on cases from other states that do not support it. Opp. at 7.
   In each case, the court enforced the exhaustion rule and dismissed for failure to exhaust, and/or

23 merely recognized that under the primary jurisdiction doctrine, unlike under the exhaustion rule, a
   court has discretion to hear the case. These cases do demonstrate that even if the exhaustion of the

24 Ordinance's procedures were not required, this Court should exercise its discretion *under the
   primary jurisdiction doctrine*, and require that the administrative process be utilized before judicial

25 relief is sought. *See Jonathan Neil & Assoc., Inc. v. Jones*, 33 Cal. 4th 917, 932 (2004): "[I]n some
   cases ... although exhaustion is not required, ... primary jurisdiction ... should be invoked to require

26 resort to an ... agency to resolve issues within its particular area of expertise ... Primary jurisdiction
   ... applies where a claim is originally cognizable in the courts, ... whenever enforcement of the

27 claim requires the resolution of issues which, under a regulatory scheme, have been placed within
   the special competence of an administrative body ...." This standard is easily satisfied here.

28

1 the specific relief sought ... is not available in administrative proceedings"). As shown, the

2 Ordinance's administrative process more than satisfies this standard. *See supra* at 3-4.

3      The City nonetheless contends the process is inadequate because it seeks relief unavailable

4 through the process, namely, equitable, declaratory and injunctive relief. Opp. at 10. Again, the

5 City's assertion is refuted by the very California Supreme Court it cites:

6      "[E]ven though [plaintiff] ... seeks money damages in addition to reinstatement, ... the
     policy considerations which support the imposition of a general exhaustion requirement

7      remain compelling. The logic holds even when no internal damage remedy is available, or
     a plaintiff seeks money damages, so that resort to courts is inevitable... *the rule [is]*

8      *inapplicable only when the agency lacks authority to hear the complaint, not when the*
     *administrative procedures arguably limit the remedy the agency may award....* [T]he

9      administrative proceeding will still promote judicial efficiency by unearthing the relevant

10      evidence and by providing a record which the court may review." *Campbell*, at 328-29.

11      Thus, even if the Ordinance's administrative process would not afford all remedies the City

12 seeks and resort to courts is inevitable, that is no basis to excuse its failure to exhaust. As shown,

13 the process provides a remedy for the alleged failure to pay taxes owed.

14      The City's assertion that the process is inadequate because it will not resolve all issues

15 raised its Complaint is equally erroneous. "Even where the administrative remedy may not resolve

16 all issues [presented] by a plaintiff, the exhaustion doctrine is still viewed with favor and promotes

17 judicial efficiency." *McAllister v. County of Monterey*, 147 Cal. App. 4th 253, 275 (2007).

18      For the same reasons, the City's assertion that the process is inadequate because it will not

19 resolve its alleged common law claims is without merit. The one case it cites does not support that

20 assertion. *Rojo v. Kliger*, 52 Cal. 3d 65 (1990), held that if a plaintiff advances claims in addition

21 to the one requiring exhaustion, it can waive the latter and proceed on its other claims. *Id.* at 88.

22 The City has not waived its purported claims under its Ordinance. And if it were to do so, its

23 remaining claims would fail because each is premised on a violation of the Ordinance (Motion at

24 3); resolution of the tax claims will resolve all claims alleged.

25      Finally, the City asserts the administrative process is inadequate because "it would create a

26 ... risk of irreparable injury." Opp. at 13. But neither case it cites addresses, much less applies, an

27 exception to the exhaustion rule based on irreparable injury. In *Fuentes v. Roher*, 519 F.2d 379,

28

Defendants' Reply in Support of Motion to Dismiss

1 386-87 (2d Cir. 1975), the court acknowledged an exception to the rule "where the question of the

2 adequacy of the administrative remedy is for all practical purposes coextensive with the merits of

3 the plaintiff's constitutional claim," and applied that exception where plaintiff challenged the

4 *validity of the administrative process* on due process grounds. Similarly, in *Finnerty v. Cowen*,

5 508 F.3d 979 (2d Cir. 1975), the court recognized "the exhaustion requirement" does not apply

6 "*where the very administrative procedure under attack* is the one which the agency says must be

7 exhausted." *Id.* at 983-84. There is no challenge to the validity of the Ordinance's procedures;

8 rather, the City is trying to evade complying with them.

