# EXHIBIT A

### THIRD DIVISION
### BLACKBURN, P. J.,
### RUFFIN and BERNES, JJ.

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rules 4 and 37, September 5, 2002) http://www.gaappeals.us/rules/

**October 26, 2007**

# In the Court of Appeals of Georgia

A07A1376. CITY OF ATLANTA v. HOTELS.COM et al.

BERNES, Judge.

The City of Atlanta appeals from the trial court's dismissal of its complaint brought against seventeen online travel companies[1] for their alleged failure to remit hotel and occupancy taxes owed to the City. The trial court dismissed the complaint based on a lack of subject matter jurisdiction after concluding that the City could not bypass its administrative tax assessment procedures before bringing suit. For the reasons discussed below, we affirm.

---

[1] The companies are Hotels.com, L. P.; Hotels.com, GP, LLC; Hotwire, Inc.; Cheap Tickets, Inc.; Cendant Travel Distribution Services Group, Inc.; Expedia, Inc.; Internetwork Publishing Corp. (d/b/a Lodging.com); Lowestfare.com, Inc.; Onetravel Holdings, Inc.; Onetravel, Inc.; Orbitz, Inc.; Orbitz, LLC; Priceline.com, Inc.; Site59.com, LLC; Travelocity.com, Inc.; Travelocity.com, LP; and Travelnow.com, Inc.

So that counties and cities can raise revenue for tourism promotion and the provision of other local government services, the General Assembly enacted OCGA § 48-13-50 et seq. (the "Enabling Statutes"), authorizing local governments to levy and collect an excise tax pertaining to the furnishing of hotel rooms, lodgings, and accommodations. See OCGA §§ 48-13-50; OCGA § 48-13-51 (a) (1) (A). The hotel and occupancy tax is imposed upon "any person or legal entity licensed by or required to pay a business or occupation tax to the governing authority imposing the tax for operating a hotel [or similar facility]." OCGA § 48-13-51 (a) (1) (B) (i). The tax also is imposed upon hotel guests, who must pay the tax "to the person or entity providing the room, lodging, or accommodation." OCGA § 48-13-51 (a) (1) (B) (ii). The person or entity who collects the tax from the hotel guest then must "remit the tax to the governing authority imposing the tax." Id. The failure to collect or remit the tax is subject to civil and criminal penalties. OCGA §§ 48-13-58, -59.

Under the Enabling Statutes, counties and cities that choose to impose the hotel and occupancy tax are authorized to devise "the rate of taxation, the manner of imposition, payment, and collection of the tax, and all other procedures related to the tax," unless otherwise specifically provided for in the Enabling Statutes. OCGA § 48-13-53. Pursuant to this authorization, the City of Atlanta enacted its Hotel or Motel

Occupancy Tax Ordinance, § 146-76 et seq., which imposes "a tax of seven percent of the rent for every occupancy of a guestroom in a hotel in the city." City of Atlanta Code of Ordinances (the "City Code") § 146-79.

In March 2006, the City filed the instant suit against the online travel companies, alleging that the companies are required to remit hotel and occupancy taxes to the City. In their complaint, the City alleged that the companies are sellers and resellers of hotel rooms, and, therefore, are operating hotels for purposes of tax collection and remittance. As such, the City alleged that the companies must collect and remit the hotel and occupancy tax from their customers under the Enabling Statutes and City Code. The City further alleged that even if the companies do not operate hotels, they nevertheless charge their customers an amount labeled as "taxes and fees" and thus have voluntarily assumed the duty to remit hotel and occupancy taxes to the City. Based on these allegations, the City sought injunctive and declaratory relief, as well as monetary damages for violations of the Enabling Statutes and City Code, conversion, and unjust enrichment. The City also asked for the imposition of a constructive trust and an equitable accounting.

The online travel companies answered and moved to dismiss on the ground that the City had failed to exhaust certain administrative remedies set forth in the Enabling

3

Statutes and City Code prior to bringing the lawsuit to collect delinquent hotel and

occupancy taxes. Specifically, the companies alleged that before filing suit, the City

was required but failed to make an estimate of the amount of taxes owed by the

companies; make a tax assessment based on the estimate; provide the companies with

written notice of the assessment; and refer any resulting dispute to the City's License

Review Board ("LRB") for a hearing. The City filed a responsive brief in which it

contended that the doctrine of exhaustion did not apply to it; that the administrative

procedures were not mandatory; that no hearing was required before the LRB; and that

even if the procedures were mandatory, following them in this case would be futile.