9     In any event, the City's two assertions of irreparable harm are without legal basis. First, the

10 City asserts the OTC Defendants' failure to remit alleged taxes owed is irreparable injury. But

11 injuries compensable as money damages are not irreparable. *Oakland Tribune, Inc. v. Chronicle*

12 *Pub. Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985) ("purely monetary harm measurable in

13 damages" cannot be irreparable injury). This rule applies with special force where, as here, the

14 Ordinance also provides for interest to address delay and potential penalties. Motion at 9.

15     Second, the City asserts it could be irreparably harmed because the statute of limitations

16 may expire on some claims during the administrative process. But *Centex* made clear the statue of

17 limitations for claims based on unpaid tax is tolled during the administrative process, which will

18 determine whether any tax has become delinquent. *Centex*, 29 Cal. App. 4th at 1389.

19     **E. Exhaustion Of The Administrative Remedies Is Not Futile**

20     The City is left to assert that its failure to exhaust should be excused as "futile." But its

21 asserted grounds for futility are without legal basis.

22     ***Presence of Legal Issues.*** The City asserts exhaustion is futile because "administrative

23 action will leave standing the ... statutory interpretation[] and constitutional questions present in

24 this case .... [and] the doctrine of exhaustion does not apply where a court is required to consider

25 questions of law, such as the interpretation of a statute." Opp. at 11. This assertion is dead wrong.

26     "[The e]xhaustion of remedies doctrine applies equally to questions of law and fact."

27 *Robinson v. Dep't of Fair Employment & Hous.*, 192 Cal. App. 3d 1414, 1417 (1987). And

28 "exhaustion is not excused merely because the ultimate legal issues ... are better suited for

1  determination by the courts." *McAllister*, 147 Cal. App. 4th at 276.  If the presence of legal issues

2  excused exhaustion, "every litigant attempting to evade administrative proceedings could make the

3  identical argument urged by the [plaintiff]." *Robinson* at 1418.  As the California Supreme Court

4  made clear, the exhaustion rule applies with particular force to legal and factual issues in tax cases:

5      "[I]n the effective performance of its designated functions under the terms of the [tax], the
       board *necessarily must pass upon matters of both law and fact*, and *though the*
6      *administrative determination of questions of law is subject to judicial review* upon which
       the courts may substitute their own judgment for the administrative determination, the
7      *board nevertheless should be afforded the opportunity to rectify any determination it has*
       *made and consider a revision of its tax assessment....* This principle of initial resort to
8      prescribed administrative processes has received *particular emphasis in tax enforcement*
       *cases.*" *People v. West Pub. Co.*, 35 Cal. 2d 80, 88 (1950).[5]
9

10     Thus, the City's contention that administrative procedures can be bypassed when issues of

11  statutory interpretation exist is wrong.  An agency's application of a statute invariably involves

12  questions of law.  *Id.* at 88.  If the agency lacked authority to resolve such disputes in the first

13  instance, it would render the statute's administrative procedures meaningless.

14     The City relies on *U.S. v. Hooshmand*, 931 F. 2d 725 (11th Cir. 1991).  But that case does

15  not discuss exhaustion and merely recognized that, " interpretation of a statute is a question of law

16  subject to de novo review, ..." *Id.* at 737.  That is the standard of judicial review applied to such

17  legal determinations made through the administrative process; it does not alter the requirement that

18  the process be exhausted before judicial review.  *West Pub. Co.* 35 Cal. 2d at 88.

19     For the same reasons, the City's assertion that the process is futile because OTC Defendants

20  may challenge adverse agency determinations of legal questions (Opp. at 11) fails.  No authority

21  allows a government to extort from an alleged taxpayer a waiver of its fundamental right to judicial

22  review of an agency's legal determinations as a precondition to the government's compliance with

23  its own administrative provisions.