After hearing oral argument, the trial court dismissed the City's complaint for lack of

subject matter jurisdiction based on the doctrine of exhaustion. The City now appeals.

1. The City contends that the trial court erred in dismissing its complaint

because the exhaustion doctrine applies only to private litigants aggrieved by a

government decision. Under the exhaustion doctrine, "[a] party aggrieved by a state

agency's decision must raise all issues before that agency and exhaust available

administrative remedies before seeking any judicial review of the agency's decision."

(Citations and punctuation omitted.) *Perkins v. Dept. of Medical Assistance*, 252 Ga.

App. 35, 36 (1) (555 SE2d 500) (2001). Applied in the tax context, Georgia courts

4

have held that taxpayers must exhaust administrative remedies before the judiciary will address issues such as valuation, taxability, and exemptions. See, e. g., *Carter v. Fayette County*, __ Ga. App. __ (Case No. A07A1342, decided Aug. 9, 2007); *Wilmington Trust Co. v. Glynn County*, 265 Ga. App. 704 (595 SE2d 562) (2004); *Rockdale County v. Finishline Indus. Inc. of Ga.*, 238 Ga. App. 467, 469-470 (2) (518 SE2d 720) (1999); *Vann v. DeKalb County Bd. of Tax Assessors*, 186 Ga. App. 208, 209-211 (1) (367 SE2d 43) (1988). But, the exhaustion doctrine does not apply if the administrative procedures are optional; if the procedures afford an inadequate remedy to the aggrieved citizen; or if compliance with the procedures would be futile. See, e. g., *Powell v. City of Snellville*, 266 Ga. 315 (467 SE2d 540) (1996); *Hilton Constr. Co. v. Rockdale County Bd. of Educ.*, 245 Ga. 533, 539-540 (3) (266 SE2d 157) (1980); *Crumpler v. Henry County*, 257 Ga. App. 615, 619-620 (571 SE2d 822) (2002).

It is true that the exhaustion doctrine usually is applied to bar lawsuits brought by an aggrieved private citizen against the government. See, e. g., *Little v. City of Lawrenceville*, 272 Ga. 340, 342 (3) (528 SE2d 515) (2000); *Wilmington Trust Co.*, 265 Ga. App. 704; *Perkins*, 252 Ga. App. at 36-38 (1). Nevertheless, we have indicated that a similar principle can be applied against the government when it

5

bypasses administrative procedures prior to bringing suit against a private citizen, at least where the statutory language reflects that the procedures are a mandatory condition precedent to filing suit, and where compliance by the government with the procedures would not be useless or futile under the circumstances. See *Dept. of Human Resources v. Carlton*, 174 Ga. App. 30, 30-31 (329 SE2d 181) (1985); *Anderson v. Blackmon*, 123 Ga. App. 128, 130 (179 SE2d 657) (1970). Such a rule makes particular sense in the tax context, where public policy and judicial economy counsel in favor of allowing questions of tax assessment and collection to first be resolved at the local level. See *Chatham County Bd. of Assessors v. Jepson*, 261 Ga. App. 771, 772 (1) (584 SE2d 22) (2003); *Moreton Rolleston Jr. Living Trust v. Glynn County Bd. of Tax Assessors*, 240 Ga. App. 405, 408-409 (2) (a) (523 SE2d 600) (1999). And, in fact, the Georgia Supreme Court has indicated that tax authorities that fail to comply with mandatory notice procedures cannot pursue a tax enforcement action against the taxpayer who did not receive the required notice. See *Gilmore v. Curry*, 225 Ga. 483, 485-486 (2) (170 SE2d 31) (1969).