24     Finally, the City asserts constitutional issues render exhaustion futile.  Opp. at 12-13.

25  Neither party has raised a constitutional issue at this point.  But where constitutional issues are

26  raised, exhaustion is required as to all non-constitutional issues before filing suit.  *State of*

27  [5] The rule is the same where federal law governs.  *E.g., California ex rel. Christensen v. FTC*, 549
    F.2d 1321, 1324 (9th Cir. 1977) ("requirement of exhaustion ...applies as well to questions of law
28  as to questions of fact.").

1  *California v. Sup. Ct. of Orange County*, 12 Cal. 3d 237 (1974) (party required to exhaust, but not

2  required to assert constitutional challenge during the agency process); *Flores v. Los Angeles Turf*

3  *Club*, 55 Cal. 2d 736 (1961) (party required to exhaust as to all issues other than his constitutional

4  challenge).  Only a facial constitutional challenge to a statute or its administrative process is

5  exempt from exhaustion; there is no such challenge here. *See supra* at 10.[6]

6      ***The City's Predetermination Excuse.***  The City next asserts exhaustion would be futile

7  because it has already decided that the OTC Defendants have failed to pay taxes owed under the

8  Ordinance. Opp. at 13. This assertion is remarkable given that before this action, the City had

9  never sought to impose the tax on the amount an OTC Defendant charges a customer and retains

10  for its online services; the City never issued an assessment against any OTC Defendant; and the

11  City seeks the very determination from the Court that it claims it has already made. Cmplt. ¶ 64.

12  In any event, the administrative process is not rendered futile because the City itself administers the

13  process or claims to have a particular view. *See Amato v. Bernard*, 618 F.2d 559, 569 (9th Cir.

14  1980) ("appeal procedures are not inadequate simply because they are administered by [a party],

15  rather than some neutral arbitrator").  Nor can the result be deemed preordained when it will

16  presumably involve good faith determinations by a specified officer, the Tax Administrator, after

17  an evidentiary process, followed by an appeal to a Board that includes members of the public.

18      ***Purported Lack Of Information.***  The City also asserts exhaustion is futile because it has

19  insufficient information upon which to issue an assessment, and contends it cannot obtain needed

20  information through the assessment process. Opp. at 11. But the City admits it made no effort to

21  obtain any additional information before filing suit. *Id.* This admitted lack of information is

22  shocking given that instead of initiating the administrative process, the City raced to court seeking

---

23  [6]  The lone case the City cites for its contrary view is *Louisville/Jefferson County Metro Gov't v.*

24  *Hotels.com, L.P.*, No. 3:60-CV-480-R, 2007 WL 2323322 (W.D. Ky. August 10, 2007), where the
    court ruled that exhaustion was futile because the OTC defendants had raised an as applied

25  constitutional challenge to the tax ordinance. *Id.* at *5. But this ruling is contrary to Kentucky law,
    which controls in that case. As that district court recognized in a prior case, the Kentucky Supreme

26  Court has held an "as-applied" constitutional challenge to a statute does not render exhaustion
    futile. *Baker v. Warren County Fiscal Court*, C.A. No. 1:06-CV-153-R, 2007 WL 486738, at *3-

27  *4 (W.D. Ky. Feb. 12, 2007) (citing *Kentucky Retirement Sys. v. Lewis*, 163 S.W.3d 1 (Ky. 2005);
    *Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet*, 133 S.W.3d, 1 (Ky. 2004);

28  *Commonwealth v. DLX, Inc.*, 42 S.W. 624, 626 (Ky. 2001).

1    a determination of purported taxes owed. It does, however, explain the Complaint's lack of factual

2    allegations and improper reliance on conclusory allegations.

3    　　　Regardless, supposed lack of information cannot excuse the City's failure to comply with

4    its obligation to perform an audit and issue an assessment. The Ordinance empowers the Tax

5    Administrator to obtain information on which to base his assessment, and further provides that the

6    assessment can, if necessary, be based on an *estimate* of tax due. Motion at 9, quoting Ordinance §

7    4.24.090(A) (Administrator is authorized to "obtain facts and information on which to base his ...