Accordingly, we conclude that the City could pursue a tax collection action against the online travel companies in the courts only after first complying with the applicable administrative tax assessment procedures, so long as compliance with those

6

procedures was a mandatory prerequisite to filing suit and would not be useless or futile under the circumstances of this case. Our conclusion is in accord with courts in several other jurisdictions, which have similarly held that counties and cities must comply with mandatory administrative tax assessment procedures prior to bringing suit against a taxpayer. See *County of Nassau v. Hotels.com, L. P.*, No. 2:06-cv-05724-ADS-WDW (E.D. N.Y. Aug. 17, 2007); *City of Rome v. Hotels.com, L. P.*, NO. 4:05-CV-249-HLM (N. D. Ga. May 10, 2007); *City of Los Angeles v. Hotels.com, L. P.*, No. BC 326693 (Cal. Super. Ct. July 27, 2007); *City of San Diego v. Hotels.com, L. P.*, No. GIC 861117 (Cal. Super. Ct. July 27, 2007); *City of Philadelphia v. Hotels.com*, Nos. 0106023, 122014 (Pa. Ct. Common Pleas May 25, 2006).

2. The City next argues that the administrative tax assessment procedures were not a mandatory prerequisite to filing suit. As noted, the trial court agreed with the online travel companies that under the Enabling Statutes and City Code, the City could not file suit until it first made an estimate of the amount of excise taxes owed by the companies; made a tax assessment based on the estimate; provided the companies with written notice of the assessment; and referred any resulting dispute to the LRB for an evidentiary hearing. The CFO and other City witnesses conceded that these procedures were not followed prior to institution of the lawsuit in this case.

7

In resolving this issue, we must apply the controlling principles of statutory construction. "In construing a legislative act, a court must first look to the literal meaning of the act. If the language is plain and does not lead to any absurd or impracticable consequences, the court simply construes it according to its terms and conducts no further inquiry." (Citation and punctuation omitted.) *City of Atlanta v. Miller*, 256 Ga. App. 819, 820 (1) (569 SE2d 907) (2002). Furthermore,

> [a] statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes "in pari materia," are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto. Finally, it is a basic rule of construction that a statute . . . should be construed to make all its parts harmonize and to give a sensible and intelligent effect to each part, as it is not presumed that the legislature intended that any part would be without meaning. These principles apply in the interpretation of city or county ordinances as well as statutes.

(Citations and punctuation omitted.) *City of Buchanan v. Pope*, 222 Ga. App. 716, 717 (1) (476 SE2d 53) (1996). The interpretation of statutes and ordinances is a question of law, which we review de novo on appeal. *Joe Ray Bonding Co. v. State*, 284 Ga. App. 687, 688 (644 SE2d 501) (2007); *Monticello, Ltd. v. City of Atlanta*, 231 Ga.

8

App. 382, 383 (1) (499 SE2d 157) (1998). Mindful of these principles, we turn to the relevant statutory and ordinance language.

(a) *Estimate, Assessment, and Written Notice.* Under the Enabling Statutes, each "innkeeper" must file a monthly tax return with, and remit excise taxes to, the governing authority imposing the hotel and occupancy tax. OCGA § 48-13-53.2 (a). An "innkeeper" is defined as "any person who is subject to taxation under [the Enabling Statutes] for furnishing for value to the public any rooms, lodgings, or accommodations." OCGA § 48-13-50.2 (1). The Enabling Statutes further provide:

> In the event any innkeeper fails to make a return and pay the tax as provided by this article or makes a grossly incorrect return or a return that is false or fraudulent, the governing authority imposing a tax under this article *shall* make an estimate for the taxable period of taxable charges of the innkeeper. Based upon its estimate, the governing authority *shall* assess and collect the taxes, interest, and penalties, as accrued, on the basis of the assessments.

(Emphasis supplied.) OCGA § 48-13-53.3 (b).

In turn, the City Code provides that the City's Chief Financial Officer ("CFO") is in charge of administering and enforcing the hotel and occupancy tax, and those who operate hotels must register, file tax returns, and remit the tax to the CFO. City Code §§ 146-77 (a), 146-84 (a), 146-85(b), (d). Similar to the Enabling Statutes, the

9

City Code states that "[i]f any person fails to make a return for the tax levied in this article, the [CFO] *shall* make an estimate of the amount of the gross receipts of the person, or, as the case may be, of the amount of the total rentals in this city which are subject to the tax." (Emphasis supplied.) City Code § 146-87 (a). In making the estimate, the CFO is empowered to "examine the books, papers, records, financial reports, equipment and other facilities of any operator renting a guestroom to a person and any operator liable for the tax, in order to verify the accuracy of any return made or, if no return is made by the operator, to ascertain and determine the amount required to be paid." City Code § 146-77 (e). See also OCGA § 48-13-53.4 (requiring the preservation of books, invoices, and other records for examination by the governing authority imposing the hotel and occupancy tax).