8    *estimate* of the tax due" before issuing an assessment). Even if the Tax Administrator could not

9    obtain additional information from the OTC Defendants (it never tried), it certainly could have

10   done so from the actual hotels in Oakland (again, it never tried).

11   　　　The City's speculation that the OTC Defendants will not cooperate in the administrative

12   process (Opp. at 13) is no basis for excusing its failure to exhaust.[7] As the Los Angeles Superior

13   Court recognized, an asserted taxpayer's "request to be permitted to take advantage of an available

14   administrative remedy should not be denied on the basis of speculation that the party later may

15   refuse to participate in the administrative process." *Hotels.com* at 9-10; Motion at 15, citing

16   *Atlanta v. Hotels.com, L.P.*, No. 2006-CV-114732, Sup. Ct. Fulton County (Dec. 12, 2006)(same).

17   　　　Moreover, any alleged hotel "operator" that refuses to provide appropriate information,

18   would do so at its own peril. If the Tax Administrator were unable to obtain such information, he

19   could issue an assessment based on an estimate of tax owed. The City instead sued without him

20   issuing an assessment, improperly short circuiting the entire administrative process.

21   　　　The City's assertions that the Ordinance's administrative process is "inadequate" and

22   exhaustion is "futile" are baseless. Its failure to exhaust is not excused. The City's claims, all

23   solely premised on alleged violations of the Ordinance, must be dismissed. Motion at 15 & n.9.[8]

24

25   [7] The City, without any support, asserts the OTC Defendants have "hid behind legal positions" in
administrative proceedings commenced by other cities. Opp. at 13. A number of cities have
commenced such proceedings, including Los Angeles, San Diego, Philadelphia and Rome; the
26   OTC Defendants are fully participating and cooperating in all of them. In none has a city yet even
issued an assessment subject to the administrative hearing and appeal provided by its ordinance.

27

28   [8] If the City's claims under its Ordinance are dismissed for lack of subject matter jurisdiction, the
City's tag-along claims, all based on violation of the ordinance, also must be dismissed. Even if

II.    **THE CITY'S OPPOSITION CONFIRMS THAT EVEN IF IT WERE NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES, ITS COMPLAINT IS SUBJECT TO DISMISSAL FOR FAILURE TO STATE A CLAIM**

A complaint that does not contain direct or inferential allegations as to every material element necessary to support liability must be dismissed. Motion at 16. A court need not accept conclusory allegations as true, and the factual allegations must "be enough to raise a right to relief above the speculative level." *Id.* quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007).[9] The OTC Defendants showed the City cannot allege facts that would render any of them liable for tax under the Ordinance or "raise a right to relief above the speculative level." *Id.* at 18-26.

### A.    The City's Opposition Confirms That It Cannot State A Claim Against Any OTC Defendant Under the City's Hotel Occupancy Tax Ordinance.

In interpreting a tax statute, "it is an established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out." Motion at 17, quoting *Greyhound v. U.S.*, 495, F. 2d 863 (9th Cir. 1974). Thus, a tax cannot be imposed by inference or implication, and ambiguity as to its scope must be resolved against the tax authority. *Id.* at 18, citing cases. Accordingly, the City's tax is strictly limited to the express terms of the Ordinance it enacted. *Id.* The City does not dispute these governing rules of construction, but ignores them. Its purported claims against are defeated by the express limitations in the Ordinance.

#### 1.    The Amount Charged To A Customer And Retained By An OTC Defendant For Its Online Service Is Not Part Of The "Total Charge By A Hotel" Subject To The Tax Imposed By The Ordinance.

As the OTC Defendants demonstrated, the Ordinance imposes the hotel occupancy tax only on "the rent charged by the operator" of a hotel for the privilege of occupying a room in the hotel. Motion at 24, quoting § 4.24.020. Rent, in turn, is defined as the "total charge *by a hotel*…for sleeping or overnight accommodations…" *Id.* The City does not, and cannot, allege that any OTC

---

that were not the case, at a minimum, as the City concede (Opp. at 15), those claims must be stayed unless and until the administrative process is exhausted.