Based upon the estimate, the CFO is then to make a tax assessment: "Upon the basis of this estimate, the [CFO] *shall* compute and determine the amount required to be paid the city, adding to the sum thus determined a penalty equal to 15 percent thereof." (Emphasis supplied.) City Code § 146-87 (a). After formulating the tax assessment, the CFO "*shall* give to the [hotel] operator written notice of the [CFO's] determination," personally or by mail. (Emphasis supplied). City Code §§ 146-86 (f), 146-87 (e). Finally, the City Code provides for an "[a]ction for collection":

10

> At any time within three years after any tax or any amount of tax required to be collected becomes due and payable and at any time within three years after the delinquency of any tax or any amount of tax required to be collected, the [CFO] may bring an action in the courts of this state, of any other state or of the United States in the name of the city to collect the amount delinquent, together with penalties and interest, court fees, filing fees, attorney's fees and other legal fees incident thereto.

City Code § 146-89 (b). In such an action, the tax assessment made by the CFO "shall be deemed prima facie correct." OCGA § 48-13-53.5.[2]

In light of this plain statutory and ordinance language, we conclude that prior to bringing an action for collection against the online travel companies, the City's CFO or designated agent was required to make an estimate of the amount of excise taxes owed by the companies; make a tax assessment based on the estimate; and then

---

[2] In addition to the Enabling Statutes and City Code, the online travel companies rely upon a section of the "Bureau of Treasury Policy and Procedures" manual entitled "Missing Reports" as a basis for further duties placed upon the City before bringing suit. But, the "Missing Reports" section of the manual addresses how to handle missing and delinquent tax returns for hotel operators that have already registered and have a pre-existing tax account with the City. That is not the case with the online travel companies, which have not registered with the City and thus do not have tax accounts. Thus, pretermitting whether the City would be bound by the procedures set forth in its manual, we conclude that the "Missing Reports" section is not applicable under the circumstances here.

11

provide the companies with written notice of the assessment personally or by mail. See *City of Rome*, slip op. at 62 (reaching similar conclusion in tax collection suit brought by the City of Rome).[3] The mandatory nature of these duties is made clear by the repeated use of the word "shall," which "is generally construed as a word of mandatory import." (Citation and punctuation omitted.) *Moore v. Cranford*, 285 Ga. App. 666, 670 (1), n. 4 (647 SE2d 295) (2007).

Emphasizing that City Code § 146-89 (b) authorizes the bringing of a collection action "[a]t any time," the City argues that such language shows that compliance with the estimate, assessment, and written notice provisions is optional prior to bringing suit. We cannot agree. The City's reading of City Code § 146-89 (b) would render the estimate, assessment, and written notice provisions superfluous, an interpretation that clearly is disfavored. See *Footstar v. Liberty Mut. Ins. Co.*, 281 Ga. 448, 450 (637 SE2d 692) (2006) (noting that courts "should refrain, whenever possible, from construing [a] statute in a way that renders any part of it meaningless") (citation omitted). Read in pari materia with the other provisions of the Enabling Statutes and

---

[3] The online travel companies contend that before making an estimate of taxes due, the CFO was required to "first obtain[] a determination from the LRB as to whether the [companies] were required to be licensed as 'Operators' of hotels within Atlanta." The companies cite to no statutes or ordinances to support their contention, and we have found none.

12

the City Code, City Code § 146-89 (b) allows for the filing of a collection action only *after* the City has complied with the estimate, assessment, and written notice requirements. See *Macon Sash, Door & Lumber Co. v. City of Macon*, 96 Ga. 23, 26 (23 SE 120) (1895) ("In the construction of ordinances and statutes, we are not authorized to take each enactment as a separate expression of the legislative will; but, on the contrary, where such a construction can be placed upon [them] as to make them harmonize the one with the other . . ., the court should so construe them."). Consequently, the trial court did not err in dismissing the City's complaint in light of its failure to comply with these three procedural requirements prior to bringing suit against the online travel companies.