[9] Contrary to the City's assertion (Opp. at 6 n.1) the Supreme Court in *Erickson v. Pardus*, 127 S. Ct. 2197 (2007) did not purport to clarify, amend, distinguish or restate its ruling in *Twombly* setting forth this pleading standard, which abrogated *Conley v. Gibson*, 355 U.S. 41 (1957). Rather, *Erickson* expressly relies on *Twombly*.

1  Defendant is a "hotel," which is defined as a "public or private structure…wherein the owner …

2  furnishes [the] right of occupancy to any transient. *Id.* Thus, under these express limitations, the

3  Ordinance does not impose tax on the amount an OTC Defendant charges a customer and retains

4  both because that amount is not part of the "total charge *by a hotel*," and it also is not charged for

5  the privilege of occupying a room, but rather in return for reservation facilitation services proved.

6  *Id. The City says nothing in response because there is nothing it can say* that could change this

7  reality.  On this ground alone, the City's tax claims fail.

8      The recent decision *City of Orange, Texas v. Hotels.com, L.P.* No. 1:06-CV-413 (E.D. Tex.

9  Sept. 21, 2007), is instructive.  The district court dismissed the city's occupancy tax claims against

10 OTC defendants, holding that the city's ordinance imposed tax on only the "consideration paid to a

11 hotel or motel," and the amount an OTC defendant charges a customer and retains is not such

12 consideration because the OTC defendant is not a hotel. *Id.* at 13.[10]  Similarly, the district court in

13 *Pitt County v. Hotels.com, L.P. et al.*, Case No. 4:06-CV-00030 (E.D.N.C. Aug. 13, 2007),

14 dismissed the county's claims against OTC defendants for occupancy tax because the ordinance

15 imposed tax only on the "hotel's gross receipts, or put another way, to the room price *charged by*

16 *the hotels* themselves."   Motion at 23, quoting decision at 11.  The same result is compelled here.

17 Because the Ordinance's terms cannot be extended, taxable "rent" cannot be expanded to include

18 amounts not "charged by a hotel."

19     Even if the "total charge by a hotel" provision were also reasonably susceptible to a

20 contrary construction, the OTC Defendants would still be entitled to dismissal.  Again, such

21 ambiguity "must be resolved most strongly in favor of the taxpayer and against the government."

22 *Supra* at 7-8.  Thus, this provision would still have to be construed in the OTC Defendants' favor,

23 defeating the City's claims.  Motion at 23, quoting *Pitt County* at 10.

24          **2.    None of the OTC Defendants Has Any Obligations Under The**
                 **Ordinance Because None Is "The Operator" Of A "Hotel"**

25     As the OTC Defendants showed, because the Ordinance imposes tax only on the "total

26 charge *by a hotel*," the Ordinance imposes obligations to collect, remit and report the tax only on

27 _____

28 [10]  Copies of the Report and Recommendation of the Magistrate Judge and the District Court's
   Order adopting the same are attached hereto as Exs. A and B.

1  *the* "operator" of a hotel.  Motion at 18, quoting Ordinance §§ 4.24.050 & 4.24.070.  As the City

2  concedes (Opp. at 3), the Ordinance defines the "operator" of the hotel solely as "the person who is

3  proprietor" or "the managing agent" of the hotel.  Motion at 18, quoting § 4.24.020.

4        "Proprietor" is to be given its common meaning, which is the person with ownership or

5  exclusive right of actual possession or title to the physical establishment that is the hotel.  *Id.* at 19,

6  citing cases and dictionary definitions.  This meaning is confirmed by the Ordinance, which

7  expressly provides that the "proprietor" is the "operator" "whether in the capacity of owner,

8  lessees, sublessee, mortgagee in possession, licensee, or any *other possessory* agent of any type...."

9  *Id.*, quoting § 4.24.020.  Each such capacity identified involves a person with ownership or

10  exclusive right of actual possession or title to the physical establishment that is the hotel, which

11  renders that person "the *person* who is proprietor" of "the hotel."  *Id.*

12        The City concedes none of the OTC Defendants is the "owner," "lessee," "sublessee," or

13  "licensee," of a hotel.  But the City now baldly asserts that each of them is the "possessory agent"

14  or "the managing agent" of every hotel with which it contracts to facilitate the reservation of hotel

15  rooms because they "purchase blocks of room rentals from brick-and-mortar hotels, and then sell

16  those room rentals to consumers...."  Opp. at 16.[11]  This assertion fails as a matter of law.