(b) *Hearing.* In contrast, we conclude that the City was not required to refer disputes over the computed hotel and occupancy tax to the LRB before filing suit. The City Code provides: "It shall be the duty of the [LRB] to accept questions or disputes concerning the administration and implementation of this article and to advise the [CFO], the mayor and the council of its opinion on the various questions brought before it." City Code § 146-77 (c). Based solely on this provision, the online travel companies argued, and the trial court agreed, that the City was required to submit all hotel and occupancy tax disputes to the LRB for a hearing.

13

We are unpersuaded. The plain language of the provision places a duty upon the LRB to *hear* any questions or disputes, but it places no concomitant mandatory duty upon the City or a taxpayer to *submit* questions or disputes. Hence, the City had the option to submit a question or dispute to the LRB in order to obtain advice about how to proceed, but it was not required to do so, and, therefore, was entitled to bypass this specific provision and proceed directly to suit. See *Carlton*, 174 Ga. App. at 30-31. The trial court thus erred to the extent that it held that a hearing before the LRB was a condition precedent to the City's filing of the lawsuit.[4] Nevertheless, we affirm the trial court's dismissal of the City's complaint, given the City's failure to comply with the prerequisites to filing suit discussed in Division (1)(a). See *McAuley v. Wills*, 164 Ga. App. 812 (1) (298 SE2d 594) (1982) (trial court's dismissal of an action will be affirmed if right for any reason).[5]

---

[4] The companies also contend that, regardless of the language in the City Code, due process requires that they receive a full evidentiary hearing before the LRB prior to the commencement of a collection action. The companies, however, failed to raise their due process argument in the trial court. "Since this court will not consider arguments neither raised nor ruled on in the trial court and that are asserted for the first time on appeal, [the companies'] argument is waived." (Punctuation and footnote omitted.) *Morris v. Johnson*, 262 Ga. App. 182, 185 (585 SE2d 375) (2003).

[5] In another enumeration of error, the City argues that "[t]o the extent the trial court rested its ruling on the doctrine of separation of powers, rather than the separate doctrine of exhaustion, the ruling should nonetheless be reversed." Because we

14

3. The City further asserts that even if the administrative tax assessment procedures were mandatory, it was not required to follow the procedures in this case because doing so would have been futile. See *Anderson*, 123 Ga. App. 128. The City's position apparently is that the online travel companies will not permit the City access to the information necessary for the City to formulate an estimate and make an assessment of hotel and occupancy taxes owed. But, as previously noted, the Enabling Statutes and City Code empower the CFO to examine "books, papers, records, financial reports, equipment and other facilities" in order to obtain the necessary information for an estimate and assessment. City Code § 146-77 (e). See OCGA § 48-13-53.4. And, failure to file tax returns with the required information or to open records to the CFO for examination can subject the offending party to civil and criminal penalties. OCGA §§ 48-13-58, -58.1, -61, -62. Moreover, if in fact the companies refuse to produce the necessary information, the City would be entitled to return to court at that point because the futility of formulating an estimate and making an assessment would no longer be speculative.

---

conclude in Division 1 that the trial court's reliance on exhaustion principles was correct, we need not address this separate enumeration of error.

We also note that even if this matter returns to court following the City's compliance with its administrative procedures, compliance with those procedures is not a useless act. Devising an estimate and assessment after auditing the online travel companies' books and records may resolve or clarify several factual issues related to whether the companies owe the tax and in what amount, thereby narrowing the issues for the trial court's determination and resulting in a more efficient and streamlined judicial proceeding. Under these circumstances, the trial court did not err in rejecting the City's futility argument.

4. Lastly, the City argues that even if it was required to comply with administrative tax assessment procedures before bringing certain tax claims under the Enabling Statutes and City Code, it has alleged other, independent claims for relief under statutory and common law, such as claims for conversion and unjust enrichment, that are not subject to those procedures. But, regardless of how framed, all of the City's claims seek to recover hotel and occupancy taxes from the online travel companies, and the City "is prohibited from doing by indirection that which it is prohibited from doing directly," namely, bypass mandatory administrative tax assessment procedures. *Perkins*, 252 Ga. App. 37-38 (1). As such, the City cannot circumvent administrative procedures that form a condition precedent to bringing a

16

tax collection action simply by asserting alternative legal theories. Dismissal of all of the City's claims, therefore, was appropriate.

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

17