17        *First*, as shown, the Ordinance's definition of "operator" makes clear that an operator must

18  have ownership or exclusive right of actual possession or title to the physical establishment that is

19  the hotel.  This conclusion is compelled by

20        "[t]he principle of *ejusdem generis*, which mandates when a statute contains a list or
        catalogue of items, a court should *determine the meaning of each by reference to the others*,
21        giving preference to an interpretation that uniformly treats items similar in nature and
        scope."  *Kelly v. Methodist Hosp.*, 22 Cal. 4th 1108, 1121 (2000).
22

23  Each of the other capacities listed as qualifying a person to be "*the person* is who proprietor" of the

24  hotel "owner," has ownership or exclusive right of possession or title to the physical establishment

25  that is the hotel, and therefore, "*other possessory* agent" must be construed in the same manner.

26        The City does not, and cannot, allege that any OTC Defendant has ownership or exclusive

27  ――――――――――
   [11]  The City thus abandons its allegation that the OTC Defendants "sell rooms."  *See* Motion at 20.
   As the OTC Defendants showed and the City now concedes, hotels themselves do not "sell" hotel
28  rooms.  *Id.*  The OTC Defendants facilitate the reservation of rooms consumers rent from hotels.  *Id.*

1  right of actual possession of a hotel for which it facilitates reservation of rooms.  Motion at 19.

2  Performing some tasks related to the reservation of *some* hotel rooms in a hotel, does not make an

3  OTC Defendant the "person who is proprietor" of *the hotel* as the "possessory agent" of *the hotel*.

4  *Id.* at 20-21.  Thus, none of the OTC Defendants is the "possessory agent" of the hotel.

5    As the OTC Defendants showed, performing such tasks also could not render any of them

6  "*the* managing agent" of the hotel, which the Ordinance makes clear is *the* person who stands in the

7  place of the "proprietor" of the hotel as its authorized agent to manage and operate the actual

8  physical structure comprising the "hotel." *Id.* at 20.

9    *Second*, as the OTC Defendants showed, the Ordinance contemplates one hotel "operator"

10  per transaction with a transient customer, by referring in the singular to "*the* person who is

11  proprietor" or "the managing agent" of the hotel and using the singular in imposing tax only on

12  "rent charged by *the operator*."  Motion at 21 & n.11, quoting Ordinance § 4.24.030.  The City's

13  expanded definitions of "other possessory agent" and "the managing agent" would result in

14  multiple "proprietors," *i.e.,* the "operator," the hotel itself and the OTC Defendant.

15    *Third*, the Ordinance's registration requirements further confirm that each hotel has but one

16  "operator."  Motion at 21-22.  The City's construction of "other possessory agent" and "the

17  managing agent" would produce absurd results, requiring each OTC Defendant (and other third

18  parties) to register as the "operator" of each hotel for which it facilitates room reservations. *Id.*[12]

19    *Fourth*, the City's proffered constructions would impose double taxation, an outcome it

20  concedes cannot be presumed in the absence of a clear and unambiguous expression in the tax

21  statute. *Id.* at 22.  Indeed, the Ordinance makes clear that double taxation is to be avoided. *Id.*

22    The City asserts its constructions would not produce double taxation because "[it] does not

23  allege that two separate entities both collect and remit the same tax from consumers."  Opp. at 18.

24  The City misses the point.  The actual hotel operator is subject to the tax under the Ordinance.

25  Under the City's proffered constructions, both the hotel and the OTC Defendant would be

26  obligated to collect and remit tax on the full amount each receives in a transaction facilitated by the

27     [12]  The City contends this is merely a "practical" problem.  Opp. at 19.  But, as shown, it is a matter

28  of statutory construction and the rejection of a construction that is contrary to manifest intent and would produce absurd results.  Motion at 21-22.

1  latter.  Motion at 22.  Because the Ordinance does not clearly manifest an intent to require such
2  double taxation, the City's construction must be rejected on this ground as well.  *Id.*

3       *Fifth*, the narrow meaning of "other possessory agent" and "the managing agent" is further
4  evidenced by the Ordinance's provisions allowing a property to be encumbered if the hotel
5  "operator" fails to register or report taxes as required.  *Id.*  The City's constructions would absurdly
6  permit the City to encumber the hotel if *any* OTC Defendant facilitating room reservations at the
7  hotel failed to follow the Ordinance's requirements.  *Id.*  The City ignores these provisions.

8       The City is left to assert that even if the OTC Defendants are not the "proprietor" as
9  "possessory agent," and not "the managing agent," of a hotel, each of them is nevertheless the
10  "operator" of hotels because they "collect and remit some portion ... of taxes owed and due" to the
11  City.  Opp. at 16.  Again, this definition of "operator" finds no support in and is contrary to the
12  Ordinance's express terms.  The City cannot amend its Ordinance to apply to online travel
13  companies that merely contract with hotels to facilitate hotel room reservations, and do own or
14  have exclusive possession of a hotel.  Again, the City is limited to the express terms of the
15  Ordinance it enacted.  *Supra* at 14.[13]

16       Again, *Pitt County* is instructive.  The district court held that hotel "operator" under the
17  county's occupancy tax ordinance is limited to entities that "conduct or manage a commercial
18  enterprises daily affairs" of the hotel; the court dismissed the county's case because the OTC
19  defendants do not "perform any of the day to day functions commonly associated with hotel
20  management, such as handing over room keys or maintaining guest rooms."  *Pitt County* at 7.  The
21  same result is compelled here.  Again, even if the "operator" definitions here were also reasonably
22  susceptible to the City's contrary construction, the ambiguity would have to be resolved in the

23

24  [13]  If adopted, this expanded definition of "operator" would also render the Ordinance void for
25  vagueness as applied, because it would render "operator " incapable of being understood as to what
     is prohibited or authorized, and could "encourage[] arbitrary and discriminatory enforcement."
26  *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *Britt v. City of Pomona*, 223 Cal. App. 3d 265, 279
     (1990) (occupancy tax ordinance void for vagueness because of circular definitions).  "[I]t is well-
27  established that statutes should be construed to avoid constitutional questions if such a construction
28  is fairly possible."  *Boos v. Barry*, 108 S. Ct. 1157, 1170 (1988).

1  OTC Defendants' favor. *Id.* On these grounds too, the City's tax claims fail.[14]

2      **B.    The City Cannot Impose Tax Obligations On Non-Hotel "Operators."**

3      Finally, the City asserts that even if the OTC Defendants are not hotel "operators," they

4  could still liable for the tax because "the Ordinance requires that the [] Tax be remitted by whoever

5  collects it." Opp. at 17. But that is not the what Ordinance says; no provision imposes such

6  liability on a non-hotel operator. The City cites the provision authorizing it to bring an action

7  against "any person owing money to the City" under the Ordinance. *Id.* But, again, that provision

8  must be construed together with the provisions that precede it. "[A]ny person" is immediately

9  preceded by two provisions that make clear "person" is limited to a "transient" and the "operator"

10 of a hotel, the only persons with obligations under the Ordinance. Motion at 10, quoting Ordinance

11 § 4.24.130. Even if "any person" could be construed to apply to persons other than "transients" or

12 "operators," the provision would not authorize a claim against a OTC Defendant, because, if it is

13 not the hotel "operator" or the "transient," it cannot *"owe"* tax to the City.

14     For the same reason, the City's conclusory allegation that they are over-collecting, but not

15 remitting, tax cannot save its failed tax claims. Motion at 25. As shown, any claim for alleged

16 amounts collected by not owed as tax would belong to customers, not the City. *Id.*, citing cases.[15]

17 **III.   THE CITY'S OPPOSITION CONFIRMS THAT ITS TAG-ALONG EQUITABLE**

18 **CLAIMS AGAINST THE OTC DEFENDANTS ALSO FAIL**

19     The City's Opposition confirms that it is attempting to assert UCL claims based solely on

20 the "unlawful" prong and the OTC Defendants' alleged violation of its Ordinance. Opp. at 19-20.

---

21 [14] The City baldly asserts local governments around the country "have *determined* that taxes are due and owing" by OTC Defendants under local occupancy tax ordinances. Opp. at 13. While

22 other cities and counties have alleged such claims, *Pitt County* and *City of Orange* are the only such cases in which a court has made a dispositive ruling on the merits, in both dismissing the

23 action with prejudice. The City's assertion is further refuted by letter rulings of at least three state Revenue Departments that an OTC's hotel reservation services are not subject to the state's own

24 occupancy tax. (A copy of these rulings are Exhibits C - E hereto. This Court may take judicial notice of them. *See* Motion at 13 n.6, citing authority.)

25

26 [15] The City's contrary assertion is not supported by *City of Rome, Georgia v. Hotels.com, L.P.*, No. 4:05-CV-249-HLM, 2006 U.S. Dist. LEXIS 56369, at *12 (N.D. Ga. May 8, 2006). The court

27 ruled that even if the OTC defendants are not hotel "operators," Rome could state a claim based on mere allegations that they collected tax because Rome's Ordinance provides that "the person ...

28 collecting the tax from the hotel or motel guest shall remit the tax...." The Ordinance here has no such provision; rather, it expressly imposes obligations only on the hotel "operator." Motion at 8.

1  Because the City cannot state a claim for violation of the Ordinance, its UCL claims fail as well.

2  Even if the City could state a claim under its Ordinance, it concedes there is no case

3  authority suggesting, much less holding, that a taxing authority may transform a purported claim

4  for collection of a disputed tax into a UCL claim.  Allowing taxing authorities to do so would open

5  the judicial door to a flood of UCL actions end-running state and local tax administrative and

6  regulatory schemes.  Motion at 26-27.  On this ground too, the City's purported UCL claims fail.

7  The City's remaining tag-along claims – for conversion, constructive trust, unjust

8  enrichment, and declaratory judgment also fail because each is premised solely on the OTC

9  Defendants' alleged failure to collect and remit hotel occupancy tax in violation of the Ordinance,

10 and the City cannot establish such a violation by any of them.  Motion at 30.

11                                    **CONCLUSION**

12 For all of the above reasons, the City's complaint should be dismissed: (i) without prejudice

13 to the City filing a new action if and when it can allege it has exhausted its administrative

14 remedies; or (ii) if exhaustion is held not to be required, with prejudice for failure to state a claim.

15 Dated:  October 23, 2007          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

16

17                                   _/s/ Darrel J. Hieber_____
                                     DARREL J. HIEBER
18                                   Attorneys for Defendants
                                     priceline.com Incorporated, Travelweb LLC
19                                   and Lowestfare.com Incorporated

20 Dated: October 23, 2007           JONES DAY

21

22                                   _/s/ Craig E. Stewart_____
                                     CRAIG E. STEWART
                                     Attorneys for Hotels.com, L.P. and Expedia, Inc.
23

    Dated:  October 23, 2007         McDERMOTT WILL & EMERY LLP
24

25                                   _/s/ Matthew Oster_____
                                     MATTHEW OSTER
26                                   Attorneys for Orbitz, LLC, Trip Network, Inc. (d/b/a
                                     Cheaptickets.com), and Internetwork Publishing Corp. (d/b/a
27                                   Lodging.com)

28

Dated:  October 23, 2007                    KELLY HART & HALLMAN LLP

                                              */s/ Stacy S. Russell*
                                              STACY S. RUSSELL
                                              Attorneys for Travelocity.com, L.P. and Site59.com, LLC

## ATTESTATION UNDER GENERAL ORDER 45

I, DARREL J. HIEBER, hereby declare pursuant to General Order 45 that I have obtained the concurrence in the filing of this document from each of the other signatories listed above.

I hereby attest that the foregoing attestation is true and corrected.

Executed on October 23, 2007, in Los Angeles, California.

                                              */s/ Darrel J. Hieber*
                                              Darrel J. Hieber

Defendants' Reply in Support of Motion to Dismiss